# EXHIBIT 1

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

*FILED IN DISTRICT COURT*
*OKLAHOMA COUNTY*

*MAY 1 6 2024*

*RICK WARREN*
*COURT CLERK*
36_____

**ANTHONY TRUPIA,**

        Plaintiff,

v.

Case No. CJ-2024-2684

**HERITAGE HARD ASSETS LLC;
KYLE PATTON, individually as
Manager/Officer of HERITAGE HARD
ASSETS LLC; HLV VENTURES, an
unregistered New York company;
REAGAN GOLD GROUP, LLC;
STEVE FRANCIS, individually as
Manager/Officer of REAGAN GOLD
GROUP, LLC; WORLD HARVEST
CHURCH, INC. ; ROD PARSLEY,
individually as Manager/Officer of
WORLD HARVEST CHURCH, INC.;
SOUTH BAY GALLERIES LLC;
BRANDON MENDELSON, individually
as Manager/Officer of SOUTH BAY
GALLERIES LLC; TELNYX LLC;
DAVID CASEM, individually as
Manager/Officer of TELNYX LLC;
IAN EITHER, individually as
Manager/Officer of TELNYX LLC;
JAMES WHEDBEE, individually as
Manager/Officer of TELNYX LLC;
MANDI MENA, individually as
Manager/Officer of TELNYX LLC;
ONVOY, LLC; BRETT SCORZA,
individually as Manager/Officer of
ONVOY, LLC; JAMES HYNES,
individually as Manager/Officer of
ONVOY, LLC; G EDWARDS EVANS,
individually as Manager/Officer of
ONVOY, LLC; MATTHEW CARTER
JR, individually as Manager/Officer of
ONVOY, LLC; LEVEL 3
COMMUNICATIONS, LLC; JEFF
STOREY, individually as**

Manager/Officer of LEVEL 3
COMMUNICATIONS, LLC;
ZEBERSKY PAYNE SHAW LEWENZ,
a Florida law firm; ZACHARY D
LUDENS, individually as an attorney of
ZEBERSKY PAYNE SHAW LEWENZ;
and DOES 1 through 100, inclusive,

Defendants.

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on the 15th day of May, 2024, Defendant, HLV Ventures ("Defendant"), filed with the Clerk of the United States District Court for the Western District of Oklahoma, in case No. CIV-24-498-SLP styled *Anthony Trupia v. Heritage Hard Assets LLC, et al.*, its Notice of Removal of the above-captioned action, together with copies of all process, pleadings and orders served upon them in the above-captioned action. A true and correct file-stamped copy of the Notice of Removal is attached hereto as Exhibit "A."

This Court is required to take no further action in this case unless and until such time as the case may be remanded by order of the United States District Court for the Western District of Oklahoma.

Dated May 16, 2024.

2

Respectfully submitted,

HALL, ESTILL, HARDWICK,
GABLE, GOLDEN & NELSON, P.C.

By: _____
Mark Banner, OBA # 13243
Aaron C. Tifft, OBA # 33288
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
521 E. 2nd Street, Suite 1200
Telephone (918) 594-0400
Facsimile (918) 594-0505
mbanner@hallestill.com
atifft@hallestill.com
ATTORNEYS FOR DEFENDANT,
HLV VENTURES

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2024, a true and correct copy of the foregoing document was served on the following via first class, U.S. Mail:

Anthony Trupia
605 SE 21st St.
Oklahoma City, OK 73129

PRO SE PLAINTIFF

_____
Aaron C. Tifft

20321400.1:014234.00001

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY TRUPIA,

       Plaintiff,

v.

HERITAGE HARD ASSETS LLC;
KYLE PATTON, individually as
Manager/Officer of HERITAGE HARD
ASSETS LLC; HLV VENTURES, an
unregistered New York company;
REAGAN GOLD GROUP, LLC;
STEVE FRANCIS, individually as
Manager/Officer of REAGAN GOLD
GROUP, LLC; WORLD HARVEST
CHURCH, INC. ; ROD PARSLEY,
individually as Manager/Officer of
WORLD HARVEST CHURCH, INC.;
SOUTH BAY GALLERIES LLC;
BRANDON MENDELSON, individually
as Manager/Officer of SOUTH BAY
GALLERIES LLC; TELNYX LLC;
DAVID CASEM, individually as
Manager/Officer of TELNYX LLC;
IAN EITHER, individually as
Manager/Officer of TELNYX LLC;
JAMES WHEDBEE, individually as
Manager/Officer of TELNYX LLC;
MANDI MENA, individually as
Manager/Officer of TELNYX LLC;
ONVOY, LLC; BRETT SCORZA,
individually as Manager/Officer of
ONVOY, LLC; JAMES HYNES,
individually as Manager/Officer of
ONVOY, LLC; G EDWARDS EVANS,
individually as Manager/Officer of
ONVOY, LLC; MATTHEW CARTER
JR, individually as Manager/Officer of
ONVOY, LLC; LEVEL 3
COMMUNICATIONS, LLC; JEFF
STOREY, individually as

Case No. CIV-24-498-SLP
(Removed from the District Court
of Oklahoma County, Oklahoma,
Case No. CJ-2024-2684)

1

EXHIBIT
A

**Manager/Officer of LEVEL 3
COMMUNICATIONS, LLC;
ZEBERSKY PAYNE SHAW LEWENZ,
a Florida law firm; ZACHARY D
LUDENS, individually as an attorney of
ZEBERSKY PAYNE SHAW LEWENZ;
and DOES 1 through 100, inclusive,**

<div style="margin-left:2em">

**Defendants.**

</div>

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant, HLV Ventures ("Defendant"), hereby removes this action from the District Court of Oklahoma County, State of Oklahoma, to the United States District Court for the Western District of Oklahoma. In support of this Notice of Removal, Defendant states as follows:

1.    Defendant is one of the named Defendants in a civil action initially filed on April 22, 2024, in the District Court of Oklahoma County, State of Oklahoma, styled *Anthony Trupia v. Heritage Hard Assets LLC, et al.*, CJ-2024-2684. *See*, Petition, attached hereto as Exhibit 1.

2.    Removal of this action from the District Court of Oklahoma County, Oklahoma to federal court is proper under 28 U.S.C. §§ 1331 and 1441(a) because the federal court would have original jurisdiction of this action based on federal question jurisdiction (28 U.S.C. § 1331) had this action been brought originally in the federal court.

3.    Original jurisdiction is proper in this case pursuant to 28 U.S.C. § 1331 because, in the Petition, Plaintiff Anthony Trupia ("Plaintiff"), appearing *pro se*, asserted alleged claims in violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. §6101, *et seq.*), the Telemarketing Sales Rule (16 C.F.R. §310, *et seq.*), and the Telephone Consumer

Protection Act (47 U.S. § 227, *et seq.*) . *See* Exhibit 1 at ¶ 1. Accordingly, this Court has original jurisdiction over Plaintiff's claims. 28 U.S.C. § 1331.

4.     Additionally, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's asserted state law claims against Defendant for alleged improper telemarketing activities because these claims arise out of the same common nucleus of operative facts as concerning this individual Defendant.

5.     Defendant was served on April 29, 2024. Pursuant to 28 U.S.C. § 1446, this Notice of Removal is timely filed because it is within 30 days of April 29, 2024.

6.     Pursuant to 28 U.S.C. §1446(d), Defendant will promptly provide written notice of removal of the action to all other parties known to be served in this lawsuit as of the time of filing, if any, and will promptly file a copy of this Notice of Removal with the Clerk of the Oklahoma County District Court.

7.     In violation of Okla. Stat. tit. 12 § 2011(A), Plaintiff failed to provide "the address of the signer and telephone number" upon the signing of his Petition but did provide his purported address with the Summons. *See* Exhibits 1 and 2 at Signature Block. As Plaintiff has not consented to service by electronic means pursuant to FRCP 5(b)(2)(E) and Okla. Stat. tit. 12 § 2005(B), these papers will be sent to the Plaintiff's address listed in the Summons.

8.     Pursuant to 28 U.S.C. 1446, and in compliance with LCvR81.2, copies of all process, pleadings, orders, and documents filed or issued in the state action are attached hereto as Exhibits 1 through 2.

9.    Also in compliance with LCvR 81.2, a true and correct copy of the docket sheet is attached as Exhibit 3.

10.    There are currently no motions pending in this action.

WHEREFORE, Defendant, HLV Ventures, respectfully requests that the United States District Court for the Western District of Oklahoma accept this Notice of Removal, assume jurisdiction of the cause, and issue such further orders and processes as may be necessary.

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

*s/Aaron C. Tifft*

By:    Mark Banner, OBA # 13243
Aaron C. Tifft, OBA # 33288
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
521 E. 2nd Street, Suite 1200
Telephone (918) 594-0400
Facsimile (918) 594-0505
**ATTORNEYS FOR DEFENDANT, HLV VENTURES**

4

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2024, a true and correct copy of the foregoing

document was served on the following via First-Class United States Mail:

Anthony Trupia
605 SE 21st St.
Oklahoma City, OK 73129

**PRO SE PLAINTIFF**

s/ *Aaron C. Tifft*
_____

20321283.1:014234.00001

5

CJ-2024-2684
Bonner



IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

ANTHONY TRUPIA,

    Plaintiff,

v.

HERITAGE HARD ASSETS LLC; KYLE PATTON,
individually as Manager/Officer of HERITAGE HARD
ASSETS LLC; HLV VENTURES, an unregistered New
York company; REAGAN GOLD GROUP, LLC; STEVE
FRANCIS, individually as Manager/Officer of
REAGAN GOLD GROUP, LLC; WORLD HARVEST
CHURCH, INC. ; ROD PARSLEY, individually as
Manager/Officer of WORLD HARVEST CHURCH,
INC.; SOUTH BAY GALLERIES LLC; BRANDON
MENDELSON, individually as Manager/Officer of
SOUTH BAY GALLERIES LLC; TELNYX LLC; DAVID
CASEM, individually as Manager/Officer of TELNYX
LLC; IAN EITHER, individually as Manager/Officer
of TELNYX LLC; JAMES WHEDBEE, individually as
Manager/Officer of TELNYX LLC; MANDI MENA,
individually as Manager/Officer of TELNYX LLC;
ONVOY, LLC; BRETT SCORZA, individually as
Manager/Officer of ONVOY, LLC; JAMES HYNES,
individually as Manager/Officer of ONVOY, LLC; G
EDWARDS EVANS, individually as Manager/Officer
of ONVOY, LLC; MATTHEW CARTER JR, individually
as Manager/Officer of ONVOY, LLC; LEVEL 3
COMMUNICATIONS, LLC; JEFF STOREY, individually
as Manager/Officer of LEVEL 3
COMMUNICATIONS, LLC; ZEBERSKY PAYNE SHAW
LEWENZ, a Florida law firm; ZACHARY D LUDENS,
individually as an attorney of ZEBERSKY PAYNE
SHAW LEWENZ; and DOES 1 through 100,
inclusive,

    Defendants.

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 22 2024

RICK WARREN
COURT CLERK

CASE NO. _____
                36

CJ - 2024 - 2684

**PLAINTIFF'S PETITION FOR CIVIL PENALTIES,
PERMANENT INJUNCTION, OTHER EQUITABLE RELIEF**

Plaintiff, ANTHONY TRUPIA, files this complaint pursuant to statutes as set forth below against HERITAGE
HARD ASSETS LLC, KYLE PATTON, HLV VENTURES, REAGAN GOLD GROUP, LLC, STEVE FRANCIS, WORLD
HARVEST CHURCH, INC., ROD PARSLEY, SOUTH BAY GALLERIES LLC, BRANDON MENDELSON, TELNYX LLC,
DAVID CASEM, IAN EITHER, JAMES WHEDBEE, MANDI MENA, ONVOY, LLC, BRETT SCORZA, JAMES HYNES,

1

EXHIBIT
1

G EDWARDS EVANS, MATTHEW CARTER JR, LEVEL 3 COMMUNICATIONS, LLC, JEFF STOREY, ZEBERSKY PAYNE SHAW LEWENZ, ZACHARY D LUDENS, and DOES 1 through 100, inclusive. This action is filed pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 et seq.; the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310 et seq.; the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.; and certain state laws that protect consumers against unfair and deceptive trade practices, including unfair, deceptive, abusive and illegal telemarketing practices. Plaintiff seeks temporary and permanent injunctive relief, the imposition of civil penalties, restitution, statutory damages, an award of fees and costs, and other legal, statutory, or equitable relief this Honorable Court deems proper, and alleges the following:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1355; the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6103(e), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § Part 310; the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(g)(2); and the Court has pendant jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1395(a), 47 U.S.C. § 227(g)(4), and 15 U.S.C § 6103(e). A substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

## PLAINTIFF

3. Plaintiff, Anthony Trupia, is authorized under common law, and federal and state statutes, to obtain damages, civil fines, restitution, and/or other compensation. Plaintiff is authorized by the TCPA, *47 U.S. Code § 227 (b) (3)*, to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff is authorized by Oklahoma Statutes §15-775C.6 to obtain actual damages or damages of five hundred dollars ($500) for each violation, and up to treble that amount for each violation committed willfully and knowingly. Plaintiff may seek damages under common law for Invasion of Privacy, Intrusion Upon Seclusion; see *Restatement (Second) of Torts § 652C cmt. b (Am. Law Inst. 1977)*. Plaintiff may seek damages under Tort in Essence for violations of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 et seq.; the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310 et seq., for other violations under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., and for Harassment under Oklahoma Statutes §21-1172. Obscene, threatening or harassing telecommunication or other electronic communications.

