IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY TRUPIA,

    Plaintiff,

    v.

HERITAGE HARD ASSETS LLC; KYLE PATTON,
individually as Manager/Officer of HERITAGE
HARD ASSETS LLC; HLV VENTURES, an
unregistered New York company; REAGAN GOLD
GROUP, LLC; STEVE FRANCIS, individually as
Manager/Officer of REAGAN GOLD GROUP, LLC;
WORLD HARVEST CHURCH, INC. ; ROD PARSLEY,
individually as Manager/Officer of WORLD
HARVEST CHURCH, INC.; SOUTH BAY GALLERIES
LLC; BRANDON MENDELSON, individually as
Manager/Officer of SOUTH BAY GALLERIES LLC;
TELNYX LLC; DAVID CASEM, individually as
Manager/Officer of TELNYX LLC; IAN EITHER,
individually as Manager/Officer of TELNYX LLC;
JAMES WHEDBEE, individually as
Manager/Officer of TELNYX LLC; MANDI MENA,
individually as Manager/Officer of TELNYX LLC;
ONVOY, LLC; BRETT SCORZA, individually as
Manager/Officer of ONVOY, LLC; JAMES HYNES,
individually as Manager/Officer of ONVOY, LLC; G
EDWARDS EVANS, individually as
Manager/Officer of ONVOY, LLC; MATTHEW
CARTER JR, individually as Manager/Officer of
ONVOY, LLC; LEVEL 3 COMMUNICATIONS, LLC;
JEFF STOREY, individually as Manager/Officer of
LEVEL 3 COMMUNICATIONS, LLC; ZEBERSKY
PAYNE SHAW LEWENZ, a Florida law firm;
ZACHARY D LUDENS, individually as an attorney
of ZEBERSKY PAYNE SHAW LEWENZ; and DOES 1
through 100, inclusive,

    Defendants.

FILED

MAY 28 2024

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

NO. CIV-24-498-SLP

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS,
MOTION FOR EXPEDITED DISCOVERY,
AND MOTION TO REMAND**

1

Plaintiff opposes defendants' motions to dismiss, moves the court for expedited discovery of matters crucial to this case, and moves the court to remand this action to Oklahoma State Court for the following reasons:

## Introduction

In his introduction for his Motion to Dismiss, counsel Aaron Tifft for defendants begins this case the way almost all attorneys open their cases against pro se litigants: by disparaging and demeaning Plaintiff for bringing forth a perfectly reasonable legal action.

*"A pastor, a salesman, and a lawyer all call the same man. Unfortunately, this is not the start of a bad joke, but the premise for Plaintiff's discursive 36-page Complaint."* – Aaron Tifft

"Discursive" is another word for "rambling;" counsel seeks to paint Plaintiff as unreasonable, a rambler, to sway the court to his arguments, to sway the court to overlook the many factual errors in defendants' motions, and to justify the constant Rule 11 abuse and deprivation of civil rights the attorneys in this case perform at the direction of their clients. Defendants collectively call Plaintiff every day, despite many demands to stop. Defendants are still calling Plaintiff and harassing him from snowshoe phone numbers while this case moves forward. Defendants' collective action is egregious and offensive to all members of the public, and Plaintiff prays this end with the court issuing strict sanctions. Plaintiff will detail many misstated facts and Rule 11 violations in the filings of Aaron Tifft. Plaintiff requests the court take the fullest sanctions available against these attorneys.

Plaintiff also wishes to tell a joke since that is the way counsel Aaron Tifft begins this case. The joke, and the following excerpts, are from "The Growing Challenge of Pro Se Litigation" by Professor Mark Galanter, professor of Law Emeritus at the University of Wisconsin Law School. Previously Galanter was the John and Rylla Bosshard Professor of Law and South Asian Studies at the University of Wisconsin-Madison and LSE Centennial Professor at the London School of Economics and Political Science.

