IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY TRUPIA,

    Plaintiff,

v.

HERITAGE HARD ASSETS LLC; KYLE PATTON, individually as Manager/Officer of HERITAGE HARD ASSETS LLC; HLV VENTURES, an unregistered New York company; REAGAN GOLD GROUP, LLC; STEVE FRANCIS, individually as Manager/Officer of REAGAN GOLD GROUP, LLC; WORLD HARVEST CHURCH, INC. ; ROD PARSLEY, individually as Manager/Officer of WORLD HARVEST CHURCH, INC.; SOUTH BAY GALLERIES LLC; BRANDON MENDELSON, individually as Manager/Officer of SOUTH BAY GALLERIES LLC; TELNYX LLC; DAVID CASEM, individually as Manager/Officer of TELNYX LLC; IAN EITHER, individually as Manager/Officer of TELNYX LLC; JAMES WHEDBEE, individually as Manager/Officer of TELNYX LLC; MANDI MENA, individually as Manager/Officer of TELNYX LLC; ONVOY, LLC; BRETT SCORZA, individually as Manager/Officer of ONVOY, LLC; JAMES HYNES, individually as Manager/Officer of ONVOY, LLC; G EDWARDS EVANS, individually as Manager/Officer of ONVOY, LLC; MATTHEW CARTER JR, individually as Manager/Officer of ONVOY, LLC; LEVEL 3 COMMUNICATIONS, LLC; JEFF STOREY, individually as Manager/Officer of LEVEL 3 COMMUNICATIONS, LLC; ZEBERSKY PAYNE SHAW LEWENZ, a Florida law firm; ZACHARY D LUDENS, individually as an attorney of ZEBERSKY PAYNE SHAW LEWENZ; and DOES 1 through 100, inclusive,

    Defendants.

FILED

JUN 13 2024

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

NO. CIV-24-498-SLP

<u>**PLAINTIFF'S MOTION CHALLENGING CONSTITUTIONALITY OF FEDERAL RULE OF CIVIL PROCEDURE AND LOCAL COURT RULES**</u>

1

## INTRODUCTION, A PLAIN STATEMENT

I wish to make a plain statement, in normal first-person language, and then revert back to the customary language of the court. For the record, I am aware I am always allowed to speak in first person in these motions, however, in truth, I cannot because it is damaging to my action. The entire court system revolves around precedents created in the English language, in very specific syntax, and breaking this syntax often seems to be an excuse for courts to disregard vital, clear, and correct arguments.

Years ago, I was in court being evicted from a rental. I was lucky enough to have contacted a pro bono tenant organization, and they confirmed my notice was defective, and would be able to gain me 14 days longer to figure out where to live. I was up for eviction in this hearing, and my notice to vacate was defective. I understood enough of the law at this time to understand the importance of a defective notice.

I was close to last on the docket, so I watched many evictions heard before mine. A large group of these evictions were all coming from the same apartment complex. The apartment complex apparently had serious problems by more than ten people's accounts: entire sections of ceiling missing, plumbing that hadn't been repaired in months, etc. A new company purchased this apartment complex and thought the speediest resolution would be to just evict all the tenants complaining about these problems (at least 15 parties were evicted from this one apartment complex on the same day). As one of the first came before a judge, she also had pro bono assistance; the attorney explained to the judge that the notice, *the same notice each defendant across from this company received (they were all prepared by a non-attorney office worker), was defective.* The judge acknowledged the notice was defective and granted her 14 more days to find a new place to live.

What happened after that was sad. The judge proceeded to process each defendant after that, from the same apartment complex, all issued defective notices on the same day, and evict all the rest on 24 hours' notice, even though he had clearly just seen evidence all their notices were defective and they were all unrepresented. None of them knew enough to just say "My notice is defective too." At this time, I wanted, terribly, to just do one of those things where you cough and mutter something loudly under your breath, I wanted to say to each of them: "Cough, Cough! Your notice is also defective!"

That is not what I did though. I chose to be a coward instead. I was scared of being evicted on 24 hours' notice, of being homeless with no resources, and I did not have the courage to help all the people who came before me and would go after me, even though I could have. So, I shut my mouth, let my pro bono attorney argue my notice was defective, and scored 14 more days to find a new place to live. I never "Coughed!" and I'm ashamed of it to this day.