## DEFENDANTS AND NOTABLE PARTIES

### Identified Spam Callers
### HERITAGE HARD ASSETS LLC

4. Defendant HERITAGE HARD ASSETSS LLC (HERITAGE) is a limited liability company formed on August 1st, 2019, operating out of Boca Raton, Florida. The principal place of business is listed as 2263 Northwest 2nd Avenue, Boca Raton, FL 33431.

5. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in HERITAGE who have not yet been identified.

2

6. Defendant KYLE PATTON (PATTON) is an individual residing and working in Boca Raton, Florida. PATTON is an owner, partner, or CEO of HERITAGE, among other companies, each of which has no internet presence or discernable public business activities.

7. HERITAGE, PARTNERS, and PATTON transact business in Oklahoma City, OK, Boca Raton, FL, and throughout the rest of country, by telephone.

### HLV VENTURES

8. Defendant HLV VENTURES (HLV) is a company operating out of Hauppauge, NY. The principal place of business is listed as 125 Wireless Blvd, Suite D, Hauppauge, NY, 11788.

9. HLV has no listing with the secretary of state in New York, and no agent for service could be found for HLV.

10. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in HLV who have not yet been identified.

11. HLV and PARTNERS transacted business in Oklahoma City, OK, Hauppauge, NY, and throughout the rest of country, by telephone.

### REAGAN GOLD GROUP, LLC

12. Defendant REAGAN GOLD GROUP, LLC (RGG) is a limited liability company formed on August 24th, 2017, operating out of Los Angeles, CA. The principal place of business is listed as 2029 Century Park E #400, Los Angeles, CA 90067.

13. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in RGG who have not yet been identified.

14. Defendant STEVE FRANCIS (FRANCIS) is an individual residing and working in Los Angeles, CA. FRANCIS is an owner, partner, and CEO of RGG.

15. RGG, PARTNERS, and FRANCIS transact business in Oklahoma City, OK, Los Angeles, CA, and throughout the rest of country, by telephone.

### BREAKTHROUGH WITH ROD PARSLEY,
### WORLD HARVEST CHURCH

16. Defendant WORLD HARVEST CHURCH, INC. (WORLDHARVEST) alleges it is a church formed on December 28th, 1979, under the name "Sunrise Chapel," operating out of Columbus, OH. The principal place of business is listed as 4595 Gender Road, Columbus, OH, 43110. It appears to be a business instead and has many separate listings with the OH secretary of state.

17. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in WORLDHARVEST who have not yet been identified.

18. Defendant ROD PARSLEY (PARSLEY) is an individual residing and working in Los Columbus, OH. PARSLEY is reverend, pastor, and CEO at WORLDHARVEST.

19. WORLDHARVEST, PARTNERS, and PARSLEY transact business in Oklahoma City, OK, Columbus, OH, and throughout the rest of country, by telephone.

### SOUTH BAY GALLERIES LLC

20. Defendant SOUTH BAY GALLERIES LLC (SOUTHBAY) is a limited liability company formed on June 14th, 2021, operating out of Patchogue, NY. The principal place of business is listed as 414 S Service Rd PMB 336, Patchogue, NY 11772.

21. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in SOUTHBAY who have not yet been identified.

22. Defendant BRANDON MENDELSON (MENDELSON) is an individual residing and working in Patchogue, NY. MENDELSON is president and CEO of SOUTHBAY.

23. SOUTHBAY, PARTNERS, and MENDELSON transact business in Oklahoma City, OK, Patchogue, NY, and throughout the rest of country, by telephone.

### VoIP Service Providers
### TELNYX LLC

24. Defendant TELNYX LLC (TELNYX) is a limited liability company formed on May 31ˢᵗ, 2009, operating out of Chicago, Illinois. The principal place of business is listed as 515 N State ST, 14th Floor, Chicago, IL 60654.

25. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in HLV who have not yet been identified.

26. Defendant DAVID CASEM (CASEM) is an individual residing and working in Chicago, IL. CASEM is CEO of TELNYX.

27. Defendant IAN EITHER (EITHER) is an individual residing and working in Chicago, IL. EITHER is COO of TELNYX.

28. Defendant JAMES WHEDBEE (WHEDBEE) is an individual residing and working in Chicago, IL. WHEDBEE is VP of Engineering of TELNYX.

29. Defendant MANDI MENA (MENA) is an individual residing and working in Chicago, IL. MENA is Head of Product of TELNYX.

30. TELNYX, PARTNERS, CASEM, EITHER, WHEDBEE, and MENA transact business in Oklahoma City, OK, Chicago, IL, and throughout the rest of country, by telephone.

### ONVOY, LLC,
### INTELIQUENT, A SINCH COMPANY

31. Defendant ONVOY, LLC (ONVOY) is a limited liability company formed on July 9ᵗʰ, 2014, operating out of Chicago, Illinois. The principal place of business is listed as One North Wacker Dr, Ste 2500, Chicago, IL 60606.

32. INTELIQUENT, A SINCH COMPANY (INTELIQUENT) is the parent company for ONVOY; all references to ONVOY in this complaint are synonymous with INTELIQUENT.

33. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in ONVOY who have not yet been identified.

34. Defendant BRETT SCORZA (SCORZA) is an individual residing and working in Chicago, IL. SCORZA is managing principal with ONVOY and president of INTELIQUENT.

35. Defendant JAMES HYNES (HYNES) is an individual residing and working in Chicago, IL. HYNES is CEO of INTELIQUENT.

36. Defendant G EDWARDS EVANS (EVANS) is an individual residing and working in Chicago, IL. EVANS is CEO of INTELIQUENT.

37. Defendant MATTHEW CARTER JR. (CARTER) is an individual residing and working in Chicago, IL. CARTER is the/an owner of INTELIQUENT.

38. ONVOY, PARTNERS, SCORZA, HYNES, EVANS, and CARTER transact business in Oklahoma City, OK, Chicago, IL, and throughout the rest of country, by telephone.

### LEVEL 3 COMMUNICATIONS, LLC,
### CENTURYLINK COMMUNICATIONS, LLC (PARENT COMPANY)

39. Defendant LEVEL 3 COMMUNICATIONS, LLC (LEVEL3) is a limited liability company formed on February 10th, 2012, operating out of Tucson, AZ. The principal place of business is listed as 3836 S Evans Blvd, Tucson, AZ 85714.

40. CENTURYLINK COMMUNICATIONS, LLC (CENTURY) is a limited liability company formed on November 19th, 1991, operating out of Denver, CO. The principal place of business is listed as 931 14th St, Denver, CO 80202. CENTURY is the parent company of LEVEL3; all references to LEVEL3 in this complaint are synonymous with CENTURY.

41. Defendants JOHN DOE, or JANE DOE, (PARTNERS) are other potential managing partners or partners with ownership stake in LEVEL3 who have not yet been identified.

42. Defendant JEFF STOREY (STOREY) is an individual working in Denver, CO or Tucson, AZ, presumably. STOREY is or was CEO and president of LEVEL3 and was installed as CEO of CENTURYLINK.

43. LEVEL3, PARTNERS, and STOREY transact business in Oklahoma City, OK, Denver, CO, and throughout the rest of country, by telephone.

### Partners for Individual Liability

44. Defendants JOHN DOES or JANE DOES, PATTON, FRANCIS, PARSLEY, MENDELSON, CASEM, EITHER, WHEDBEE, MENA, SCORZA, HYNES, EVANS, CARTER, and STOREY will be collectively referred to as PARTNERS for the purposes of this complaint. Plaintiff will ask this court to hold PARTNERS individually liable for the many illegal actions described in this complaint and to pierce the corporate veil.

### Initial Attorney and Law Firm

45. Defendant ZACHARY D. LUDENS (LUDENS) is an individual residing and working in Fort Lauderdale, Florida. LUDENS is a practicing attorney in Florida, and a partner at Zebersky Payne Shaw Lewenz (ZPSL) law firm. LUDENS is the attorney hired to represent defendants HERITAGE and PATTON.

46. ZPSL apparently has no active record on sunbiz.org with the Florida Secretary of State.  This is puzzling for a law firm operating out of Florida.

47. On information and belief, LUDENS primarily practices law in Florida. LUDENS has transacted business as a licensed attorney in Oklahoma City, Oklahoma in an attempt to negotiate or litigate this action via telephone with plaintiff on a matter heading for Oklahoma State Court.

48. Defendant ZEBERSKY PAYNE SHAW LEWENZ (ZPSL) law firm is a class action law firm transacting business from Fort Lauderdale, Florida. ZPSL was hired to represent HERITAGE and PATTON in this action.

49. The American Bar Association (ABA) and the Florida Bar Association (FBA) both advertise and claim law firms are responsible for the actions of their subordinate attorneys in a number of publications supplied to the general public as well as attorneys. The ABA and the FBA also further advertise to the public that attorneys are prohibited from engaging in certain kinds of misconduct and required to report professional misconduct to the "appropriate professional authority," ABA Rules of Professional Conduct 8.3.

### SUMMARY OF ALLEGATIONS

50. Every day, millions of American consumers receive a barrage of unwanted spam calls that are harassing, annoying, threatening, and malicious. These calls are scams designed to scare and harm consumers. Other spam calls may not be scams but are harassing, abusive, and illegal, nonetheless.

51. Plaintiff has been harassed and abused by spam callers non-stop over the course of six months since he signed up for a Lifeline government subsidized phone and phone service. In the first four months of service, plaintiff recorded over 270 unsolicited phone calls and texts from a variety of fraudulent

5

businesses. These businesses have relied on a various collection of techniques designed to avoid detection and allow for the further harassment and abuse of plaintiff and similarly situated parties across Oklahoma and the nation.

### Spam Calls

52. Defendants use techniques like "neighbor" spoofing and/or "snowshoe" spoofing to target active consumer phone lines. Neighbor spoofing is the practice of using caller ID numbers with the same area code and same or similar three-digit exchange as the call recipient to increase the odds of the call recipient answering the call due to the belief that the call is originating from the local area. Snowshoe spoofing is the practice of using massive quantities of unique numbers for caller ID on a short-term or rotating basis to evade behavioral analytics detection, or to bypass or hinder call blocking or call labeling analytics based on the origination numbers. Numbers used for snowshoeing are often numbers that cannot receive incoming calls. In many of these snowshoe phone calls where plaintiff has answered the phone, a faint recording plays, but no other sounds are audible. In other cases, the phone call disconnects quickly after connection.

53. Plaintiff is admittedly very litigious and has been attempting to hold these spam callers responsible under the various common, state, and federal laws they have been violating over the last 6 months. In order not to burden the courts, plaintiff has offered each party caught a fair opportunity to avoid litigation via small private settlements; defendants to this action are the parties to these calls that refuse to resolve this matter privately.

54. Plaintiff has advertised his litigious nature publicly on Twitter and across other social media; LUDENS read these posts and decided in a short hour from being hired, with little data, that plaintiff is a vexatious litigant; LUDENS claimed as much in written correspondence and will attempt to paint plaintiff's action as vexatious in response to this complaint. It is important to note some basic facts from the beginning of this complaint:

    a.  Plaintiff has not invited telephone contact from the defendants at any time, in any capacity. Defendants do not have any type of permission, written or otherwise, to contact plaintiff with unsolicited phone calls. Every defendant in this complaint is included for unsolicited contact, harassment, and abuse, valid issues under many statutes.

    b.  Each time defendants make a connection for a sales call, defendants ask for a man named "Howard Ship." None of the defendants can provide proof they have written permission to call Howard Ship, let alone plaintiff, the actual and current holder of the phone number. On information and belief, Howard Ship never invited contact from any of these parties and has not held this phone number for at least 4 to 5 years. Defendants have no legitimate business interest calling plaintiff's phone number.

    c.  Plaintiff has not maneuvered to receive these calls in any way, this action holds no similarity to *STOOPS v. WELLS FARGO BANK, N.A.* Plaintiff stipulates to all of the following facts: plaintiff does not have a box of cellphones or large quantity of cell phones to farm for TCPA violations, or for any other purpose; plaintiff has not purchased multiple cellphones or multiple cellphone lines. Plaintiff did not choose the phone number; the phone number was randomly assigned to plaintiff when he signed up for a federally funded Lifeline Assistance program through Standup Wireless. Plaintiff could only have one Lifeline phone without defrauding the government; plaintiff is not defrauding the government and only has this one phone active.

    d.  Defendants simply make so many abusive and harassing spam telephone calls they finally reached an active pro se litigant that would hold them accountable completely naturally and completely by

chance. LUDENS's notice calling this action "vexatious" was more of a tantrum than a sound reply to a demand letter and failed negotiation. This behavior had serious repercussions in a short time.

e. It is unclear why LUDENS mentioned plaintiff's twitter account and litigious nature. Plaintiff did not bring it up or threaten to 'out' defendants on social media. Defendants have no explicit legal right to contact consumers that are very litigious any more than they have right to contact normal consumers... In fact, it may be a statement of fact that placing unsolicited calls to active pro se litigants is unwise business practice and should be avoided. It is not clear why LUDENS thinks the burden of wise business practice by the defendants should fall on the plaintiff.