*"Have you a lawyer?" asked the judge of a young man brought before him.*

*"No, sir," was the answer.*

*"Well, don't you think you had better have one?" inquired His Honor.*

*"No, sir," said the youth. "I don't need one. I am going to tell the truth."*

Professor Galanter has collected jokes about lawyers in volume. This is the joke he personally chooses to lead with when discussing this volume. The jokes suggest how intense anti-lawyer feeling has become among the general American public. It also makes clear that the feeling is often translated into a go-it-alone attitude. Plaintiff has this go-it-alone attitude. Plaintiff has this attitude because he worries he and other normal individual citizens are losing the courts entirely to corporate influence, and

Professor Galanter's data puts Plaintiff's concerns into focus well. Professor Galanter makes the following observations about the clear problems the general public are having in the legal system, the public on whose "reason" justice related decisions should be based on. Access to the courts is becoming too costly, technical, and unreliable for average people:

> A California court survey in 2005 asked 2414 residents whether "the cost of hiring an attorney (kept/might keep) you from going to court." An astounding sixty-nine percent agreed with this proposition... As already noted, sixty-nine percent of Californians polled in 2005 saw the cost of retaining counsel as a significant deterrent to "going to court" at all rather than proceeding unaided.

This increase is despite the incredibly low win rate of pro se litigants. Average members of the public familiar with the modern machinations of these attorneys and the courts nurturing them simply have little to no faith in their ability to express their rights in court, the only forum available to express and validate these rights. The only reason pro se litigation continues to increase is because consumers are desperately trying to find *some way, any way,* to realize their guaranteed civil rights.

> The success rate for pro se litigants in San Francisco in 1993 was not very high, 76.2 percent of them had judgment entered against them. Pro se litigants won only 3.5 percent of their cases...

Pro se representation has been increasing in the last few decades, despite the increasing difficulty. Even by the 90s, individual litigants were struggling to find any way to represent themselves in court, with or without legal assistance, while representation for corporate interests has grown.

> Professor Marc Galanter has provided some statistics concerning the shift in the legal profession. In 1967, fifty-five percent of lawyer time was devoted to individuals and thirty-nine percent to businesses... In the second of the famous Heinz and Laumann studies of the Chicago bar (focusing on 1995) the distribution is even more lopsided. Business gets sixty-four percent of lawyer effort while individuals only get twenty-nine percent.

The preceding excerpts might not be from court cases, but they are entirely reasonable statements, arguments, and conclusions, delivered by a well-respected law professor. Americans entering the various United States court systems come in expecting some kind of reasonable access to justice, and "when those expectations are not fulfilled (which is the case most of the time, if the Hastings data and similar analyses are to be believed) the self-represented are likely to come away feeling a "sense of unfairness, helplessness, and futility." It should not be or feel futile for citizens in the United States of

America, the most powerful and free country on Earth, to express their guaranteed civil rights, <u>and it should especially not be futile to attempt to move past pleading.</u>

*"Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938).*

This court should recognize its duty to ensure that Plaintiff and other pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements like the court in Balistreri v. Pacifica Police Department.

*"This court recognizes that it has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements." Balistreri v. Pacifica Police Department  Id. at 699.*

### The Motion to Dismiss

Mr. Tifft complains: *"Plaintiff repeatedly and improperly included conclusory, vague, and immaterial facts while using 333 paragraphs to attempt stating his claims and allegations... Moreover, the alleged connection between HLV and Oklahoma is a single phone call to the Plaintiffs number, which he received at an unspecified location. A single call is insufficient to exercise specific jurisdiction over HLV. Accordingly, this Court should not exercise personal jurisdiction over HLV and dismiss the claims against it pursuant to Rule 12(b)(2)."*

To begin with, even this small statement gives example to the kind of rules-lawyering defendants hope to rely on. "Rules lawyering" is a pejorative among laymen. Regarding the "one phone call," in an effort to support his jurisdictional claims, Mr. Tifft specifically complains: *"which he received at an unspecified location."* Plaintiff has provided the phone number to defendants, and, *presumably,* Mr. Tifft has read the two bills that are actually relevant to this case, the TCPA and the Telephone Solicitation Act of 2022. The Oklahoma Telephone Solicitation act already addresses this: *§15-775C.3 Prior express written consent required – Modification of caller identification information or voice of the caller. D. There is a rebuttable presumption that a commercial telephonic sales call made to any area code in this state is made to an Oklahoma resident or to a person in this state at the time of the call.* This is also addressed as the final line of Soppet v. Enhanced Recovery, one of the cases very relevant to this

action that Mr. Tifft should also have read: *We conclude that "called party" in § 227(b)(1) means the person subscribing to the called number at the time the call is made. The district court's decision is Affirmed.* Mr. Tifft's complaint is needless whining. This is a non-issue, but it's something for counsel to grasp at while creating his painting.