In the legal action I have brought before the State of Oklahoma, which this court has taken, I have been bombarded with spam calls, non-stop, for what is close to a year now. <u>The strict, statutory damages for this case potentially amount to as much as two to four million dollars</u>. This would be huge, life-changing money for me, an amount normal people rarely see, I absolutely want these damages. This court has said I may reapply for personal access to ECF; I could list all the financial, temporal, and technical hardships that imply I personally, and alone, should be granted access to the ECF system. This time, however is different from when I was in eviction court, unlike when I was being evicted, <u>I refuse to do this, because it is ethically wrong, and it is not a matter of survival</u>. No amount of money will incentivize me not to file the motion I think is the ethically correct choice. Everybody should have equal access to P.A.C.E.R. and the ECF system, everybody. I have huge, life-changing money on the line, but I want to be a good man more than I want this money. If I have to risk annoying the court and hurting my case to be a good man, that is what I feel compelled to do. Whenever I see lopsided rules like this and research them, they are written by members of the ABA. I have never found an unbalanced rule like this with NBA sponsors, for example. There is a good reason the ABA is often a subject in this motion.

## CONSTITUTIONAL RIGHTS: DUE PROCESS AND THE 14TH AMENDMENT

In the order denying Plaintiff the ability to e-file his documents, after reviewing Plaintiff's basic qualifications, this court stated: *"Under these circumstances, the Court finds no reason to except Plaintiff from the usual restrictions that prohibit electronic filings by pro se litigants."* The court then cites Federal Rules of Civil Procedure: a pro se litigant *"may file electronically only if allowed by court order or by local rule." Fed. R. Civ. P. 5(d)(3)(B)(i)."* The court also cites ECF Policies and Procedures Manual: *"Under this Court's local rules pro se litigants must file paper documents § I(A)(1) and § III(B)."*

This court has asked plaintiff what special reason he has to use the ECF filing system, and Plaintiff asserts he has no special reason and <u>he needs no special reason</u>. Fed. R. Civ. P. 5(d)(3)(B)(i) is unconstitutional as applied, and ECP Policy Rules § I(A)(1) and § III(B) are unconstitutional facially. There are many legal precedents and angles that confirm this, chief among them, the 14th Amendment to the Constitution of the United States.

*"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. <u>No State shall make or enforce any law which shall abridge the **privileges** or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws**</u>."*

This court is a Federal District Court, not a State Court, but the protections of the 14th Amendment are also valid against federal intrusion via reverse incorporation and the 5th Amendment due process clause:

"We have this day held that the Equal Protection Clause of the Fourteenth Amendment prohibits the states from maintaining racially segregated public schools. [Footnote 1] The legal problem in the District of Columbia is somewhat different, however. The Fifth Amendment, which is applicable in the District of Columbia, does not contain an equal protection clause, as does the Fourteenth Amendment, which applies only to the states. But the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and therefore we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process.

Although the Court has not assumed to define "liberty" with any great precision, that term is not confined to mere freedom from bodily restraint. **Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective**". Bolling v. Sharpe, 347 U.S. 497 (1954).

Use of and access to the ECF system cannot be restricted except for a proper governmental objective at minimum. Even if Rational Review Basis is the appropriate standard for determining whether this rule is constitutional, this rule still fails. This standard is *"rationally related" to a "legitimate" government interest, whether real or hypothetical*. Even with this lower standard, there is no legitimate government interest in making it more difficult and expensive for people to access the courts, especially with a system funded by taxpayers to increase public access, and especially when a rule directs clerks to damage and destroy documents.

The standard of review is higher here. Access to the courts is an aspect of the First Amendment as well. "In California Motor Transport Co. v. Trucking Unlimited, 404 U. S. 508, 404 U. S. 510 (1972), we recognized that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731 (1983). The 1st, 5th, and 14th amendments all deal with fundamental civil and human rights, and thus the standard of review should be Strict Scrutiny. The court must prove there is a *compelling state interest* behind the local court rules, the application of the federal rule here in question, and that the law is *narrowly tailored* to achieve its result.