55. Plaintiff receives so many spam calls regularly that plaintiff has not been able to keep his phone ringer or sound on. There is simply no way to determine which incoming calls are legitimate if they are not previously whitelisted. This massive loss of service and functionality prevents plaintiff from receiving legitimate calls from friends, family, and businesses he actually transacts with. Plaintiff missed the return call for an offer to buy a house in December for almost a month, and almost missed his first opportunity to purchase a home in 43 years being alive. It is impossible to determine how many similar opportunities have been missed without normal access to phone service. Telephone service is essential to modern American life, and defendants prevent plaintiff from accessing this essential service on a regular basis.

<p align="center">Harassment</p>

56. If there was any distinction between defendants' activities and harassment and abuse, this distinction was laid to rest on February 11th, 2024, by LUDENS, and eventually PATTON himself on February 16th, 2024. On February 11th, the owner or major shareholder of HERITAGE, PATTON, reached out to plaintiff via telephone to attempt to persuade plaintiff not to take legal action. PATTON immediately told plaintiff 'He didn't need to file a lawsuit over a phone call' in a rather careless and cocky manner. When plaintiff tried to reply, and each time plaintiff tried to reply, PATTON spoke right over plaintiff. Frustrated, plaintiff told PATTON he should have a lawyer contact him and hung up the phone.

57. Within hours LUDENS called the plaintiff regarding this matter. With little to no familiarity with the case, the case law, or the specific circumstances, LUDENS immediately engaged in the unauthorized practice of law to attempt to bully, threaten, harass, and attempt to abuse plaintiff into abandoning this complaint. Within moments of the call connecting, LUDENS mocked plaintiff for being a pro se litigant, literally laughed at him, and called this action vexatious. Plaintiff was appropriately angry and hung up the call with LUDENS as well. LUDENS's sole purpose in placing this call was to bully, threaten, harass, and abuse plaintiff into abandoning this complaint. LUDENS's actions were outside the scope of normal professional attorney behavior.

58. LUDENS then responded in writing, again threatening plaintiff and claiming this action was vexatious. Vexatious litigation is a serious allegation and a determination to be made by a court; trying to convince a pro se litigant that a claim is vexatious merely to avoid the cost of litigation and stating so as substantive fact without that determination is unauthorized practice of law. Presumably telling a client this is legal malpractice. Even if plaintiff were a licensed attorney, the ABA makes it clear regarding opposing actions that an *"action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."*

59. Plaintiff has ample standing to file this complaint, and the claim this action is vexatious is an attempt to bully, harass, threaten, and intimidate plaintiff into abandoning this complaint.

<p align="center">7</p>

60. It should be noted plaintiff wrote each defendant demand letters in response to their phone solicitations, and explicitly requested any return contact be in writing via email. Plaintiff has been bullied, threatened, harassed, and intimidated by attorneys for the American Bar Association many times, and makes every effort to keep all communications in writing, on the record, where exactly this kind of abuse cannot be covered or hidden by any party, including plaintiff. LUDENS's sole purpose in placing a call instead of responding by writing or email was to bully, threaten, harass, and abuse plaintiff into abandoning this complaint without solid legal ground, and to hide these actions from scrutiny.

61. On information and belief, PATTON and other employees of HERITAGE, encouraged by LUDENS's unprofessional and outrageous conduct, began calling plaintiff to engage in more extreme bullying, harassment, threats, and intimidation from a private number on February 16th at 10:18am, 5:48pm, and 5:49pm. On information and belief, PATTON and other employees of HERITAGE were intoxicated during these calls. PATTON and HERITAGE employees screamed profanities at plaintiff, repeatedly screamed that he was an "a**hole," screamed that they 'knew where plaintiff lived,' and would come to his house to kill him.

62. On information and belief, PATTON and HERITAGE employees would not have escalated their harassment to drunken calls and death threats but for the unprofessional behavior, bad advice, and provocation of LUDENS and ZPSL.

63. Plaintiff immediately filed a police report with the Oklahoma City Police Department following the receipt of these death threats.

64. Plaintiff immediately informed both LUDENS and ZPSL via a batch email of their clients' actions, but LUDENS and ZPSL never responded. LUDENS was suddenly "on vacation" according to an automatic email response.

**LEGAL BRIEF**

**THE TELEMARKETING SALES RULE**

65. The Telemarketing Act was enacted in 1994, and as part of the enactment, Congress found that "[c]onsumers and others are estimated to lose $40 billion a year in telemarketing fraud," and "[c]onsumers are victimized by other forms of telemarketing deception and abuse." 15 U.S.C. § 6101(3) and (4).

66. The act requires the FTC to:
    a. Include in such rules respecting deceptive telemarketing acts or practices a definition of deceptive telemarketing acts or practices which shall include fraudulent charitable solicitations, and which may include acts or practices of entities or individuals that assist or facilitate deceptive telemarketing.... (3) The Commission shall include in such rules respecting other abusive telemarketing acts or practices-- (A) a requirement that telemarketers may not undertake a pattern of unsolicited telephone calls which the reasonable consumer would consider coercive or abusive of such consumer's right to privacy. 15 U.S.C. § 6102(a)(2) and (a)(3)(A).

67. In 1995, the FTC promulgated rules pursuant to the Telemarketing Act, naming it the Telemarketing Sales Rule ("TSR").

68. On December of 2015, the FTC amended its rules and promulgated new rules pursuant to the Telemarketing Act.

69. Pursuant to 15 U.S.C. § 6103(a), the States are also able to enforce the TSR.

70. The 2003 amendments to the TSR established the National Do Not Call Registry, maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register

their telephone numbers on the *Registry* without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.

71. Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at donotcall.gov, or by otherwise contacting law enforcement authorities.

72. The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at www.telemarketing.donotcall.gov, to pay any required fee(s), and to download the numbers not to call.

73. For purposes of the TSR, a "seller" is any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. 16 C.F.R. § 310.2(dd). A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

74. "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. 16 C.F.R. § 310.2(gg).

75. Under the TSR, an "outbound telephone call" is a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(x).

76. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to telephone numbers on the Federal Do Not Call Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

77. The TSR also prohibits sellers and telemarketers from initiating an outbound telephone call to any person when that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered. 16 C.F.R. § 310.4(b)(1)(iii)(A).

78. The TSR prohibits initiating a telephone call that delivers a prerecorded message to induce the purchase of any good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, that evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller. 16 C.F.R. § 310.4(b)(1)(v)(A).

79. The TSR also requires that sellers and telemarketers transmit or cause to be transmitted the telephone number of the telemarketer and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call, or transmit the customer service number of the seller on whose behalf the call is made and, when made available by the telemarketer's carrier, the name of the seller. 16 C.F.R. § 310.4(a)(8).

80. The TSR requires telemarketers to disclose the identity of the seller truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call. 16 C.F.R. § 310.4(d)(1).

81. The TSR provides that it is a deceptive telemarketing act or practice when "[m]isrepresenting, directly or by implication, in the sale of goods or services any of the following material information:" "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii).

82. The TSR makes it a deceptive telemarketing act or practice when "[m]aking a false or misleading statement to induce any person to pay for goods or services..." 16 C.F.R. § 310.3(a)(4).

83. The TSR makes it an abusive telemarketing act or practice to "fail to honor" a call receiver's request to be placed on a do not call list. 16 C.F.R. § 310.4(b)(1)(ii).

84. "It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously

9

avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule." 16 C.F.R. § 310.3(a)(4).

85. The Telemarketing Act further provides, in part: "Whenever an attorney general of any State has reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of this title, the State, as parens patriae, may bring a civil action on behalf of its residents in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with such rule of the Commission, to obtain damages, restitution, or other compensation on behalf of residents of such State, or to obtain such further and other relief as the court may deem appropriate. 15 U.S.C. § 6103(a).

86. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## THE TELEPHONE CONSUMER PROTECTION ACT

87. The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(14), respectively, provide in part: "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person ..."

88. The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(b)(i)(B) and 47 C.F.R. § 64.1200(a)(3), respectively, provide that it is unlawful for a person to: "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call ... [is specifically exempted by rule or order]."

89. The TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful for any person to: "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using... an artificial or prerecorded voice... to any telephone number assigned to a... cellular telephone service..." Relevant FCC Rule 47 C.F.R. § 64.1200(a)(1)(iii) similarly prohibits persons from initiating calls to a cellular telephone using an artificial or prerecorded voice without the prior express consent of the called party. Relevant FCC Rule C.F.R. § 64.1200(a)(2) further prohibits persons from initiating or causing to be initiated calls that include or introduce an advertisement or constitute telemarketing to cellular telephones using an artificial or prerecorded voice without the prior express written consent of the called party.

90. The TCPA, 47 U.S.C. § 227(d)(3)(A) and FCC Rule, 47 C.F.R. § 64.1200(b)(1), provide in part that "all artificial or prerecorded voice telephone messages shall... at the beginning of the message, state clearly, the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated."

91. The TCPA itself and another relevant FCC Rule, 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604(a), respectively, provide that it is unlawful for a person "with the intent to defraud, cause harm, or wrongfully obtain anything of value" to cause any caller identification service to transmit or display "misleading or inaccurate caller identification information."

92. The TCPA further provides in part:

   a.    (b)(3) Private right of action
   
   A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

93. This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief to remedy injuries caused by Defendants' violations of the TCPA.

### COMMERCE

94. At all times material to this Complaint, all Defendants have maintained substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

### INVASION OF PRIVACY: Intrusion Upon Seclusion

95. The Restatements of the Law, Second, Torts, § 652B, defines a violator of Intrusion Upon Seclusion as one who *intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person...*

96. Regarding Intrusion Upon Seclusion, the American University Law Review discusses this tort in a publication, the difficulties with it historically, and why it is not used often. Specifically, they cite difficulties with proving "highly offensive" both as a matter of fact and law:

The elements of the two core privacy torts discussed above, intrusion on seclusion and public disclosure of true facts, satisfied this requirement by specifying that the invasions in question must be "highly offensive" to the reasonable person.[85] This was so obviously limited to a discrete and contained (as well as normatively weighty) category of invasions that there was little prospect of its generating a series of suits posing challenges involving doctrinal formation and open-ended boundaries. In addition, whether an invasion was "highly offensive" posed a mixed question of fact and law, which meant that in many instances, it would be unnecessary for the courts to define in great detail the cases that fell into that category. Rather, if reasonable people could disagree about that question, answering it became the province of the jury, subject only to fairly general instructions.

97. Spam telephone calls of the nature initiated by defendants meet these tests easily, both as a matter of fact and law, perhaps more so than any other infraction.

a. Legally speaking, the federal government, and most of the fifty states, have all enacted legislation to prevent spam calls. From the Telemarketing Sales Rule, the TCPA, and the FL mini TCPA, to the OK mini TCPA, consumers and governments have made it abundantly clear via legislation and executive response: consumers do not want unsolicited business calls on their private phones. Lawmakers themselves are spamming identical bills through federal and state jurisdiction to prevent these calls from continuing. The State Attorneys General run a fifty state Robocall Task Force to hunt down spam callers. These calls are highly offensive by legal precedent.

b. As a matter of fact, people hate spam telephone calls. The judge in this case will have received spam calls they hate. The attorneys for the defense will have received spam calls they hate. Everybody in America receives these calls and hates them. The courts can simply review the nature of complaints filed with the Better Business Bureau and many other consumer protection agencies and see

customers screaming and cursing at these spam callers to stop. Countless websites exist solely to identify spam telephone callers. Consumers have apps on their phone to identify spam callers and block them. The average phone now comes with no less than 3 to 4 separate "Do Not Disturb" settings in various apps to combat this harassment. The infractions of the defendants are egregious and never ending. These calls are highly offensive to a reasonable person.