To make these statements and needless attacks, Mr. Tifft restates elements of Plaintiff's claim in ways they were never stated. To do this, Mr. Tifft studiously avoids all case law that is actually relevant to these circumstances (case law he is very familiar with) and misstates facts and claims from Plaintiff's complaint. For example, Plaintiff does not allege "a single call" from HLV. Plaintiff alleges HLV is part of a "group of spam callers" that have called him, now, over 600 times. <u>Plaintiff explicitly includes Summer v. Tice in the legal brief included with the complaint to make this clear</u>. Plaintiff has invoked joint liability for the group of calls. Plaintiff has no contractual relationship with any of these parties. There is no reason it should be the burden of Plaintiff to untangle the many intricacies and machinations defendants perform and contract together on to avoid detection and legal responsibilities for their many illegal calls and acts.

It appears Mr. Tifft has been on a wild joyride copying and pasting everything from his Federal Question and jurisdiction-dismissal cheat sheet into his filings in an attempt to slow or deter Plaintiff in this suit. Plaintiff has had to waste a week reviewing every time-wasting nugget Mr. Tifft has included here to slow or repel this case. In this motion to dismiss, Mr. Tifft whines "*Plaintiffs numerous and inconsistent allegations amount to an impermissible "shotgun pleading" in violation of Rule 8*," that Plaintiff's complaint is a "shotgun pleading," that Plaintiff's complaint violates rule 8 by "*pervasively utilizing vague and conclusory facts not connected to any cause of action*," and then goes on to vomit every piece of case law he has ever seen regarding these two topics, even though they are mostly irrelevant here. The one conclusory allegation Mr. Tifft cites is the following: "*assertions that various Defendants "offer nothing of real value to the public*." The courts can visit https://hlvventures.com and see even the "conclusions" of Plaintiff are actually quite reasonable. As can be seen in the Corporate Filing, HLV is, supposedly, a Delaware based company. HLV has no registration in place with New York. This is in contrast to the claims on HLV's own website, which list its principal place of business as 125 Wireless Blvd, Suite D, Hauppauge, NY, 11788. HLV also claims, <u>ridiculously</u> on this very same website, that it can grant customers access to an IPO for SpaceX, the SpaceX owned by Elon Musk. <u>There is no SpaceX IPO, HLV does not run a legitimate business.</u> The complaint is full of non-conclusory allegations, defendants just do not wish to see them. Plaintiff alleged he had received almost 300 unsolicited calls

and has records of these calls. Plaintiff has clearly demonstrated cognizable ongoing harm, the bombardment of calls to his phone. Plaintiff has identified a material link between all the sellers in this suit: they all ask for Howard Ship.

Mr. Tifft rants about Rule 8, but studiously avoids Rule 8(f): *Fed. Rule Civ. Proc. 8(f) "All pleadings shall be so construed as to do substantial justice".* Mr. Tifft also studiously avoids all case law that covers this topic in relation to pro se litigants because he has no counter for it, or because it's not on his cheat sheet:

*[A] Petition filed pro se should be reviewed giving the Petition its broadest intendment, construing all allegations in favor of the pro se litigant. Love v.St. Louis City Board of Education, 963 S.W.2d 364, 365 (Mo. Ct. App. 1998).*

*Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers. Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233.*

*The plaintiff's civil rights pleading was 150 pages and described by a federal judge as "inept". Nevertheless, it was held "Where a plaintiff pleads pro se in a suit for protection of civil rights, the Court should endeavor to construe Plaintiff's Pleadings without regard to technicalities." Picking v. Pennsylvania Railway, 151 F.2d. 240, Third Circuit Court of Appeals.*