Members of the American Bar association have been unethically fighting for one or another version of "Separate but Equal" for over a century now since the passage of the 13th, 14th, and 15th amendments; it is 2024, and this organization should Just Stop. The passage of the 14th amendment, in 1868, should have put

4

issues of equality and equal access to the courts to rest over a century ago; every state that re-entered the union after the civil war explicitly agreed to these terms, yet members of the ABA have seemingly tried every workaround under the sun to maintain their perceived superiority status and control of the courts, and to abridge the ability of outsiders to access the courts, for over a hundred years now. While this sounds harsh, this isn't plaintiff's opinion, the century of Jim Crow laws is well documented. Unable to stay married to racist principles publicly or legally, it seems the ABA has just shifted its attitudes over to classism instead, and, as a result, has disenfranchised the entirety of the lower and middle classes entirely of due process when members of these classes cannot, or choose not to, use ABA representation. For over a century, ABA members have supported the establishment of separate, underfunded, schools, libraries, access to public services, access to private services... the list is truly exhaustive.

It was not until the *Brown v. Board of Education* cases that this doctrine of "Separate but Equal" was overturned entirely, at least, *officially*. The vestiges of this doctrine are clearly still alive and well in the courts today. However, the complete irrationality of this mindset, and the people continuing it, should finally be clear to even the most outrageous racist. **Plaintiff is a white, male, property owner.** The segregationists, which believed access to the full benefits of the law only belonged to people in this classification, have taken their absurd beliefs and this fight against rational modern thinking so far 100 years later that they find themselves full circle, attempting to bar even white, male property owners from accessing court services.

As plaintiff will detail in many ways, the intent of this rule is to sabotage unrepresented litigants, to prevent them from representing themselves in the practice of law. That is the only purpose of separation rules like this. A person cannot be prevented from practicing law except for valid reasons:

*"Notwithstanding the plenary power of the state's highest court to regulate the practice of law, a state cannot exclude a person from the practice of law for reasons that contravene the Due Process or Equal Protection Clauses of the Fourteenth Amendment. See Schware v. Board of Bar Examiners, 353 U.S. 232, 238-39, 77 S. Ct. 752, 756, 1 L. Ed. 2d 796 (1957). Regardless of whether a state's grant of permission to practice law is a "right" or "privilege," a person cannot be prevented from practicing law except for valid reasons. Id n. 5 (citing Ex parte Garland, A Wall. 333, 379, 18 L. Ed. 366 (1866))."* LeClerc v. Webb, 270 F. Supp. 2d 779 (E.D. La. 2003)

This rule is a sanction imposed upon Plaintiff and all similarly situated unrepresented litigants for the exercise of Constitutional Rights: *"There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights."* Sherar v. Cullen, 481 F. 2d 946 (1973).

The use of personal modern conveniences like computers to read, write, and submit files is part of the modern occupation of the practice of law and is a common right when any court has an available e-file system to use: "*The practice of law is an <u>occupation</u> of common right*." Sims v. Aherns, 271 SW 720 (1925).

## THE BENEFITS OF CM/ECF

The benefits of CM/ECF, which only attorneys are privilege to, are many:

1. Automatically being signed up for E-Service.
2. Automatic email notice of case activity.
3. Secure storage of documents (so files are not misplaced, <u>altered, or destroyed</u>).
4. Elimination of courier fees and costs like gas, paper, ink, printing, postage, and most especially, TIME.
5. Registered attorneys can file case documents from their offices or homes right up to the filing deadline, without worrying about postage, messenger services or traffic congestion.
6. Attorneys can file outside of court hours, in the middle of the night, and even on federal holidays.
7. Attorneys filing over the Internet automatically create docket entries, and docket sheets are updated immediately.
8. An automatic verification, in the form of a "Notice of Electronic Filing," is sent by e-mail to the filer and case parties immediately after filing.
9. Notice of all filings, including attachments, via email without need to sign in to P.A.C.E.R and pay for them or searches.
10. No certificate of service is required when a document is filed using this system, the system generates them automatically.
11. A list of appropriate titles is provided to match against for every filing, ensuring uniformity with the local court syntax and rules.
12. The original filings of the attorneys that use these systems are preserved. The filings of pro se litigants are not only not preserved, they are **altered negatively and then destroyed. This is startling.**

## DISADVANTAGES OF PAPER FILING

The disadvantages of paper filing are many, obvious, and exactly the reason the courts have moved to P.A.C.E.R. and CM/ECF. Plaintiff and all other unrepresented litigants in this court, compared to attorneys, suffer the following artificial and completely unnecessary difficulties in filing:

1. Not automatically being signed up for E-Service.

2. No automatic email notice of case activity.
3. Files are not securely stored. The clerk scans files with a scanner that includes a digital algorithm that 'cleans up' the items it scans, reconstructs them digitally, and **then destroys the originals. Quality, order, and legibility of filings is lost in this process.**
4. Pro se litigants pay for courier fees and costs like gas, paper, ink, printing, postage, and most especially, TIME.
5. Pro se litigants can **NOT** file case documents from their offices or homes right up to the filing deadline, without worrying about postage, messenger services or traffic congestion.
6. Pro se litigants can **NOT** file outside of court hours, in the middle of the night, and even on federal holidays.
7. An automatic verification, in the form of a "Notice of Electronic Filing," is **NOT** sent by e-mail to the filer and case parties immediately after filing.
8. Pro se litigants do **NOT** get notice of all filings, including attachments, via email without need to sign in to P.A.C.E.R and pay for them or searches. Defendant LUDEN, thankfully, is the only attorney in this system who has appropriately seen a problem with this, and has, unrequested, been sending Plaintiff courtesy notices when important filings hit the docket. It is interesting that LUDENS, who appears to be Hispanic, is the only attorney who could see the ethical problem here, while all his fellow white members of the ABA could not.
9. No certificate of service is automatically generated when a document is filed using the paper system, pro se litigants are expected to know of their necessity and file them personally.
10. Pro se litigants have no access to the list of appropriate motion and filing titles.
11. The original filings of the attorneys that use these systems are preserved. The filings of pro se litigants are not only not preserved, they are **altered negatively and then destroyed.** An exhibit is attached to this motion as 'Exhibit A' showing the shocking differences between quality in these different filings. **This is startling. The appropriate word for this in the English dictionary is Sabotage.**
    a. The ECF Policies and Procedures Manual for the OK WD court states, under section III, part B: *"Pro se litigants shall file paper originals of all complaints, pleadings, motions, affidavits, briefs, and other documents. The Clerk will scan these original documents but will retain the paper original only if it is illegible or is needed as a courtesy copy."*
    b. As we can see in Exhibit A to this motion, the copy kept by the Clerk is not a real copy of the document delivered to the clerk. One can look closely and see distortion around the letters

7

of all text in Plaintiff's documents scanned and filed by the clerk. <u>If the courts cannot see the distortion in this Exhibit, it is a perfect example of the harms caused by this rule</u>. The distortion is there and anyone can see it on a PDF.

    c. This distortion is referred to as "artifacts." This distortion is caused by a software program that 'reads' the word and text on Plaintiff's documents, **interprets them,** and reprints the interpretation of what it read. This 'copy' has loss of detail, potentially loses real text and parts of arguments, and literally looks rougher on the eyes. There is a biological incentive for the courts to spend as little time reading these filings as possible. This is **NOT** the same as a photocopy.

    d. In counsel Tifft's removal to federal court, Tifft included a real photocopy of Plaintiff's complaint, as required by the rules of the court. This is a good example of what a true photocopy looks like. It is rougher on the eyes, you can see dots where printer ink fell outside the characters, it is crooked, but, **it is a true copy of the original document, even if the quality is not high.** Pixels have not been re-arranged, text has not been 'cleaned up.'

    e. Even if the courts were to switch to this true photocopy method, pro se filings would still be harder to look at and thus comprehend, to read clearly, and to interpret. In comparison, attorneys submit PDFs directly to the court, every pixel is preserved, images lose no quality, text is not rearranged. When we look at the filings of attorneys using ECF, they are perfectly preserved. Pro se filings are degraded unnecessarily, and then destroyed. The difference is, again, startling.

    f. **Because all pro se filings are scanned, altered, and then destroyed, the judges of this court have not reviewed a single, true, unaltered filing by a pro se litigant since this rule went into place.**

12. Many pro se litigants, like Plaintiff, cannot afford to print in color. Color printers and ink charges are vastly more expensive than black and white printing. Plaintiff cannot afford to submit any motions, filings, or exhibits that have color to this court. Conversely the extra cost in e-filing in color is Zero.

13. Plaintiff, like many other normal pro se litigants in these circumstances, is struggling to get to the courthouse regularly to file these documents. Plaintiff's car is right now in the shop for a second time in a week as multiple mechanics race to get it repaired so plaintiff can file motions and requests without significant unnecessary loss of time with every filing. To be clear, these are

examples of unneeded difficulties all normal people face or may face during paper filing, not an excuse for why Plaintiff alone should be able to e-file.