**OKLAHOMA STATUTES: §21-1172. Obscene, threatening or harassing telecommunication or other electronic communications**

98. Oklahoma Statute *§21-1172. Obscene, threatening or harassing telecommunication or other electronic communications* states the following:

   A. *It shall be unlawful for a person who, by means of a telecommunication or other electronic communication device, willfully either:*

   2. *Makes a telecommunication or other electronic communication including text, sound or images with intent to terrify, intimidate or harass, or threaten to inflict injury or physical harm to any person or property of that person;*

   3. *Makes a telecommunication or other electronic communication, whether or not conversation ensues, with intent to put the party called in fear of physical harm or death;*

   4. *Makes a telecommunication or other electronic communication, including text, sound or images whether or not conversation ensues, without disclosing the identity of the person making the call or communication and with intent to annoy, abuse, threaten, or harass any person at the called number;*

   5. *Knowingly permits any telecommunication or other electronic communication under the control of the person to be used for any purpose prohibited by this section; and*

   6. *In conspiracy or concerted action with other persons, makes repeated calls or electronic communications or simultaneous calls or electronic communications solely to harass any person at the called number(s).*

**SUMMERS V. TICE, OLIVER V. MILES**

99. Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948), is a seminal California Supreme Court tort law decision relating to the issue of liability where a plaintiff cannot identify with specificity which among multiple defendants caused his harm. The case established the doctrine of alternative liability. Presumably any member of the legal community dealing with torts is familiar with it.

100. In the present case, plaintiff has been bombarded by hundreds of unsolicited, unidentifiable, and untraceable calls. Defendants have placed these calls or contracted with agents or affiliates to place these calls on their behalf to 'collect leads' without being discovered by authorities or consumers damaged by these calls, in violation of many laws. In analogy, each of these calls are the 'pellets' from Summers V. Tice the current plaintiff is being blasted with.

101. Plaintiff is not guilty of any contributory negligence in the receipt of these calls. Plaintiff did not request, invite, or coerce these phone calls from defendants in any way, all contact is unsolicited.

102. Defendants are collectively the hunters, except the analogy is more damning in this case; each defendant has been caught with a 'pellet' with their name basically engraved on it. Each defendant has been identified in conjunction with at least one call. No defendant has an argument they have not fired at least one identified pellet. No defendant can argue they are not part of this group of spam calls.

103. This supposition is further supported by Oliver v. Miles. The court stated (110 So. 668): *'We think that each is liable for the resulting injury to the boy, although no one can say definitely who actually shot him.*

*To hold otherwise would be to exonerate both from liability, although each was negligent, and the injury resulted from such negligence.' (Emphasis added.) 110 So. p. 668.*

104. It is said in the Restatement: 'For harm resulting to a third person from the tortious conduct of another, a person is liable if he * * * (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.' (Rest., Torts, sec. 876(b)(c)).

105. There is no way to determine which parties placed which and each of the hundreds of spoofed and snowshoed phone calls made to plaintiff's phone, and no legal reason it is plaintiff's responsibility to determine. There may be no way to determine which defendants engaged in drunken harassment, intimidation, and the issuance of death threats. Each defendant is negligent, and all defendants should be held jointly liable for all spoofed and snowshoed telephone calls, and all harassment.

106. All defendants should be held jointly liable for all violations of the Telemarketing Act, the TSR, the TCPA, Oklahoma Statutes, Harassment, and Intrusion Upon Seclusion.

## DEFENDANTS' ILLEGAL SPAM AND ROBOCALLING BUSINESSES

### Overview of Defendants' Business Practices
### HERITAGE HARD ASSETS LLC

107. HERITAGE is a Voice over Internet Protocol ("VoIP") business that spams millions of calls and text messages across America to induce potential consumers to buy precious "Hard Assets," coins like "Morgan silver dollars," "Franklin half dollars, and gold or silver bullion at extraordinary markups. HERITAGE offers nothing of real value to the public.

108. The only managers listed for HERITAGE on Florida Sunbiz.org are two companies, MJC WORLD ENTERPRISES LLC, and DAY ONE CONSULTING LLC. The human owners and controllers of this company are hidden from public view, and these companies have no web presence, and no financial presence on websites like crunchbase. It is unclear what they do aside from harass consumers.

109. HERITAGE contacted plaintiff via telephone on February 7th, 2024, from 561-941-9685 to attempt to 'close' one of these unsolicited sales calls.

110. HERITAGE first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

111. HERITAGE placed the identified call on February 7th through VoIP provider TELNYX LLC.

112. On information and belief, HERITAGE knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

113. HERITAGE is in the business of generating robocalls and placing harassing telephone solicitations, or;

114. HERITAGE is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

115. HERITAGE initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

116. PARTNERS, including PATTON, are owners, partners, or decision-making parties at HERITAGE. PARTNERS do or should have knowledge of these activities and the illegal nature of these calls.

117. Both PATTON and counsel for HERITAGE, LUDENS contacted plaintiff on February 11th to attempt to dissuade plaintiff from filing this action. While HERITAGE and PATTON's call on February 11th may not have been abusive, PATTON was rude and abrasive, and the call from LUDENS was abusive and

contributed to later harassment. The call placed by PATTON was from a different VoIP company than the original call; the call was placed via LEVEL 3 COMMUNICATIONS, LLC, the same provider used by RGG and a SPAM-CALLER unidentified at this time.

118. On February 16th, PATTON, HERITAGE, and employees for HERITAGE escalated their harassment in response to this potential action being filed. PATTON, HERITAGE, and employees for HERITAGE called plaintiff from a private number, multiple times throughout the day, and once connected were abusing and harassing. PATTON, HERITAGE, and employees for HERITAGE began the call like a prank call, and then quickly escalated to screaming profanities at plaintiff. They screamed he was an "a**hole;" they screamed they knew where he lives. They screamed that they would kill plaintiff. Plaintiff has not experienced behavior like this since grade school; plaintiff was bullied a great deal in grade school, and experienced great discomfort and emotional duress in response to these juvenile, reckless, abusive, and threatening calls.

## HLV VENTURES

119. HLV is a Voice over Internet Protocol ("VoIP") business that spams millions of calls and text messages across America to induce potential consumers to enter into pre-IPO sales. HLV claims it can offer customers access to SpaceX IPO... this is likely a scam. HLV offers nothing of real value to the public.

120. HLV apparently has no registration information with the New York Secretary of State despite advertising a New York Address. The human owners and controllers of this company are hidden from public view, and these companies have little web presence, and no financial presence on websites like crunchbase. It is incredibly rare for an IPO related business to have no credentials on crunchbase. It is unclear what they do aside from harass consumers.

121. HLV contacted plaintiff via telephone on November 20th, 2023, from 631-780-3303 to attempt to 'close' one of these unsolicited sales calls.

122. HLV first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

123. HLV placed the identified call on November 20th through VoIP provider ONVOY, LLC. ONVOY, LLC is the same provider used by WORLDHARVEST and SOUTHBAY.

124. On information and belief, HLV knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

125. HLV is in the business of generating robocalls and placing harassing telephone solicitations, or;

126. HLV is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

127. HLV initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial and/or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

128. PARTNERS are owners, partners, or decision-making parties at HLV. PARTNERS do or should have knowledge of these activities and the illegal nature of these calls.

## REAGAN GOLD GROUP, LLC

129. RGG is a Voice over Internet Protocol ("VoIP") hedge fund business that spams millions of calls and text messages across America to induce potential consumers to "diversify their portfolios" by purchasing "precious metals" in conjunction with their IRAs. RGG offers nothing of real value to the public and is presumably ruining consumers' retirement plans and savings.

130. RGG's Statement of Information is expired with the California Secretary of State. The human owners and controllers of this company are hidden from public view, and these companies have little web presence, and no information on websites like crunchbase. It is unclear what they do aside from harass consumers.

131. RGG contacted plaintiff via telephone on November 3rd from 561-941-9685 to attempt to 'close' one of these unsolicited sales calls.

132. RGG first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

133. RGG placed the identified call on November 3rd through VoIP provider LEVEL 3 COMMUNICATIONS, LLC, the same provider used by PATTON.

134. On information and belief, RGG knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

135. RGG is in the business of generating robocalls and placing harassing telephone solicitations, or;

136. RGG is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

137. RGG initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

138. PARTNERS are owners, partners, or decision-making parties at HLV. PARTNERS do or should have knowledge of these activities and the illegal nature of these calls.

### ROD PARSLEY AND WORLD HARVEST CHURCH

139. PARSLEY, in conjunction with WORLDHARVEST, runs a Voice over Internet Protocol ("VoIP") business that spams millions of calls and text messages across America to induce potential consumers to donate money to their completely fake religious charity. PARSLEY and WORLDHARVEST offer nothing of real value to the public.

140. The OH secretary of state bears at least 7 separate listings for "World Harvest;" these listings range from 'non-profit' and 'church' to Domestic Limited Liability Company. On information and belief, WORLDHARVEST maintains many business shells to obfuscate its activities and income.

141. WORLDHARVEST first contacted plaintiff via telephone as early as January 19th, 2024, from 614-992-8245 to attempt to 'close' one of these unsolicited sales calls.

142. WORLDHARVEST has attempted to contact plaintiff repeatedly even after being told to stop calling. WORLDHARVEST called plaintiff on the 19th, the 23rd (told to stop calling), the 24th, and the 25th, at minimum. WORLDHARVEST's repeat calling is shameful and constitutes harassment even for the identified calls.

143. WORLDHARVEST is shameless attempting to use religious and non-profit designations to justify massive amounts of illegal behavior.

144. Spamcall recording website Truecaller.com has thousands and thousands of reports for WORLDHARVEST alleging spam, robocalls, and harassment.

145. The Better Business Bureau reports: "According to the information we have at this time, this church or religious organization does not have an IRS designation and/or does not conduct charitable solicitations, for which BBB Charitable Accountability Standards would be applicable. Therefore, BBB does not evaluate this organization concerning BBB Charitable Accountability Standards, and publishes only this informational report. BBB will update this report accordingly, should a change in this status come to our attention."

146. WORLDHARVEST first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

147. WORLDHARVEST placed the calls throughout January through VoIP provider ONVOY, LLC. ONVOY, LLC is the same provider used by HLV and SOUTHBAY.

148. On information and belief, HERITAGE knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

149. WORLDHARVEST is in the business of generating robocalls and placing harassing telephone solicitations, or;

150. WORLDHARVEST is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

151. WORLDHARVEST initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

152. PARTNERS are owners, partners, or decision-making parties at HLV. PARTNERS do or should have knowledge of these activities and the illegal nature of these calls.

## SOUTH BAY GALLERIES LLC

153. SOUTHBAY, similarly to HERITAGE, is a Voice over Internet Protocol ("VoIP") business that spams millions of calls and text messages across America to induce potential consumers to buy precious "Hard Assets," coins like "Morgan silver dollars," "Franklin half dollars, and gold or silver bullion at extraordinary markups. SOUTHBAY offers nothing of real value to the public.

154. SOUTHBAY contacted plaintiff via telephone on February 7th, 2024, at 2:52pm from 561-941-9685 to attempt to 'close' one of these unsolicited sales calls.

155. SOUTHBAY first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

156. SOUTHBAY placed the identified call on February 16th through VoIP provider ONVOY, LLC. ONVOY, LLC is the same provider used by HLV and WORLDHARVEST.

157. On information and belief, SOUTHBAY knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

158. SOUTHBAY is in the business of generating robocalls and placing harassing telephone solicitations, or;

159. SOUTHBAY is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

160. SOUTHBAY initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

161. PARTNERS, including BRANDON MENDELSON, are owners, partners, or decision-making parties at HLV. PARTNERS do or should have knowledge of these activities and the illegal nature of these calls.

162. The five defendants including HERITAGE, HLV, RGG, WORLDHARVEST, and SOUTHBAY all use the same 3 spam VoIP companies.

## TELNYX LLC

163. TELNYX is a Voice over Internet Protocol ("VoIP") service provider that spams many millions of calls and text messages across America for a variety of 'businesses' like HERITAGE, most of which appear to be illegal and abusive as a course of business. TELNYX offers nothing of real value to the public.

164. TELNYX's service was used to contact plaintiff via telephone on February 7th, 2024, from 561-941-9685 to attempt to 'close' one of these unsolicited sales calls.

165. TELNYX first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

166. TELNYX's service was identified in a call on February 7th through in conjunction with HERITAGE.

167. On information and belief, TELNYX knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

168. TELNYX is in the business of generating robocalls and placing harassing telephone solicitations, or;

169. TELNYX is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

170. TELNYX initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

171. TELNYX is a VoIP provider to companies like HERITAGE. TELNYX operates an international VoIP provider and is presumably subject to many telecommunications laws. TELNYX has already been fined in Australia for "failing to reduce scam SMS and to prevent mobile number fraud between 2017 and 2022, breaching anti-scam and public safety obligations" (Exhibit A). TELNYX does or should have knowledge of these activities and the illegal nature of these calls.

172.

Telnyx fined for failing to curb SMS scams, mobile number fraud

| 0 Share | f Share | X Tweet | in Share | ⟨⟩ Share | P Share |

By Ronan Anthony Mendoza

Comments 0 Comments



Telnyx Australia has paid $106,560 infringement notice after the Australian Communications and Media Authority found the telco failed to reduce scam SMS and prevent mobile number fraud between 2017 and 2022, breaching anti-scam and public safety obligations.