*A document filed pro se is "to be liberally construed," Estelle, 429 U. S., at 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). Erickson v. Pardus, 551 U.S. 89 (2007).*

When granting review for Erickson v. Pardus, the courts stated: *Deeming these allegations, and others to be noted, to be "conclusory," the Court of Appeals for the Tenth Circuit affirmed the District Court's dismissal of petitioner's complaint. 198 Fed. Appx. 694, 698 (2006). The holding departs in so stark a manner from the pleading standard mandated by the Federal Rules of Civil Procedure that we grant review.*

*It was error for the Court of Appeals to conclude that the allegations in question, concerning harm caused petitioner by the termination of his medication, were too conclusory to establish for pleading*

*purposes that petitioner had suffered "a cognizable independent harm" as a result of his removal from the hepatitis C treatment program. Id., at 698. - Erickson v. Pardus, 551 U.S. 89 (2007).*

*Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atlantic Corp. v. Twombly, 550 U. S. ___, ___ (2007) (slip op., at 7–8) (quoting Conley v. Gibson, 355 U. S. 41, 47 (1957)). - Erickson v. Pardus, 551 U.S. 89 (2007).*

*In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Bell Atlantic Corp., supra, at ___ (slip op., at 8–9) (citing Swierkiewicz v. Sorema N. A., 534 U. S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U. S. 319, 327 (1989); Scheuer v. Rhodes, 416 U. S. 232, 236 (1974)). - Erickson v. Pardus, 551 U.S. 89 (2007).*

Mr. Tifft cites the following: *"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland., 792 F.3d at 1320.* Not only does the complaint give adequate notice of the claims and legal grounds that are described in "36 single spaced pages," defendants have been receiving and ignoring notice of these claims and violations for months. <u>Plaintiff even emailed them a copy of the complaint a month before it was filed</u>. Defendants had every opportunity to avoid litigation and chose this route. They should not now shirk away. This concern is absurd. Further, this should bring much more light to the deleterious shape the official practice of law is coming to under corporate dominance. <u>This complaint, like all the complaints Plaintiff works on, is modeled tightly after complaints written by the various State Attorneys General</u> in an effort to avoid this kind of 'painting' of Plaintiff in a poor light. The courts can review the related Avid and Startel complaints and see Plaintiff's complaint mirrors them tightly. When State Attorneys General make these arguments, the complaints are 'well plead' and respect-worthy; when a pro se litigant practically copies every important element from these same suits, we are "discursive" ramblers. Layman like Plaintiff call this kind of behavior "two-faced." Another perfect example of this comes from Mr. Tifft's motion for dismissal.

Mr. Tifft purposely misstates Plaintiff's allegations, stating Plaintiff complains over a "single, wrong number." Plaintiff alleges all defendants are part of one joint, ongoing injury. The allegation that HLV can not make aloud is that 'they have nothing to do with the snowshoe calls repeatedly connecting to

Plaintiff's phone because their lead generators are responsible' because it is not true. HLV (and every other seller here) has a quite straightforward mechanism to avoid liability here if they want to allege they have nothing to do with these calls: a Third Party claim under Federal Rules of Civil Procedure, Rule 14, Third Party Practice, against the lead generator they work with. HLV could also file a counter claim against other VoIP defendants included for connecting the calls, they also choose not to do this. HLV, and Mr. Tifft representing them, do not wish to admit they work with criminal lead generation agencies, and are jointly responsible for all the calls made. Each defendant here hopes to coordinate with the other defendants in this case the same way they coordinated before the case began (financially) and will stay grouped to continue bullying and harassing Plaintiff as a group. There is a clear factual link between all the sellers in the complaint, tying them to all the snowshoe calls: they all ask for "Howard Ship." Like in Ackerman v. Look Both Ways Ins., the motion to dismiss asks us to overlook an obvious factual link between the identified 'sellers' and the companies they pay to generate leads: *the motion asks the Court to overlook the obvious factual link the Amended Complaint alleges between Millennium Health and the calls the Plaintiff received: The pre-recorded message included a call-back number that returned to a Millennium Health employee. ECF No. 56 ¶¶ 41, 45-46. To conclude that this allegation is insufficient to sustain a claim based on vicarious liability, the Court would have to infer that Infinix sent customers to Millennium Health without Millennium Health's knowledge or against Millennium Health's will. Such an inference would be absurd, and it is not permitted by the law. Iqbal, 556 U.S. at 678. Therefore, the Motion to Dismiss will be DENIED"*