This court has transitioned to e-file and requires all attorneys to e-file because it is more efficient than paper filing in every single way. This court insists pro se litigants do things in the most inefficient way possible to sanction and penalize pro se litigants for entering this court without counsel. *"There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights."* Sherar v. Cullen, 481 F. 2d 946 (1973).

The 14th Amendment, via reverse incorporation and due process, should be reason enough, alone, to declare the local rules unconstitutional facially. However, there are more reasons to do so:

Rule 1 of Federal Rules of Civil Procedure states the scope and purpose of the rules and instructs the interpretation of all other rules: *"Rule 1. Scope and Purpose - These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."*

The rule does not say to secure the just, speedy, and inexpensive determination of every action and proceeding for attorneys. It does not say to secure the just, speedy, and inexpensive determination of every action and proceeding for the courts. It says generally to secure the just, speedy, and inexpensive determination of every action and proceeding. This general statement includes all actions, all proceedings, all parties, and includes inexpensive determination for unrepresented litigants.

The American Bar Association, which all attorneys present to this action presumably belong to, has input on these issues, even though it appears every licensed attorney will ignore these responsibilities to the public in favor of the billable hour only (bold, underline, and stars added by Plaintiff):

1. The preamble to the Model Rules of Professional Conduct states: *"[1] A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice."* Members are public citizens with special responsibility to maintain and advance the quality of justice.
2. *"[5]...While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process."*
3. *"[6] As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice and the quality of service rendered by the legal profession."*

a. *"In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority."*
b. *"A lawyer should **be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance.** Therefore, all lawyers should devote professional time and resources and use civic influence to **ensure <u>equal</u> access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel.** A lawyer should aid the legal profession in pursuing these objectives and should **help the bar regulate itself in the public interest.**"*

4. *"[7] Many of a lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct, as well as substantive and procedural law. However, **a lawyer is also guided by personal conscience** and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession and **to exemplify the legal profession's ideals of \*<u>public service</u>\*.**"*

5. *"[12] The legal profession's relative autonomy carries with it special responsibilities of self-government. <u>The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar</u>. Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. <u>Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves</u>."*

These rules serve the furtherance of the parochial or self-interested concerns of the bar, not the public. When the courts and the attorneys running them institute rules like this, and then especially when ten to twenty attorneys can see the deleterious effects of such burdensome and illegal rules, and say nothing, it compromises the independence of the profession and the public interest it is supposed to serve.

Every attorney in this case will read and consider this motion. Each attorney reading this motion should be able to clearly see that this rule is an archaic leftover of Jim Crow laws, should be categorically opposed to any homage to that era, and is professionally obligated to put their fingers to the keyboard to challenge such an archaic, unfair, and illegal rule for the preservation of the rights of the public and their own profession. They will not. They are concerned with only winning for their clients. However, if they are operating legally, and intend to win this case on the merits of the law and not procedural difficulties, it should be no problem or conflict for them to state to the court that this rule is illegal and burdensome on

the public. <u>They should theoretically want to make sure there is no good reason to appeal this case should plaintiff lose</u>. The lack of reason and fairness inherent in ABA thinking is clear. 'Separate but Equal' seems to be burned into the soul of the American Bar Association and inseparable from its identity, even when its cumbersome to the practitioners.

### P.A.C.E.R. AND CM/ECF FUNDING AND PURPOSE.

On top of the legal and technical problems with this rule, there are financial problems that need to be addressed by the court. The purpose of P.A.C.E.R. is stated clearly in the name: *Public Access to Court Electronic Records*. The purpose of P.A.C.E.R. is to aid the public, not private institutions like the ABA, in accessing the courts electronically. P.A.C.E.R. is established and funded by the E-Government Act of 2002. These funds are being misallocated knowingly and willfully.