The ACMA's investigation found the business allowed at least 4,696 SMS to be sent using text-based sender IDs (i.e. shortened business names) without sufficient checks to ensure they weren't scams.

ACMA chair Nerida O'Loughlin slammed Telnyx's systemic failures that left its customers and the broader community at risk of harm over a lengthy period.

O'Loughlin said being a smaller telco is no excuse to breach the rules.

"Telnyx's breaches weakened the application of anti-scams rules at a time when scam SMS have nearly doubled on many Australians," she said.

Telnyx also not undertake adequate ID checks for its prepaid mobile customers or when transferring customers from other telcos.

The ACMA found Telnyx also failed to pass customer data to the Integrated Public Number Database (IPND) on more than 3,156 occasions between 2017 and 2022.

The IPND is used by Triple Zero to help locate people in an emergency, for the Emergency Alert Service to warn Australians of emergencies and emergencies and the flood or bushfire, and to assist law enforcement activities.

Telnyx is not the only telco having issues with the IPND. Last November the ACMA fined Testra (technology-regulation/telstra-slam-the-naughty-list-in-bird-compliance

173. Reports made with the Better Business Bureau (Exhibits B and C) confirm TELNYX is ignoring consumer reports. Complaints with the BBB include TELNYX selling customer information to third parties, FDCPA violations for harassing collection calls, years of calls from multiple companies that all happen to originate from TELNYX, further supporting claims of spoofing and snowshoeing, "nonstop calls," and even charges to the accounts of consumers that have had no previous interaction with TELNYX. All of these consumer label TELNYX a "scam" or "spam":

18



### Initial Complaint
**08/03/2022**

For several years, I have been bothered and harassed by robocall, telemarketers, SSA-impersonators, car warranty scams, ******** Benefits Advisors and other undesirables from

https://www.bbb.org/us/tx/mckinney/profile/telecommunications/telnyx-llc-0694-1000018248/complaints

2/13/24, 1:43 PM                                           Telnyx LLC | Complaints | Better Business Bureau® Profile

telephone numbers associated with Telnyx. I have brought this issue to Telnyx's attention to no avail. They simply ignore the majority of my complaints and concerns. Occasionally, they choose to respond, but it is very, very rare. I have reported issues to various Telnyx emails (with documented proof of doing so). I have also reported issues here: https://telnyx.com/report-abuse. Nothing seems to make any difference.Here are just VERY few of the recent examples of spammers harassing my cell phone, which has been on the *** since 2006.************ • Violations of TCPA on 02.24.22 at 3:52 PM CST. No response from Telnyx.*************** called on 07.25.22 at 3:10 PM CST. No response from Telnyx.*************** called at 9:20 AM CST on 07.27.22. No response from Telnyx.*************** called at 9:01 AM CST on 08.03.22. No response as of yet from Telnyx.All of the aforementioned facts make me believe that Telnyx is a safe haven for scams and robocalls. They appear to be utilized exclusively by foreign scammers and telemarketers violating TCPA, including but not limited to, SSA calls, car warranty spam, ******** benefits advisors, sales of prescription medications without any prescription and many, many other types of illegal activities.

**Complaint Type:**
Problems with Product/Service
*Status*

174. One consumer complaining to the BBB takes the time to reject the response two times. In 20 years filing and reading BBB complaints, plaintiff has never seen a customer angry enough to do this. The consumer

in Exhibit C confirms many companies, all of which place calls through TELNYX, call and harass them repeatedly.

175. TELNYX is the VoIP provider for HERITAGE. TELNYX was contacted regarding these violations, conducted an investigation, and never suspended service for HERITAGE or responded to plaintiff when approached regarding these illegal calls.

176. TELNYX claims to customers via the responses on its Better Business Bureau listing that it is in compliance with the various federal and state laws listed in this complaint. The BBB listing is full of apologies and finger pointing towards its own customers. However, a quick google search for the words "TELNYX" and "Spam" reveals an entirely different story.

177. TELNYX coaches their customers, like HERITAGE, on how to avoid spam and scam call detection and labeling so they may successfully harass consumers with spam and scam calls:

https://support.telnyx.com/en/articles/4088988-telnyx-how-to-handle-spam-scam-likely

## Telnyx - How to Handle Spam Scam Likely

*We will explain the spam likely flag and what to do in case your number has been flagged.*

Written by Delia
Updated over a work ago

Table of contents                                          ⌄

### Telnyx - How to Handle Spam Likely

**Steps to follow to mitigate a "Spam or Scam Likely" flag on your phone number**



If your phone number has been flagged as "Spam Likely" then:

1. Register your phone number with the FCR at https://www.freecallerregistry.com/fcr/.
2. Add CNAM by going to Mission Control Portal into the "My Numbers" section, find the "spam likely" phone number and click the cog icon for advanced settings. Once in the advanced settings you can enable CNAM Listing and add a custom name. CNAM is not applicable for toll-free numbers. Having CNAM information is important to the engines that analyze and identify phone numbers as "spam likely".

178. One of the reasons TELNYX needs to coach customers on how to be removed from the "Spam or Scam Likely" label is because the phone numbers they issue are already labeled spam/scam, because they facilitate spam/scam calls as a matter of business.

179. CASEM is the CEO of TELNYX. CASEM is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

180. EITHER is COO of TELNYX. EITHER is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

181. WHEDBEE is VP of Engineering of TELNYX. WHEDBEE is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

182. MENA is Head of Product of TELNYX. MENA is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

183. PARTNERS are experienced C-Suite executives in the telephone and VoIP industry and do or should have knowledge of these activities and the illegal nature of these calls.

184. PARTNERS, including CASEM, EITHER, WHEDBEE, and MENA, direct all activities of TELNYX, respectively.

185. PARTNERS, including CASEM, EITHER, WHEDBEE, and MENA do or should have knowledge of these activities and the illegal nature of these calls.

## ONVOY, LLC

186. ONVOY is a Voice over Internet Protocol ("VoIP") service provider that spams many millions of calls and text messages across America for a variety of 'businesses' like HLV, WORLDHARVEST, and SOUTHBAY, most of which appear to be illegal and abusive as a course of business. ONVOY offers nothing of real value to the public.

187. ONVOY's service was used to contact plaintiff via telephone on, November 20th, 2023, from 631-780-3303, January 19th, 24th, 25, and February 16th, 2024, to attempt to 'close' these unsolicited sales calls.

188. ONVOY first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

189. ONVOY's service was identified through the calls described previously in conjunction with HLV, WORLDHARVEST, and SOUTHBAY.

190. On information and belief, ONVOY knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

191. ONVOY is in the business of generating robocalls and placing harassing telephone solicitations, or;

192. ONVOY is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

193. ONVOY initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

194. ONVOY is a VoIP provider to companies like HLV, WORLDHARVEST, and SOUTHBAY. ONVOY is involved in individual lawsuits, class action lawsuits, regulatory investigations, and State Attorneys General Actions. ONVOY operates an international VoIP provider and is presumably subject to many telecommunications laws. ONVOY does or should have knowledge of these activities and the illegal nature of these calls.

195. "INTELIQUENT, a Sinch company", is the parent company of ONVOY. Inteliquent has Better Business Profile similar to TELNYX; consumers complaint of spam calls:

**Initial Complaint**
02/19/2024

**Complaint Type:** Problems with Product/Service
**Status:** Answered ⊘

I think it's harassment envoy LLC is or a subsidiary of that is calling 7- 8 a day it's up to 13 today. ************ that's one of the numbers . There are several they call from. How can I get them to stop it's all hours too. I'm going to seek an attorney and press charges enough is enough¹

**Initial Complaint**
02/19/2024

**Complaint Type:** Problems with Product/Service
**Status:** Resolved ⊘

These scammers keep calling my phone with spoofed numbers pretending to be a legit business. IG Financial

196. The Better Business Bureau has "Scam Reports" about Onvoy from consumers, including calls from spoofed phone numbers, customers losing business due to the quantity of abusive calls, and even calls from apparently fake lawyers' offices:

**BBB Scam Tracker**

‹ Back to search

 This content is based on victim and potential victim accounts. Government agencies and legitimate business names and phone numbers are often used by scam artists to take advantage of people.

Share and help us warn others

**Description**
They keep telling me I owe out money for loans which I never took out they call from numerous Georgia, us numbers every day say they are calling from a lawyers office

**BBB Scam Tracker**

‹ Back to search

This content is based on victim and potential victim accounts. Government agencies and legitimate business names and phone numbers are often used by scam artists to take advantage of people.

Share and help us warn others

**Description**
Onvoy LLC use spoofed numbers to spam call me multiple times a day. Once I noticed they kept calling everyday with random numbers from my area, I silenced those calls with a spam blocker app. I also blocked those numbers, but it's useless. I'm probably losing clients call as well as other important calls, but it's better than answering these scammers. These scammers need to stop, Onvoy LLC (also known as intelliquent I believe) is harassing million of Americans, I'm desperate this is unacceptable.

197. Reports from users of popular Internet website Reddit detail more abuse from ONVOY and angry consumers desperately attempting to avoid their solicitations. Reddit users label ONVOY spammers, scammers and even "f***ing disgusting rats.":



198. CARTER is the owner of Intelliquent. CARTER is an experienced businessman in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

199. SCORZA is the President of Intelliquent. SCORZA is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

200. HYNES is a CEO of Intelliquent. HYNES is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

201. EVANS is a CEO of Intelliquent. EVANS is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

202. TUTEN is COO of ONVOY. TUTEN is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

203. PARTNERS are experienced C-Suite executives in the telephone and VoIP industry and do or should have knowledge of these activities and the illegal nature of these calls.

204. PARTNERS, including CARTER, SCORZA, HYNES, EVANS, and TUTEN direct all activities of Intelliquent, and ONVOY, respectively.

205. PARTNERS, including CARTER, SCORZA, HYNES, EVANS, and TUTEN do or should have knowledge of these activities and the illegal nature of these calls.

### LEVEL 3 COMMUNICATIONS, LLC,
### CENTURYLINK COMMUNICATIONS, LLC

206. LEVEL3 is a Voice over Internet Protocol ("VoIP") service provider that spams many millions of calls and text messages across America for a variety of 'businesses' like HERITAGE and RGG, most of which appear to be illegal and abusive as a course of business. LEVEL3 offers nothing of real value to the public.

207. LEVEL3's service was used to contact plaintiff via telephone on November 3rd, 2023, from 310-424-4206 to attempt to 'close' one of these unsolicited sales calls.

208. LEVEL3 first initiated hundreds of preceding spoofed and snowshoed phone calls to plaintiff's telephone number in order to qualify his phone number as a valid lead, or contracted, assisted, or facilitated another party to do so for their financial benefit.

209. LEVEL3's service was identified in a call on November 3rd through in conjunction with RGG.

210. On information and belief, LEVEL3 knew or consciously avoided knowing that the calls they were initiating violated the TSR, the TCPA, and Oklahoma state law.

211. LEVEL3 is in the business of generating robocalls and placing harassing telephone solicitations, or;

212. LEVEL3 is in the business of robocalling and/or contracting others to make robocalls and other harassing telephone solicitations.

213. LEVEL3 initiated calls, or assisted and facilitated in, or contracted with a third party for the initiation of calls to residential and/or cellular lines using artificial or prerecorded voices or text messages to deliver messages without prior express consent of the recipient.

214. LEVEL3 is a VoIP provider to companies like HERITAGE and RGG. LEVEL3 operates an international VoIP provider and is presumably subject to many telecommunications laws. LEVEL3 and CENTURYLINK have been sued by the government for contempt, kickback charges, and is the subject of multiple class actions suits alleging billing fraud.

215. Reports made with the Better Business Bureau confirm LEVEL3 is ignoring consumer reports. CENTURY/LUMEN has what might be the lowest rating for a company in the history of the Better Business Bureau. CENTURY/LUMEN has a rating of 1.02/5 stars. With 813 reports, 4,065 rating stars were available to LEVEL3. Of these 4,065 stars, 20% are automatic because consumers cannot rate below 1 star. Of the available stars, LEVEL 3 only received 14 of the remaining 3,252 remaining stars. Except for 3 – 5 customers, every single consumer to rate LEVEL3 with the BBB has rated them 1 star.

216. CENTURY and LEVEL3 have received over 3,950 complaints in the last 3 years.

217. LEVEL3 is the VoIP provider for RGG and PATTON. LEVEL3 was contacted regarding these violations, conducted an investigation, and never suspended service for RGG or responded to plaintiff when approached regarding these illegal calls.

218. LEVEL3 claims to customers via the responses on its Better Business Bureau listing that it is in compliance with the various federal and state laws listed in this complaint. The BBB listing is full of apologies and finger pointing towards its own customers. Thousands of consumers complaint of spam calls and call harassment on the BBB regarding LEVEL3 and CENTURY/LUMEN.

## Complaint Details

Note that complaint text that is displayed might not represent all complaints filed with BBB. See details.