Mr. Tifft complains "Plaintiffs Complaint does not state a claim upon which relief can be granted and should be dismissed." Plaintiff has listed multiple causes of action from the TCPA and Oklahoma Telephone Solicitation act and has properly joined defendants to all illegal conduct described in the complaint. All of Mr. Tiffts arguments rely on misrepresentation of his client being responsible for "one phone call." This complaint should not be dismissed.

While Plaintiff may be misunderstanding the intricacies here, it seems a lot like Mr. Tifft is alleging Plaintiff's complaint is **not well plead.** This would be interesting, because Mr. Tifft has already inferred the complaint is well plead by invoking removal to Federal District Court: *The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the Plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U. S. 109, 299 U. S. 112-113 (1936).* Mr. Tifft

provides the following supporting case law in his brief for <u>his</u> allegation that the complaint is not well plead:

> "In response, a defendant may move to dismiss the Plaintiffs initial pleading, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

> In reviewing such a motion, "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007) (emphasis added).

> Instead, "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570); see also Shero, 510 F.3d at 1200 ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the Plaintiffs allegations.").

It seems to Plaintiff, who is reasonable, that this motion for dismissal, along with the preceding Removal to Federal District Court filed, is solely for the purpose of slowing or deterring Plaintiff for this legal action. Before Plaintiff moves on to addressing Jurisdiction, we should carefully analyze Part III of Mr. Tiffts filing, "*Plaintiffs allegations demonstrate that the Court does not possess personal jurisdiction over HLV.*" Defendants to this action know that a Removal was inappropriate, and *expect* this case to land back in state court. The proof of this is in Part III here. Despite the fact that Mr. Tifft has removed the case to federal court, it seems <u>Mr. Tifft is preparing a motion to dismiss that is intended to work in Oklahoma State Court</u>. Mr. Tifft cites the following reasons that 'the court' (vaguely) does not possess personal jurisdiction over HLV:

> "Oklahoma's long arm statute for establishing [personal] jurisdiction...sets the limits of the state's jurisdiction over a nonresident to the outer limits permitted of the Oklahoma and United States Constitutions." Montgomery v. Airbus Helicopters, Inc., 2018 OK 17, "I 18, 414 P.3d 824, 829 (citing 12 O.S. § 2004(F)).

> Accordingly, this Court may exercise personal jurisdiction over HLV only if doing so is authorized by statute or would be consistent with the limits imposed by the United States Constitution. Because none of Plaintiff s claims permit nationwide service of process, the Court must undertake the constitutional analysis.

*Plaintiff makes no allegations of continuous or systemic contacts between HLV and Oklahoma that could support general jurisdiction in this Court.*

*"First, [the court] must determine whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "Within this inquiry [the court] must determine whether the defendant purposefully directed its activities at residents of the forum," id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)), "and whether the Plaintiffs claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state,'" id. (quoting Asahi Metal Industry Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987)).*

The intent seems clear. These motions are solely to buy time and deter Plaintiff with legal maneuvering.

### Court Jurisdiction, Removal, and Remand

Mr. Tifft has made quite a lot of arguments and copy and pasted quite a lot of case law regarding jurisdiction in this case, including for the removal to federal district court. The only case he seems to have missed is the landmark case that discusses jurisdiction in TCPA suits: Mims v. Arrow Financial Services, LLC. This is a serious omission when submitting a notice of removal, *which cannot be challenged before processing*.