The purpose of P.A.C.E.R. is well documented in the 2002 act, SEC. 2 FINDINGS AND PURPOSES states (bolding and emphasis added by plaintiff):

1. *FINDINGS: (2) The Federal Government has had uneven success in applying advances in information technology to enhance governmental functions and services, achieve more efficient performance, increase access to Government information,* **and increase *citizen* participation in Government.**

2. *PURPOSES (2): To promote use of the Internet and other information technologies to provide increased* **opportunities for citizen participation** *in Government.*

3. *PURPOSES: (5) To promote the use of the Internet and emerging technologies within and across Government agencies to provide* **citizen-centric Government *information and <u>services</u>*.**

4. *PURPOSES: (9) To make the Federal Government more transparent and accountable.*

5. The purpose is also well documented in SEC. 204 FEDERAL INTERNET PORTAL:

    i. *(a) IN GENERAL.— (1) PUBLIC ACCESS.—The Director shall work with the Administrator of the General Services Administration and other agencies to maintain and promote an integrated Internet-based system of providing* **the public with access to Government information and *<u>services</u>*.**

    ii. *(B)* **An ongoing effort to ensure that Internet-based Government services relevant to a given citizen <u>activity are available from a single point</u>.**

6. The purpose of this act and the funding allocated to it are again reinforced in SEC. 207, ACCESSIBILITY, USABILITY, AND PRESERVATION OF GOVERNMENT INFORMATION:

i. *(a) PURPOSE.—The purpose of this section is to improve the methods by which Government information, including information on the Internet, is organized, preserved, and made accessible **to the public**.*

The purpose of the funds allocated to this project, both P.A.C.E.R. and CM/ECF, are allocated for <u>citizens</u> to interact with the federal government digitally, not for lawyers. Section § 3604. E-Government Fund, states the following:

1. *(a)(1) There is established in the Treasury of the United States the E-Government Fund.*
2. *(2) The Fund shall be administered by the Administrator of the General Services Administration to support projects approved by the Director, assisted by the Administrator of the Office of Electronic Government, that enable the Federal Government to expand its ability, through the development and implementation of innovative uses of the Internet or other electronic methods, to conduct activities electronically.* (No mention of lawyers)
3. *(3) Projects under this subsection may include efforts to— "(A) make Federal Government information and services **more readily available to members of the public (including individuals**, businesses, grantees, and State and local governments); "(B) make it easier for **the public** to apply for benefits, receive services, pursue business opportunities, **submit information, and otherwise conduct transactions with the Federal Government;***
4. The public is referenced many, many times in this document. The American Bar Association is not mentioned at all. This bill and its funding are not meant to serve them exclusively, **if at all**.

A top-down look at the funding for P.A.C.E.R. and CM/ECF tell another startling story regarding this matter. P.A.C.E.R. and CM/ECF are together funded by a combination of funding from the 2002 E-Government bill and fees generated on P.A.C.E.R. Because attorneys in this system get NEF notices which allow them to look at documents for free (and because they get them directly via email), attorneys essentially have little to no cost to use P.A.C.E.R. and CM/ECF. CM/ECF itself charges no fees for filing, but is funded by the fees and funds allocated to P.A.C.E.R. Meanwhile, plaintiff, along with the public, pays all the fees and funding for P.A.C.E.R. and CM/ECF, but doesn't receive the most significant benefits. Plaintiff, through these fees, is subsidizing attorneys to use this system for free while he is barred from using the most vital functions, all the functions that actually allow him to interact with his case. Plaintiff is barred from using CM/ECF but pays for opposing attorneys to access it for free. The inequality, and plain misallocation of federally allocated funds, couldn't be more apparent.

In summary, Fed. R. Civ. P. 5(d)(3)(B)(i) is unconstitutional as applied, and ECP Policy Rules § I(A)(1) and § III(B) are unconstitutional on their face. This court should declare them unconstitutional as described in this

motion. There are many laws, precedents, and rules that should have prevented these local rules from ever existing. There are professional rules of conduct that compel each other party in this case to challenge the existence of such archaic, damaging, unfair, and inequal rules every time they see them. These rules are counter to the United State Constitution, the purpose of the bills which create and fund e-filing, counter to Rule 1 of the Federal Rules of Civil Procedure, and counter to the general principles of equal distribution of justice and equal access to justice and the courts. ECP Policy Rules § I(A)(1) and § III(B) should be declared unconstitutional on their face, and this application of Fed. R. Civ. P. 5(d)(3)(B)(i) should be declared unconstitutional as applied. If the various American Bar Association attorneys litigating this case are not classist relics of an outdated and illogical system, if they are honorable men and women of their profession, they should speak up, honor the requirements of their profession, and also challenge these rules.

Respectfully submitted,

/s Anthony Trupia
Pro Se
605 SE 21st St.
Oklahoma City, OK 73129
Email: Trupiaar@gmail.com
Telephone: (516) 984-0142

Date: June 12th, 2024