_____

**Complaint Type:**
Problems with Product/Service
**Status:**
Unanswered

 **Initial Complaint**
02/09/2024

I have been receiving repeated harassing calls from nonactive numbers affiliated with Level 3 Communications. The most recent calls came from ***** ******** and ***** ********. There is no caller ID and the caller/organization does not leave a message. Upon callback, the automated voice system states the mailbox is full and they are not accepting any calls/messages. Once the numbers are blocked, they continue to call from similar numbers and repeat to harassing/abusive conduct. The telecommunications company need to identify which customers are utilizing and abusing their service to harass unsuspecting victims instead of claiming to only provide a service to others who are making the calls. They are providing a service where bad actors can stalk and/or harass the public with impunity on both ends as the caller cannot be identified and the business is refusing to take action.

219.

220. STOREY is the CEO of LEVEL3 and CENTURY. STOREY is an experienced C-Suite executive in the telephone and VoIP industry and does or should have knowledge of these activities and the illegal nature of these calls.

221. PARTNERS are experienced C-Suite executives in the telephone and VoIP industry and do or should have knowledge of these activities and the illegal nature of these calls.

222. PARTNERS, including STOREY, direct all activities of LEVEL3 and CENTURY, respectively.

223. PARTNERS, including STOREY, do or should have knowledge of these activities and the illegal nature of these calls.

### Overview of Defendant's Illegal Calls

224. Defendants HERITAGE, HLV, RGG, WORLDHARVEST, SOUTHBAY, TELNYX, ONVOY, LEVEL3, and associated PARTNERS, jointly made these spam calls, and will be hereto referred to as 'SPAM-CALLERS.'

225. The phone number SPAM-CALLERS called was assigned to plaintiff naturally and without interference from telephone provider Standup Wireless, which itself runs on the back of the T-Mobile network. The phone number assigned has been recycled and has not been in service for four to five years. Defendants claim they have a legitimate business reason to call plaintiff's phone number, but no legitimate reason exists. Defendants have been calling this phone number nonstop for at least 4 – 5 years with no response, clear harassment, or they have purchased this phone number from illegal lead sellers who

26

have been calling the phone number nonstop from spoofed and snowshoed phone lines described in the complaint above for 4 – 5 years.

226. SPAM-CALLERS contributed to over 300 illegal calls or texts to Plaintiff, and potentially many more. Defendants engage in a variety of illegal practices to avoid detection of illegal calling and phishing for leads. Phone numbers are 'spoofed' or 'snowshoed' to hide test calls to identify consumers with active phone lines. The solicitation from SPAM-CALLERS did not start until plaintiff began answering the hundreds of spoofed calls he was receiving.

227. SPAM-CALLERS have also made millions of calls to other residents across the country. Making illegal, unsolicited calls is an integral, built in part of defendants' business models.

228. The phone calls are designed to sell a variety services and offerings like hard assets (gold and silver coins), IRA products, IPO offerings, and religious redemption. Many of these services and offerings seem to be 'get-rich-quick' scams and offer no real value to the public. These institutions exist solely to enrich PARTNERS.

229. Many of the alleged calls and texts were made by using an automated dialing-announcing device.

230. These alleged calls and texts are known colloquially as "robocalls."

231. Many of the alleged robocalls display a prerecorded message.

232. The alleged robocalls were sent without the recipients' consent.

233. The prerecorded messages were not preceded by a live operator who could have obtained each recipient's consent before the message was delivered.

234. These alleged robocalls were made by telemarketers or sellers, as defined by the TSR.

235. Thus, these alleged telemarketers or sellers are robocallers. Throughout this Complaint, SPAM-CALLER will be synonymous with telemarketer, seller, or robocaller.

236. SPAM-CALLERS violated the TSR by initiating, causing to be initiated, or assisting and facilitating in over 300 illegal calls or texts to Plaintiff, and potentially many more, and millions of calls to other residents across the country.

237. SPAM-CALLERS continue making millions of unsolicited robocalls, despite multiple warnings from Plaintiff and other third parties about the illegal calls for years, including parties on the Do-Not-Call List, according to consumer reporting agencies, private lawsuits, class action lawsuits, government investigations, and State Attorneys General actions.

238. SPAM-CALLERS knew or consciously avoided knowing these calls were illegal.

239. Upon information and belief, SPAM-CALLERS violated the TCPA for the calls they made or caused to be made to Plaintiff and other residents across the country including Oklahoma residents.

240. SPAM-CALLERS violated various Federal and Oklahoma statutes for making or assisting and facilitating in the making of over 300 illegal calls or texts to Plaintiff and millions of calls to other residents across the country including Oklahoma residents.

241. On information and belief, SPAM-CALLERS initiated, caused to be initiated, and/or assisted and facilitated in the initiation of millions of calls to telephone numbers on the Federal Do Not Call List.

242. Spoofing is the display of numbers or other information on a Caller ID that the calling party does not have the right to transmit.

243. Snowshoeing is the practice of using massive quantities of unique numbers for caller ID on a short-term or rotating basis to evade behavioral analytics detection, or to bypass or hinder call blocking or call labeling analytics based on the origination numbers.

244. SPAM-CALLERS initiated, caused to be initiated, and/or assisted and facilitated in the initiation of telephone calls that spoofed Caller ID and utilized snowshoeing.

245. These spoofed and snowshoed telephone numbers called both Plaintiff's telephone number and telephone numbers with Oklahoma area codes.

246. Most of the money earned by SPAM-CALLERS is the result of illegal conduct.

247. Some of these spoofed telephone numbers called Plaintiff's phone, and upon information and belief, some called telephone numbers across the United States, including Oklahoma.

248. SPAM-CALLERS have intruded upon the seclusion of plaintiff by initiating, causing to initiate, and/or assisting or facilitating in the initiation of hundreds of unsolicited telephone calls to plaintiff.

249. SPAM-CALLERS all actively participated in the initiation of or assisted and facilitated in the initiation of illegal robocalls. Thus, all are jointly and severally liable for the illegal conduct.

250. SPAM-CALLERS initiated, caused to be initiated, and/or assisted and facilitated in the initiation of telephone calls that spoofed the Caller ID.

251. These spoofed phone numbers called plaintiff, and upon information and belief, defendants used spoofed telephone numbers to call telephone numbers with Oklahoma area codes.

252. Spoofing is the display of numbers on a Caller ID that the calling party does not have the right to send.

253. SPAM-CALLERS knew or consciously avoided knowing they were routing illegal robocall traffic.

254. From at least August 2023, SPAM-CALLERS assisted in routing hundreds of robocalls to Plaintiff, potentially hundreds more in the preceding months, and millions of robocalls to people all throughout the United States.

255. HERITAGE, HLV, RGG, WORLDHARVEST, and SOUTHBAY are not legitimate businesses. TELNYX, ONVOY, and LEVEL3 are not legitimate businesses. All companies rely on unsolicited, harassing spam telephone calls to operate as a cornerstone of their respective "business" activities.

256. SPAM-CALLERS initiated, or caused to be initiated, or assisted and facilitated in making hundreds of robocalls to Plaintiff and millions of robocalls to people throughout Oklahoma and the nation.

257. Upon information and belief, SPAM-CALLERS initiated or assisted in initiating or routing hundreds of robocalls to Plaintiff.

258. SPAM-CALLERS initiated, caused to be initiated, and/or the assisted and facilitated in the initiation of hundreds of robocalls to Plaintiff and millions of robocalls to people on the Federal and Oklahoma Do Not Call Lists.

259. Upon information and belief, hundreds of calls were made using an automatic dialing-announcing device(s) to plaintiff and/or disseminated prerecorded voice messages or text messages. Millions of similar calls were made to consumers across Oklahoma and the nation.

260. Upon information and belief, the devices in question were able to select and dial a telephone number, and then, working alone or in conjunction with other equipment, disseminate calls, prerecorded or synthesized voice messages, or text messages to plaintiff's phone number.

261. Upon information and belief, the devices in question used techniques such as spoofing and snowshoeing to conceal the origin of calls, the identity of sellers, the real phone number of calls, and the quantity of 'fishing' snowshoe calls.

262. For each of these calls, the caller did not have express or written consent to disseminate the prerecorded voice message, call, text, or solicitation.

263. The prerecorded messages were not preceded by a live operator who could have obtained each recipient's consent before the message was delivered.

264. For most of these calls, defendants did not include the identity of the seller or caller in the initial outbound call.

265. Defendants did not have an existing business relationship or service relationship with the plaintiff or other impacted consumers.

266. *Defendants attempted or assisted and facilitated in the attempt to conceal their caller identity by delivering robocalls that failed to identify defendants.*

**Attorney Harassment**

267. The ABA Model Rules of Professional Conduct (ABA-RULES) 4.3, "Dealing With Unrepresented Person," state: "The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client."

268. The ABA-RULES 3.1 Meritorious Claims And Contentions — Comments section states: "[2] The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."

269. LUDENS and ZPSL acted outside the typical and accepted scope of their employment as licensed attorneys by engaging in bullying, making threats to, harassing, and abusing plaintiff. LUDENS abandoned any pretense at legitimate negotiation or mediation by making claims of vexatious litigation as a defense strategy.

270. Vexatious litigation is a determination made by a judge or appropriate legal authority; it is not a determination made by opposing counsel, an opposing firm, or even the ABA. Attempting to bully and threaten potential litigants out of valid claims is unauthorized practice of law, and it is the kind of behavior the ABA, the FBA, and ZPSL should be ashamed of. Sadly, these organizations, the ABA, and the FBA, and clearly ZPSL, rarely hold their members accountable to the public, and are not worth filing a complaint with.

271. Various ABA and FBA rules require attorneys and firms to prevent, address, and report misconduct:
    a.  ABA 5.1 Responsibilities of a Partner or Supervisory Lawyer
    b.  ABA 8.3 Reporting Professional Misconduct
    c.  ABA 8.4 Misconduct
    d.  FBA 4-3.3 CANDOR TOWARD THE TRIBUNAL
    e.  FBA - 4-5.1 LAW FIRMS AND ASSOCIATIONS RESPONSIBILITIES OF PARTNERS, MANAGERS, AND SUPERVISORY LAWYERS

272. On information and belief, LUDENS shared the reply to plaintiff's demand letter with clients PATTON and HERITAGE, labeled plaintiff's demand letter "vexatious," dismissed the seriousness of the claims, and encouraged clients not to take the matter seriously. It would be hard to imagine how LUDENS' clients escalated from normal phone calls to death threats so rapidly without serious malpractice from LUDENS, including labeling plaintiff "vexatious." If LUDENS called plaintiff a scam artist or anything similar, LUDENS and ZPSL presumably engaged in defamation or defamation per se.

273. On information and belief, ZPSL does not report misconduct of their own members to the ABA or the FBA and does not discourage these types of actions.

274. After learning the conduct of LUDENS led to plaintiff receiving further harassing calls and even death threats, ZPSL made no attempt to report or correct the matter internally, to plaintiff, or to the FBA or ABA associations.

275. LUDENS and ZPSL do not engage in a professional practice of law and but for their egregious behavior, defendants PATTON, HERITAGE, and/or DOEs would not have engaged in extreme harassment and abuse, and the issuance of death threats to plaintiff.

276. LUDENS and ZPSL are in violation of Oklahoma Statute §21-1172. Obscene, threatening or harassing telecommunication or other electronic communications.

277. LUDENS and ZPSL are engaged in assisting the illegal spam calling and harassment of plaintiff.

<u>INDIVIDUAL LIABILITY OF DEFENDANTS</u>

278. Defendants PARTNERS are also individually liable for the conduct alleged herein.

279. Defendants PARTNERS, as officers of SPAM-CALLER companies, possessed and exercised the authority to control the policies and trade practices of SPAM-CALLERS; were responsible for creating and implementing the illegal policies and trade practices of SPAM-CALLERS that are described herein; participated in the illegal trade practices that are described herein; directed or supervised those employees of SPAM-CALLERS who participated in the illegal trade practices that are described herein; and knew or should have known of the illegality of the trade practices that are described herein and had the power to stop them, but rather than stopping them, promoted their use.

280. The Court should pierce the corporate veil between each of the Defendant SPAM-CALLER companies and their respective PARTNERS.

281. PARTNERS controlled SPAM-CALLERs' corporate bank account(s), corporate credit card(s), corporate check book(s), and corporate PayPal account(s).

282. Defendants PARTNERS controlled the illegal conduct of SPAM-CALLERS and are vicariously liable for their conduct.

283. Defendants PARTNERS operated through SPAM-CALLERs respectively and their conduct was one and the same.

284. Defendants PARTNERS conduct through SPAM-CALLERS, has caused harm to consumers.

285. Treating SPAM-CALLERS and defendants PARTNERS as separate entities would further sanction a fraud, promote injustice, and lead to an evasion of legal obligations.

286. Defendants PARTNERS are liable for the illegal conduct alleged herein because they directly participated in the conduct, authorized and directed others who committed the illegal conduct with knowledge of its illegality, or because they controlled the illegal conduct of respective SPAM-CALLER companies and acted through these companies to harm plaintiff and others.