Mims v. Arrow established that Federal and State Courts hold concurrent jurisdiction over TCPA cases. *We hold, therefore, that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA. - Mims v. Arrow Financial Services, LLC.* The reasoning for this was simple: the Plaintiff invoked the federal question even though the federal bill grants a private right of action in state court. It is important for the court to note: <u>Mims waived their right to hold this action in state court as the bill clearly describes</u>. Mims, the Plaintiff, waived the right imparted by the bill. That is what made federal jurisdiction clear and proper under the federal question in that case. The text from the TCPA regarding this matter is:

*(3) PRIVATE RIGHT OF ACTION.—A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State— (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,*

*(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.*

In a case where a Plaintiff files in State Court under a federal law that guarantees them a civil right to file in state court, the federal district court should not take the case via removal. For the district court to take and hold this case would be to deprive Plaintiff of their guaranteed right, explicitly written into federal law, to file and litigate this case in state court. The 'litigate' part is absolutely implied. The use of the federal question, or diversity, to take this case where jurisdiction is clearly concurrent, is unconstitutional as applied because the TCPA guarantees Plaintiff a right to file in State court. The formula generally used to determine the correct jurisdiction is more useful for inclusion than exclusion, and should not be used to take cases from courts where jurisdiction is proper:

*Because federal law creates the right of action and provides the rules of decision, Mims's TCPA claim, in 28 U. S. C. §1331's words, plainly "aris[es] under" the "laws . . . of the United States." As already noted, supra, at 2, "[a] suit arises under the law that creates the cause of action." American Well Works, 241 U. S., at 260. Although courts have described this formulation as "more useful for inclusion than for . . . exclusion," Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U. S. 804, 809, n. 5 (1986) (quoting T. B. Harms Co. v. Eliscu, 339 F. 2d 823, 827 (CA2 1964)), there is no serious debate that a **federally created** claim for relief is generally a "sufficient condition for federal-question jurisdiction." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U. S. 308, 317 (2005).8 (Underline and bold added by Plaintiff).*

By removing this case to district court, the courts thwart the will of the voters, congress, Plaintiff, and the bill's architects, in favor of corporate lawyers and the criminals they represent. The courts should not make substantial changes designed to make the law "better." When a text can be applied as written, a court ought not revise it:

*"Courts do try to avoid imputing nonsense to Congress. This means, however, modest adjustments to texts that do not parse. It does not mean—at least, should not mean—substantive changes designed to make the law "better." That would give the judiciary entirely too much law-making power. When a text can be applied as written, a court ought not revise it by declaring the legislative decision "absurd." See, e.g., Jaskolski v. Daniels, 427 F.3d 456 (7th Cir.2005); United States v. Logan, 453 F.3d 804 (7th Cir.2006), affirmed, 552 U.S. 23, 128 S.Ct. 475, 169 L.Ed.2d 432 (2007); Spivey v. Vertrue, Inc., 528 F.3d 982 (7th Cir.2008). See also John Manning, The Absurdity Doctrine, 116 Harv. L.Rev. 2387 (2003). Nor should a court try to keep a statute up to date. Legislation means today what it meant when enacted. See, e.g., National Broiler Marketing Ass'n v. United States, 436 U.S. 816, 827, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978)." – Soppet v. Enhanced Recovery*

The following excerpts are from the Mims v. Arrow Ruling:

*Moreover, by providing that private actions may be brought in state court "if otherwise permitted by the laws or rules of court of [the] State," 47 U. S. C. §227(b)(3), Congress arguably gave States leeway they would otherwise lack to "decide for [themselves] whether to entertain claims under the [TCPA]," Brill, 427 F. 3d, at 451. See Brief for Respondent 16 (Congress "le[ft] States free to decide what TCPA claims to allow.").12*

*Consumer complaints about abuses of telephone technology—for example, computerized calls to private homes—prompted Congress to pass the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U. S. C. §227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.*

*Although over half the States had enacted statutes restricting telemarketing, Congress believed that federal law was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." Ibid. (internal quotation marks omitted).*

*Beyond doubt, the TCPA is a federal law that both creates the claim Mims has brought and supplies the substantive rules that will govern the case.* The rules supplied in the law support Plaintiff's filing, and litigating, in State Court.