<u>VIOLATIONS OF THE TELEMARKETING SALES RULE</u>

COUNT I

[Violating the Prohibition against Deceptive Telemarketing Acts or Practices]

287. SPAM-CALLERS violated 16 C.F.R. § 310.3 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including Plaintiff and subscribers in Oklahoma.

288. SPAM-CALLERS violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

289. SPAM-CALLERS knew or consciously avoided knowing they or the telemarketers were engaged in an act that violated 16 C.F.R. § 310.3(a)(4).

290. The sellers or telemarketers made false or misleading statements to induce Plaintiff and Oklahoma residents to purchase many overpriced scam products, in violation of 16 C.F.R. § 310.3(a)(4).

291. In some instances, the sellers or telemarketers used misleading or inaccurate caller identification to mislead the Plaintiff and other Florida and Oklahoma residents, in violation of 16 C.F.R. § 310.3(a)(4).

## COUNT II

### (Violating the Prohibition against Abusive Telemarketing Acts or Practices)

292. SPAM-CALLERS violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including Plaintiff and subscribers in Oklahoma.

293. SPAM-CALLERS violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

294. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 16 C.F.R. § 310.4(b)(1)(II)(B).

295. The sellers or telemarketers denied Plaintiff's right to be placed on a registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls, including, but not limited to, harassing Plaintiff for making such a request; hanging up on that Plaintiff; failing to honor the request; requiring the Plaintiff to listen to a sales pitch before accepting the request; requiring a Plaintiff to call a different number to submit the request; and requiring the Plaintiff to identify the seller making the call or on whose behalf the call is made.

## COUNT III

### (Violating the Prohibition against Abusive Telemarketing Acts or Practices)

296. SPAM-CALLERS violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Oklahoma.

297. SPAM-CALLERS violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

298. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 16 C.F.R. § 310.4(b)(1)(III)(B).

299. The sellers or telemarketers initiated outbound telephone calls to Plaintiff whom has stated that he does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited, in violation of 16 C.F.R. § 310.4(b)(1)(III)(B).

## COUNT IV

### (Violating the Prohibition against Abusive Telemarketing Acts or Practices)

300. SPAM-CALLERS violated 16 C.F.R. § 310.4 and 15 U.S.C. § 6102(c) by engaging in a pattern or practice of deceptive telemarketing to residential telephone subscribers, including subscribers in Oklahoma.

301. SPAM-CALLERS violated 16 C.F.R. § 310.3(b) by providing substantial assistance or support to any seller or telemarketer.

302. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 16 C.F.R. § 310.4(b)(1)(v)(A)(I).

303. The sellers or telemarketers initiated outbound telephone calls that deliver a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in § 310.4(b)(4)(iii), in violation of 16 C.F.R. § 310.4(b)(1)(v)(A)(i).

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### COUNT V

### (Violating the Prohibition against Calling Numbers Listed on the National Do Not Call Registry)

304. Upon information and belief, SPAM-CALLERS violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c) by engaging in a pattern or practice of initiating telephone solicitations to residential telephone subscribers, including subscribers in Oklahoma, whose telephone numbers were listed on the National Do Not Call Registry and subscribers that have requested to stop receiving calls.

305. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c).

### COUNT VI

### (Violating the Prohibition against the Use of Artificial or Prerecorded Voice Messages to Residential Telephone Lines)

306. Upon information and belief, SPAM-CALLERS violated 47 C.F.R. § 64.1200(a)(3) and 47 U.S.C. § 227(b)(i)(B) by engaging in a pattern or practice of initiating telephone calls to residential telephone lines, including the line for Plaintiff, and lines in Oklahoma, using artificial or prerecorded voices to deliver a message without the prior express written consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the FCC under 47 U.S.C. § 227(b)(2)(B).

307. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 47 C.F.R. § 64.1200(a)(3) and 47 U.S.C. § 227(b)(i)(B).

### COUNT VII

### (Violating the Prohibition against the Use of Artificial or Prerecorded Voice Messages to Cellular Telephone Lines)

308. Upon information and belief, SPAM-CALLERS violated 47 C.F.R. § 64.1200(a)(1)(iii) and 47 U.S.C. § 227(b)(1)(A)(iii) by engaging in a pattern or practice of initiating telephone calls to cellular telephone lines, including the line of Plaintiff, and lines in Oklahoma, using artificial or prerecorded voices to deliver a message without the prior express consent of the called party and where the call was not initiated for emergency purposes or exempted by rule or order of the FCC under 47 U.S.C. § 227(b)(2)(B).

309. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 47 C.F.R. § 64.1200(a)(1)(iii) and 47 U.S.C. § 227(b)(1)(A)(iii).

### COUNT VIII

### (Violating the Prohibition against Use of Artificial or Prerecorded Voice Messages Without Clear Disclosure of Caller Identity)

310. Upon information and belief, SPAM-CALLERS violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. § 227(d)(3)(A) by initiating telephone calls to residential lines using artificial or prerecorded voices to deliver messages to Plaintiff and residents in Oklahoma, that failed to clearly state, at the beginning of the message, the identity of the business, individual, or other entity responsible for initiating the call.

311. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 47 C.F.R. § 64.1200(b)(1) and 47 U.S.C. § 227(d)(3)(A).

## COUNT IX

### (Violating the Prohibition against Misleading or Inaccurate Caller Identification Information)

312. Upon information and belief, SPAM-CALLERS violated 47 C.F.R. § 64.1604(a) and 47 U.S.C. § 227(e)(1) by engaging in a pattern or practice of initiating telephone calls and, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly caused, directly or indirectly, caller identification services to transmit or display misleading or inaccurate caller identification information to Plaintiff and residents in Oklahoma.

313. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated 47 C.F.R. § 64.1604(a) and 47 U.S.C. § 227(e)(1).

## VIOLATIONS OF OKLAHOMA TELEMARKETING LAWS

### COUNT X

### (Violating §15-775C.3, A - Autodialers)

314. SPAM-CALLERS used an autodialer in violation of §15-775C.3. A in two ways; *A person may not make or knowingly allow a commercial telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.*

315. SPAM-CALLERS used an automated system for the selection and dialing of telephone numbers and played a deliver a recorded text message when the connections were completed without express written consent.

316. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated §15-775C.3. A.

### COUNT XI

### (Violating §15-775C.3, B – Caller ID Spoofing)

317. SPAM-CALLERS are in violation of §15-775C.3. B. *It shall be unlawful for any person who makes a commercial telephonic sales call or causes a commercial telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a commercial telephonic sales call.*

318. SPAM-CALLERS use 'Call Spoofing' technology to deliberately display different caller identification numbers than the number the calls are originating from to conceal the true identity of the callers in violation of §15-775C.3. B.

319. SPAM-CALLERS caused the misleading or inaccurate caller identification information to be transmitted with the intent to defraud one or more recipients of the calls, cause harm to Plaintiff and other

recipients of the calls, or to wrongfully obtain something of value from one or more of the recipients of the calls.

320. Upon information and belief, SPAM-CALLERS were telephone solicitors and/or callers who robocalled Plaintiff and other residents of Oklahoma in violation of §15-775C.3. B.

321. SPAM-CALLERS knew or consciously avoided knowing they or sellers or telemarketers were engaged in an act that violated §15-775C.3. B.

322. Each robocall is two violations of §15-775C.3. B and constitutes two deceptive acts as defined by 78 OK Stat § 78-53.

## COUNT XII

### (Invasion of Privacy : Intrusion Upon Seclusion)

323. SPAM-CALLERS are in violation of common law summarized by the Restatement of the Law, Second, Torts, § 652B Intrusion Upon Seclusion (Invasion of Privacy): *One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person...*

324. Spam calls are highly offensive to the law. The federal government, and most of the fifty states, have all enacted laws to prevent spam calls. Spam calling is such an egregious and difficult to manage offense that legislators have written private causes of action into the law to aid consumers in battling these calls.

325. Spam calls are highly offensive to the reasonable person as a matter of fact. A plethora of companies, apps, and techniques exist to try to avoid these calls, and to no avail. Spam calls are considered highly offensive to peaceful enjoyment by the public.

326. Intrusion Upon Seclusion requires no public element, and no physical element, the intrusion itself is the nature of the infraction.

327. SPAM-CALLERS know or consciously know they are intruding upon the seclusion of plaintiff and millions of other consumers who do not wish to be bothered by them.

## COUNT XIII

### (Oklahoma Statutes, §21-1172. Obscene, threatening or harassing telecommunication or

### other electronic communications; Tort in Essence)

328. All defendants are in violation of Oklahoma Statute §21-1172. Obscene, threatening or harassing telecommunication or other electronic communications, and by extension of tort in essence, liable to plaintiff for damages stemming from harassment.

329. All defendants have participated in sending telecommunications and emails with the intent to terrify, intimidate, harass, and threaten physical injury.

330. All defendants have participated in sending telecommunications and emails, whether or not conversation ensued, with intent to put the party called in fear of physical harm or death.

331. All defendants have participated in sending telecommunications and emails, including text, sound or images whether or not conversation ensued, without disclosing the identity of the person making the call or communication and with intent to annoy, abuse, threaten, or harass plaintiff at the called number.

332. All defendants knowingly permitted telecommunication or other electronic communication under the control of the person to be used for purposes prohibited by this section.

333. All defendants, in conspiracy or concerted action with other persons, made repeated calls or electronic communications or simultaneous calls or electronic communications to harass plaintiff at the called number(s).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.  Enter judgment against all Defendants and in favor of Plaintiff for each violation alleged in this complaint.

2.  Enter judgment against all Defendants SPAM-CALLERS and assess civil penalties up to $50,000 for each violation of the TSR, and award Plaintiff such relief as the Court finds necessary to redress injury from said Defendants' violations of the TSR, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.

3.  Enter a permanent injunction to prevent future violations of the TSR by all Defendants.

4.  Assess against Defendants SPAM-CALLERS and in favor of the Plaintiff damages of one thousand five hundred dollars ($1,500) for each violation of the TCPA found by the Court to have been committed by said willfully and knowingly; if the Court finds Defendants have engaged in violations of the TCPA which are not willful and knowing, then assessing against said Defendants damages of five hundred dollars ($500) for each violation of the TCPA, as provided by 47 U.S.C. § 227.

5.  Assess against Defendants SPAM-CALLERS and in favor of the Plaintiff damages from Invasion of Seclusion, to be determined at a future time.

6.  Assess against all Defendants and in favor of the Plaintiff damages from Oklahoma Statute §21-1172. Obscene, threatening or harassing telecommunication or other electronic communications, to be determined at a future time.

7.  Permanently enjoin Defendants SPAM-CALLERS from violating the TCPA, both generally and specifically, by enumerating the acts in which they which are permanently enjoined from engaging.

8.  Permanently enjoin all Defendants, their agents, representatives, employees, and assigns and any other person acting on behalf of any from engaging in acts prohibited by Oklahoma law, including specifically:

    a.  Making, causing to be made, or the assisting and facilitating in telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party, and

    b.  Intentionally acting to prevent transmission of the telephone solicitor's name or telephone number to the party called when the equipment or service used by the telephone solicitor is capable of creating and transmitting the telephone solicitor's name or telephone number.

    c.  Using technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. A commercial telephone seller or salesperson who makes a call using such technology commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.;

9.  Order Defendants SPAM-CALLERS, jointly and severally, to pay to the State of Oklahoma:

    a.  any and all money obtained through all violations of Oklahoma Statutes §15-775C;

    b.  a civil penalty of thirty thousand dollars ($30,000), or a criminal penalty of thirty thousand dollars ($30,000) for each violation of the TCPA knowingly, under 47 U.S. Code § 227 (e)(5), or, a civil penalty of ten thousand dollars ($10,000), or a criminal penalty of ten thousand dollars ($10,000) for each violation of the TCPA unknowingly, under 47 U.S. Code § 227 (e)(5).

10.  Order Defendants to pay the costs of this action, including costs of investigation incurred by Plaintiff.

11.  Award Plaintiff such other and additional relief as the Court may determine to be just and proper.

<div align="right">

Respectfully submitted,

Anthony Trupia

/s Anthony Trupia

Trupiaar@gmail.com

Pro Se Litigant

</div>

Date: April 13th, 2024

**DEMAND FOR JURY TRIAL**

Subscribed and sworn to before me this 19

day of April       20 24

Notary _____

My Commission Expires_____

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

ANTHONY TRUPIA,

    Plaintiff,

    v.