The entire purpose of this law is to prevent interstate operators from evading legal action, and half of that purpose is to allow residents to hold these actors accountable in state court. The courts should disfavor removal, and favor remand here. *"There is a strong presumption against removal, Gaus v. Miles Inc., 980 F.2d 564, 566 (9th Cir. 1992); removal statutes are strictly construed, Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217–218 (3d Cir. 1999); and uncertainties are to be resolved in favor of remand, Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S 1, 10–11 (1983); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994), because, in major part, federal courts have limited jurisdiction and* <u>*removal deprives Plaintiffs of their chosen forum*</u>*."* (Underline added by Plaintiff)

The federal district court taking a case from a Plaintiff who followed the plain text of the law and filed as directed in State Court is overreach. In the Papers of John Marshall 95 (Charles Cullen ed., 1984), he stated: (*If the judicial power extended to every question under the Constitution it would involve almost every subject proper for legislative discussion and decision; if to every question under the laws and treaties of the United States it would involve almost every subject on which the executive could act. The division of power [among the branches of government] could exist no longer, and the other departments would be swallowed up by the judiciary.*).

Finally, we should consider the statements of the bill sponsor, Senator Hollings. To be clear, because <u>Plaintiff is not a liar carefully avoiding inconvenient case law or facts by omission</u>, *"the views of a single legislator, even a bill's sponsor, are not controlling." Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U. S. 102, 118 (1980).* While the views of the bill's sponsor are not controlling, the court should consider these views inside the framework and reach of the law and strive to meet them when able.

*"The provision would* <u>*allow consumers to bring an action in State court*</u> *against any entity that violates the bill."* <u>(Underline added by Plaintiff)</u>

*"The substitute bill contains a private right-of-action provision that will make it* <u>*easier*</u> *for consumers to recover damages from receiving these computerized calls."* <u>(Underline added by Plaintiff)</u>

*"it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. . . . However,* <u>*it would defeat the purposes of the bill if the attorneys' costs to*</u>

*consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.*" 137 Cong. Rec. 30821–30822 (1991). (Underline added by Plaintiff)

It should be noted that time, difficulty to overcome motions, especially frivolous ones, and money are all extra costs that are stacking up for Plaintiff and similarly situated parties. None of the motions filed by counsel for defense so far have any merit. The purpose of these motions is to violate Federal Rules of Civil Procedure, Rule 11(b)(1 and 2), and to deprive Plaintiff of his civil right to have this action heard in a court of law, and to buy time for defendants who are scrambling to figure out what lie, misrepresentations, or technical plays they can rely on to avoid going before a jury on this suit:

*(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:*

*(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;*

*(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;*

In the Notice of Removal Mr. Tifft files, he claims, in an effort to build the federal question requirements: "*Plaintiff Anthony Trupia (Plaintiff), appearing pro se, asserted alleged claims in violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. §6101 et seq.), the Telemarketing Sales Rule (16 C.F.R. §310, et seq.), and the Telephone Consumer Protection Act(47 U.S. § 227, et seq.)...*" This is a wild misrepresentation of fact. The causes of action alone are relevant to the federal question, and the causes of action include only the TCPA, State causes of action, and common law. Any references to other bills are part of the brief that should help the courts see the longstanding illegality and abuse of Plaintiff and individual litigants in other cases. There is no way a practicing attorney, even a young one, would make this 'mistake.' There is one set of causes of actions that relates to a federal bill, the causes of action under the TCPA, and the TCPA clearly grants Plaintiff a private right of action in state court. For counsel to studiously avoid this important nuance by omission *and* to include fake causes of action in his request for removal, Mr. Tifft lies to the court in order to take advantage of the removal mechanism and to take advantage of Plaintiff in a forum more suitable for him and other defendants.