HERITAGE HARD ASSETS LLC; KYLE PATTON,
individually as Manager/Officer of HERITAGE HARD
ASSETS LLC; HLV VENTURES, an unregistered New
York company; REAGAN GOLD GROUP, LLC; STEVE
FRANCIS, individually as Manager/Officer of
REAGAN GOLD GROUP, LLC; WORLD HARVEST
CHURCH, INC. ; ROD PARSLEY, individually as
Manager/Officer of WORLD HARVEST CHURCH,
INC.; SOUTH BAY GALLERIES LLC; BRANDON
MENDELSON, individually as Manager/Officer of
SOUTH BAY GALLERIES LLC; TELNYX LLC; DAVID
CASEM, individually as Manager/Officer of TELNYX
LLC; IAN EITHER, individually as Manager/Officer
of TELNYX LLC; JAMES WHEDBEE, individually as
Manager/Officer of TELNYX LLC; MANDI MENA,
individually as Manager/Officer of TELNYX LLC;
ONVOY, LLC; BRETT SCORZA, individually as
Manager/Officer of ONVOY, LLC; JAMES HYNES,
individually as Manager/Officer of ONVOY, LLC; G
EDWARDS EVANS, individually as Manager/Officer
of ONVOY, LLC; MATTHEW CARTER JR, individually
as Manager/Officer of ONVOY, LLC; LEVEL 3
COMMUNICATIONS, LLC; JEFF STOREY, individually
as Manager/Officer of LEVEL 3
COMMUNICATIONS, LLC; ZEBERSKY PAYNE SHAW
LEWENZ, a Florida law firm; ZACHARY D LUDENS,
individually as an attorney of ZEBERSKY PAYNE
SHAW LEWENZ; and DOES 1 through 100,
inclusive,

    Defendants.

CASE NO. _____

CJ - 2024 - 2684

**SUMMONS**

To HLV VENTURES, an unregistered New York company:

    You have been sued by the above-named plaintiff, and you are directed to file a written answer to the
attached petition in the court at the above address within twenty (20) days after service of this

1

EXHIBIT
2

summons upon you, exclusive of the day of service. Within the same time, a copy of your answer must be delivered or mailed to the attorney for the plaintiff.

   Unless you answer the petition within the time stated, judgment will be rendered against you with costs of the action.

Issued this ___ day of _____ 20___.

RICK WARREN COURT CLERK

(Seal)

By_____
Deputy Court Clerk

Attorney for Plaintiff:
Name:
Anthony Trupia, (pro se)

Address:
605 SE 21st St
Oklahoma City, OK 73129

Telephone Number:
516-984-0142

**RETURN OF SERVICE**

This summons was served on_____.
                                    Date of Service

_____
Signature of person serving summons

       YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.

2



# OKLAHOMA
## State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR <u>OKLAHOMA COUNTY</u>, OKLAHOMA

Anthony Trupia,
    Plaintiff,

v.

Heritage Hard Assets LLC;  Kyle
Patton, INDIVIDUALLY AS MANAGER/
OFFICER OF HERITAGE HARD ASSETS
LLC; Hiv Ventures, AN UNREGISTERED
NEW YORK COMPANY; Reagan Gold
Group, Llc; Steve Francis, INDIVIDUALLY
AS MANAGER/OFFICER OF REAGAN
GOLD GROUP, LLC; World Harvest Church,
Inc; Rod Parsley,INDIVIDUALLY AS
MANAGER/OFFICER OF WORLD HARVEST
CHURCH, INC; South Bay Galleries Llc;
Brandon Mendelson, INDIVIDUALLY AS
MANAGER/OFFICER OF SOUTH BAY
GALLERIES LLC; Telnyx Llc; David Casem,
INDIVIDUALLY AS MANAGER/OFFICER
OF TELNYX LLC;  Ian Either, INDIVIDUALLY
AS MANAGER/OFFICER OF TELNYX LLC;
James Whedbee, INDIVIDUALLY AS MANAGER/
OFFICER OF TELNYX LLC;  Mandi Mena,
INDIVIDUALLY AS MANAGER/OFFICER OF
TELNYX LLC; Onvoy, Llc; Brett Scorza,
INDIVIDUALLY AS  MANAGER/OFFICER OF
ONVOY, LLC; James  Hynes, INDIVIDUALLY
AS MANAGER/ OFFICER OF ONVOY, LLC;
G. edwards Evans, INDIVIDUALLY
AS MANAGER/OFFICER OF ONVOY, LLC;
Matthew Carter Jr, INDIVIDUALLY AS MANAGER/
OFFICER OF ONVOY, LLC; Level 3 Communications, Llc;
Jeff Storey, INDIVIDUALLY AS MANAGER/OFFICER
OF LEVEL 3 COMMUNICATIONS, LLC; Zebersky
Payne Shaw Lewenz, A FLORIDA LAW FIRM;
Zachary D Ludens, INDIVIDUALLY AS AN
ATTORNEY OF ZEBERSKY PAYNE SHAW
LEWENZ; AND DOES 1 THROUGH 100,
INCLUSIVE,
    Defendants

:

No. CJ-2024-2684
**(Civil relief more than $10,000: OTHER
<..DESCRIPTION OF ACTION..>)**

Filed: 04/22/2024

Judge: Bonner, Anthony L.

---

**EXHIBIT
3**

## PARTIES

Carter Jr, Matthew, Defendant
Casem, David, Defendant
Either, Ian, Defendant
Evans, G. edwards, Defendant
Francis, Steve, Defendant
Heritage Hard Assets LLC, Defendant
Hiv Ventures, Defendant
Hynes, James, Defendant
Level 3 Communications, Llc, Defendant
Ludens, Zachary D, Defendant
Mena, Mandi, Defendant
Mendelson, Brandon, Defendant
Onvoy, Llc, Defendant
Parsley, Rod, Defendant
Patton, Kyle, Defendant
Reagan Gold Group, Llc, Defendant
Scorza, Brett, Defendant
South Bay Galleries Llc, Defendant
Storey, Jeff, Defendant
Telnyx Llc, Defendant
Trupia, Anthony, Plaintiff
Whedbee, James, Defendant
World Harvest Church, Inc, Defendant
Zebersky Payne Shaw Lewenz, Defendant

## ATTORNEYS

None

## EVENTS

None

## ISSUES

For cases filed before 1/1/2000, ancillary issues may not appear except in the docket.

Issue # 1.         Issue: OTHER <..DESCRIPTION OF ACTION..> (OTHER)
                   Filed By: Trupia, Anthony
                   Filed Date: 04/22/2024

                   **Party Name**          **Disposition Information**
                                           Pending.

# DOCKET

| Date | Code | Description | |
|------|------|-------------|---|
| 04-22-2024 | [ TEXT ] | | #1 |
| | | CIVIL RELIEF MORE THAN $10,000 INITIAL FILING. | |
| 04-22-2024 | [ OTHER ] | | |
| | | OTHER <..DESCRIPTION OF ACTION..> | |
| 04-22-2024 | [ DMFE ] | | $ 7.00 |
| | | DISPUTE MEDIATION FEE | |
| 04-22-2024 | [ PFE1 ] | | $ 163.00 |
| | | PETITION | |
| 04-22-2024 | [ PFE7 ] | | $ 6.00 |
| | | LAW LIBRARY FEE | |
| 04-22-2024 | [ OCISR ] | | $ 25.00 |
| | | OKLAHOMA COURT INFORMATION SYSTEM REVOLVING FUND | |
| 04-22-2024 | [ OCJC ] | | $ 1.55 |
| | | OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND | |
| 04-22-2024 | [ OCASA ] | | $ 5.00 |
| | | OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES | |
| 04-22-2024 | [ SSFCHSCPC ] | | $ 10.00 |
| | | SHERIFF'S SERVICE FEE FOR COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | |
| 04-22-2024 | [ CCADMINCSF ] | | $ 1.00 |
| | | COURT CLERK ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | |
| 04-22-2024 | [ CCADMIN0155 ] | | $ 0.16 |
| | | COURT CLERK ADMINISTRATIVE FEE ON $1.55 COLLECTION | |
| 04-22-2024 | [ SJFIS ] | | $ 0.45 |
| | | STATE JUDICIAL REVOLVING FUND - INTERPRETER AND TRANSLATOR SERVICES | |
| 04-22-2024 | [ DCADMIN155 ] | | $ 0.23 |
| | | DISTRICT COURT ADMINISTRATIVE FEE ON $1.55 COLLECTIONS | |
| 04-22-2024 | [ DCADMIN05 ] | | $ 0.75 |
| | | DISTRICT COURT ADMINISTRATIVE FEE ON $5 COLLECTIONS | |
| 04-22-2024 | [ DCADMINCSF ] | | $ 1.50 |
| | | DISTRICT COURT ADMINISTRATIVE FEE ON COURTHOUSE SECURITY PER BOARD OF COUNTY COMMISSIONER | |
| 04-22-2024 | [ CCRMPF ] | | $ 10.00 |
| | | COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE | |
| 04-22-2024 | [ CCADMIN04 ] | | $ 0.50 |
| | | COURT CLERK ADMINISTRATIVE FEE ON COLLECTIONS | |

| | |
|---|---|
| **04-22-2024  [ TEXT ]** | |
| TEXT | |

| | |
|---|---|
| **04-22-2024  [ SMF ]** | $ 120.00 |
| SUMMONS FEE | |

| | |
|---|---|
| **04-22-2024  [ P ]** | |
| PLAINTIFF'S PETITION FOR CIVIL PENALTIES PERMANENT INJUNCTION, OTHER EQUITABLE RELIEF<br>Document Available (#1058520988) 🗋TIFF  🗋PDF | |

| | |
|---|---|
| **04-22-2024  [ TEXT ]** | |
| OCIS HAS AUTOMATICALLY ASSIGNED JUDGE BONNER, ANTHONY L. TO THIS CASE. | |

| | |
|---|---|
| **04-22-2024  [ ADJUST ]** | $ 8.81 |
| ADJUSTING ENTRY: MONIES DUE TO AC09-CARD ALLOCATION | |

**04-22-2024  [ ACCOUNT ]**

ADJUSTING ENTRY: MONIES DUE TO THE FOLLOWING AGENCIES REDUCED BY THE FOLLOWING AMOUNTS:
CJ-2024-2684: AC89 COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE -$0.25
CJ-2024-2684: AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY -$0.25
CJ-2024-2684: AC79 OCIS REVOLVING FUND -$0.63
CJ-2024-2684: AC67 DISTRICT COURT REVOLVING FUND -$0.07
CJ-2024-2684: AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS -$0.02
CJ-2024-2684: AC64 DISPUTE MEDIATION FEES CIVIL ONLY -$0.18
CJ-2024-2684: AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND -$0.04
CJ-2024-2684: AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES -$0.13
CJ-2024-2684: AC31 COURT CLERK REVOLVING FUND -$0.05
CJ-2024-2684: AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL -$0.15
CJ-2024-2684: AC01 CLERK FEES -$7.04

**04-22-2024  [ ACCOUNT ]**

RECEIPT # 2024-5612913 ON 04/22/2024.
PAYOR: TRUPIA/ANTHONY TOTAL AMOUNT PAID: $ 352.14.
LINE ITEMS:
CJ-2024-2684: $275.96 ON AC01 CLERK FEES.
CJ-2024-2684: $8.81 ON AC09 CARD ALLOCATIONS.
CJ-2024-2684: $5.85 ON AC23 LAW LIBRARY FEE CIVIL AND CRIMINAL.
CJ-2024-2684: $1.61 ON AC31 COURT CLERK REVOLVING FUND.
CJ-2024-2684: $4.87 ON AC58 OKLAHOMA COURT APPOINTED SPECIAL ADVOCATES.
CJ-2024-2684: $1.51 ON AC59 COUNCIL ON JUDICIAL COMPLAINTS REVOLVING FUND.
CJ-2024-2684: $6.82 ON AC64 DISPUTE MEDIATION FEES CIVIL ONLY.
CJ-2024-2684: $0.43 ON AC65 STATE JUDICIAL REVOLVING FUND, INTERPRETER SVCS.
CJ-2024-2684: $2.41 ON AC67 DISTRICT COURT REVOLVING FUND.
CJ-2024-2684: $24.37 ON AC79 OCIS REVOLVING FUND.
CJ-2024-2684: $9.75 ON AC88 SHERIFF'S SERVICE FEE FOR COURT HOUSE SECURITY.
CJ-2024-2684: $9.75 ON AC89 COURT CLERK'S RECORDS MANAGEMENT AND PRESERVATION FEE.

Case 5:24-cv-00498-SLP    Document 1-4    Filed 05/15/24    Page 1 of 1

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ANTHONY TRUPIA | HERITAGE HARD ASSETS LLC, et al. |

**(b)** County of Residence of First Listed Plaintiff    Unknown
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Unknown
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Anthony Trupia, Pro Se
605 S.E. 21st St., Oklahoma City, OK 73129; (516) 984-0142

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government   Plaintiff
- ☐ 2   U.S. Government   Defendant
- ☒ 3   Federal Question    *(U.S. Government Not a Party)*
- ☐ 4   Diversity    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 U.S.C. § 6101 et seq.; 16 C.F.R. 310; 47 U.S.C. § 227 et seq.

Brief description of cause:
Alleged Telemarketing Violations

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
05/15/2024

SIGNATURE OF ATTORNEY OF RECORD
/s/ Aaron C. Tifft, OBA #33288

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____