Finally, previous to this paragraph, Plaintiff has mentioned Mr. Tiff specifically 33 times, in relation to the many errors and omissions from these filings. The defense has intended for Plaintiff and the courts to focus on Mr. Tiff. Mr. Tiff seems to be the youngest attorney among all the defendants' counsel so far, and this is no coincidence. These errors and omissions are not mistakes. They are exactly the intended result of the guiding hand behind Mr. Tifft: Mark Banner. It was expected that Plaintiff could discover these mistakes, that is why an Oklahoma dismissal attempt is prepared, and counsel Mark Banner plans on blaming the inexperience of his young attorney if attention comes to it. This was a play

13

for time. No less than 3 of the defendants to this action have requested, and even demanded extensions for their time to answer. One even told Plaintiff "The court would frown on him refusing an extension." While Plaintiff would certainly grant extensions in *unusual or unexpected circumstances,* that isn't what's happening here. Each and every defendant was notified months ago about the problems related to this action, and that the action was moving forward. Each defendant had a copy of the complaint draft sitting on their desk a month before it was even filed. Each defendant chose to take no action at all. There is literally no excusable reason defendants should have been able to acquire an extension, and they knew it, <u>so they used the federal question excuse to take it, just days before their answers were due.</u>

## Summary

Each defendant here is scrambling to figure out how to avoid being put in front of an Oklahoma Jury or even an Oklahoma judge that might grant summary judgment. This is actually what each and every filing and delay made by the defense is about. There is not a jury in America that will let these spam callers off the hook, nowhere, nobody. The defense knows this. The court probably know this. None of these defendants has any reasonable or legal excuse for their actions.

The removal of this case to federal court is unjust under the plain meaning of the statute, under the stated intent of the legislature, and when considered next to all the relevant case law. Removal of this case is a deprivation of Plaintiff's civil right to file a complaint in state court as the bill describes, plainly. Most importantly, Plaintiff is deprived of fair, equal, and equitable access to justice in a number of ways if the federal court keeps this case. Plaintiff will be expected to learn many rules and procedures unexpectedly (because Plaintiff followed the plain text of the law, not because Plaintiff was unprepared), both the federal rules of civil procedure and the local court rules. The case law that is relevant could be dramatically different. Penalties for civil judgments could be dramatically different. What Plaintiff discovered this weekend, and can only describe as *stunning*, is that <u>Plaintiff is not even allowed to e-file with the United States District Court For the Western District of Oklahoma…</u> Plaintiff has followed the letter of the law, and been taken to a far away court with completely different customs and rules, and is now not even allowed to conveniently e-file responses to the pile of motions no less than 10 to 20 attorneys will be filing regularly throughout this case. For the court to deny remand is to demand Plaintiff fight this case with both arms tied behind his back at every moment and to capitulate to corporate interests. The amount of time that has been stolen and will be further stolen from Plaintiff by these machinations is extraordinary. This burden is unjust. Further, this will only generate more burden and cost for the courts alongside Plaintiff, who intends to continue this case even if the burdens are extraordinary. Rules lawyering will not deter Plaintiff.

Federal Rules of Civil Procedure, Rule 1. Scope and Purpose, states:

*These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties <u>to secure the just, speedy, and inexpensive determination of every action and proceeding</u>.* (Underline added by Plaintiff)

Plaintiff could not stop defendants from taking this extra time and creating this extra unnecessary work for Plaintiff and the courts, so Plaintiff requests and prays the court construe each of his filings liberally, follow Rule 1, and in the interest of a just, speedy, and inexpensive determination of every action and proceeding, take the following actions immediately, in the order described:

1. Deny defendants' motions to dismiss.
2. Grant motion from Plaintiff to expedite discovery on the narrow matter of permissions to call and establishing the nature of defendants' business, and allow Plaintiff to submit the following Request for Admissions to each seller described in the complaint:
   a. Admit you had no written permission to call Plaintiff.
   b. Admit you had no written permission to call "Howard Ship."
   c. Admit you were calling a purchased lead for "Howard Ship" when you called Plaintiff's phone number.
   d. Admit you pay a 3rd party to qualify or provide sales leads for your company to call.
   e. Admit your company regularly makes interstate calls to purchased leads, including to Oklahoma.
3. Remand this case back to State Court.

Respectfully submitted,

Anthony Trupia
/s Anthony Trupia
Trupiaar@gmail.com
Pro Se Litigant

Date: May 25th, 2024