# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY TRUPIA,

     Plaintiff,

v.                                   Case No. CIV-24-498-SLP

HERITAGE HARD ASSETS LLC, et. al,

     Defendants.

_____/


**DEFENDANTS HERITAGE HARD ASSETS LLC, KYLE PATTON, ZEBERSKY PAYNE SHAW LEWENZ, LLP, AND ZACHARY D. LUDENS, ESQ.'S <u>MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT</u>**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT .............................................................................1

  I.   The Parties .........................................................................................................1

  II.  The Complaint: Plaintiff Sued Heritage, Patton, and Their Counsel......................2

  III.  The Claims Against Heritage, Patton, and Their Counsel Should Be Dismissed........................................................................................................4

ARGUMENT..........................................................................................................6

  I.   Legal Standards.................................................................................................6

      A.   Rule 12(b)(2) Motions to Dismiss for Lack of Personal Jurisdiction .............6

      B.   Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim .....................6

  II.  The Court Lacks Personal Jurisdiction over Defendants ......................................7

      A.   The Court Lacks Specific Jurisdiction over Defendants .............................7

      B.   Defendants Lack Minimum, Purposeful Contacts with Oklahoma..............8

         1.   The Alleged February 7th and 11th Calls to Plaintiff's New York Phone Number Fail to Constitute Minimum Contacts with Oklahoma .........................................................................................8

         2.   The February 11th Calls Fail to Constitute Minimum Contacts with Oklahoma for Additional Reasons ..........................................10

            a.   The February 11th Calls Were Not Purposefully Directed at Oklahoma ......................................................10

            b.   Plaintiff's Alleged Injuries Do Not Arise from the February 11th Calls.................................................11

　　　　3.　　The Conclusory and False Allegations of Patton and Ludens Transacting Business in Oklahoma Are Insufficient .......................... 11

III.　Plaintiff Fails to State a Claim Against Defendants ............................... 13

　　A.　The Litigation Privilege Bars Claims Relating to Prelitigation Efforts to Resolve the Dispute ............................................................ 13

　　B.　The Claims Fail to Satisfy Ordinary Notice Pleading Standards ................ 14

　　C.　The Complaint Fails to Allege That Patton Is Liable for Heritage's Alleged Misconduct .................................................................... 16

　　D.　The Complaint Fails to State a Claim Against Heritage ............................. 18

　　　　1.　　Count I: Abusive Telemarketing ...................................................... 18

　　　　2.　　Counts II to IV: Abusive Telemarketing ......................................... 19

　　　　3.　　Count V: Do-Not-Call Registry Violation ....................................... 20

　　　　4.　　Counts VI, VII, VII, and X: Automated and Artificial Voice Calls ........................................................................................... 20

　　　　5.　　Counts IX and XIII: No Private Right of Action ............................. 22

　　　　6.　　Count XI: Failing to Transmit Caller's Telephone Number ............. 23

　　　　7.　　Count XII: Invasion of Privacy by Intrusion upon Seclusion .......... 23

　　CONCLUSION ........................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*AGM Invs., LLC v. Business Law Group, P.A.*,
   219 So. 3d 920 (Fla. Dist. Ct. App. 2017) ................................................................. 13

*Aikens v. Synchrony Financial d/b/a Synchrony Bank*,
   No. 15-10058,
   2015 WL 5818911 (E.D. Mich. July 31, 2015) ........................................................ 21

*Amaral v. County of Los Angeles*,
   No. 2:16-CV-4767-VBF(E),
   2016 WL 4056299 (C.D. Cal. July 5, 2016) ............................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 6

*Braver v. Clear Sky Financial, LLC*,
   No. CIV-22-710-R,
   2023 WL 5439224 (W.D. Okla. Aug. 23, 2023) ...................................................... 16

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...................................................................................................... 8

*Canal Ins. Co. v. Montello, Inc.*,
   822 F. Supp. 2d 1177 (N.D. Okla. 2011) ................................................................. 17

*Chasse v. M.S. Inv. Mortg. Co.*,
   No. 23-CV-1192,
   2023 WL 8259258 (M.D. Pa. Nov. 29, 2023) ............................................................ 9

*Clark v. Avatar Techs. PHL, Inc.*,
   No. H–13–2777,
   2014 WL 1342033 (S.D. Tex. Apr. 3, 2014) ........................................................... 22

*Coleman v. Farnsworth*,
   90 F. App'x 313 (10th Cir. 2004) ....................................................................... 6, 14

*Curry v. Synchrony Bank, N.A.*,
   No. 1:15CV322–LG–RHW,
   2015 WL 7015311 (S.D. Miss. Nov. 12, 2015) ........................................................ 21

*Dental Dynamics, LLC v. Jolly Dental Group, LLC*,
   946 F.3d 1223 (10th Cir. 2020) ........................................................8, 10–13

*Doane v. Syed*,
   No. 1:19-CV-00111-JPB,
   2020 WL 11191696 (N.D. Ga. Jan. 13, 2020) ........................................................ 22

*Doane v. Tele Circuit Net. Corp.*,
   852 F. App'x 404 (11th Cir. 2021) ........................................................ 22

*Dobronski v. Selectquote Ins. Servs.*,
   462 F. Supp. 3d 784 (E.D. Mich. 2020) ........................................................ 22

*Doyle v. JTT Funding, Inc.*,
   No. LA CV18-06145 JAK (ASx),
   2019 WL 13037025 (C.D. Cal. Dec. 2, 2019) ........................................................ 16

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*,
   950 So. 2d 380 (Fla. 2007) ........................................................ 13

*Eighteen Seventy, LP v. Jayson*,
   32 F.4th 956 (10th Cir. 2022) ........................................................ 6

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021) ........................................................ 21

*Free Conferencing Corp. v. Comcast Corp.*,
   No. CV 15-4076 FMO (PJWx),
   2016 WL 7637664 (C.D. Cal. May 31, 2016) ........................................................ 22#

*George v. Urb. Settlement Servs.*,
   833 F.3d 1242 (10th Cir. 2016) ........................................................ 7

*Gillam v. Reliance First Cap., LLC*,
   No. 21-CV-4774 (JMA) (JMW),
   2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ........................................................ 20

*Gould v. Wyse*,
   No. 22-2075,
   2023 WL 4994511 (10th Cir. Aug. 4, 2023) .................................................... 6

*Grajales v. Genesco, Inc.*,
   No. 8:23-cv-420-SCB-TGW,
   2023 WL 5522698 (M.D. Fla. Aug. 28, 2023) ............................................... 23

*Guadnola v. Hawaii Dep't of Educ.*,
   No. CIV-19-1114-G,
   2021 WL 1093099 (W.D. Okla. Mar. 22, 2021) ................................... 6, 7, 9, 13

*Hart v. Salois*,
   605 F. App'x 694 (10th Cir. 2015) ............................................................... 16

*Hastings v. Triumph Prop. Mgmt. Corp.*,
   No. 15-CV-312-LAB (RBB),
   2015 WL 9008758 (S.D. Cal. Dec. 15, 2015) ................................................. 9

*Hicks v. Alarm.com Inc.*,
   No. 1:20-cv-532,
   2020 WL 9261758 (E.D. Va. Aug. 6, 2020) .................................................. 20

*Humana Pharm. Sols., Inc. v. Michelin*,
   No. 20-81361-CIV-CANNON/Reinhart,
   2021 WL 3403950 (S.D. Fla. June 15, 2021) ............................................... 18

*In re Cedar Funding, Inc., v. R. Todd Neilson*,
   419 B.R. 807 (B.A.P. 9th Cir. 2009) ........................................................... 14

*In re White v. White*,
   No. 20-12251-SAH,
   2021 WL 450992 (Bankr. W.D. Okla. Feb. 8, 2021) ..................................... 15

*Integrated Bus. Techs., LLC v. Netlink Sols., LLC*,
   No. 16–CV–048–TCK–PJC,
   2016 WL 4742306 (N.D. Okla. Sept. 12, 2016) ....................................... 7, 23

*Jackson v. BellSouth Telecomms.*,
   372 F.3d 1250 (11th Cir. 2004) ................................................................. 13

*Klassen v. Solid Quote LLC,*
  No. 23-cv-00318-GPG-NRN,
  2023 WL 7544185 (D. Colo. Nov. 14, 2023) ............................................................ 20

*Koch v. Koch Indus.,*
  203 F.3d 1202 (10th Cir. 2000) .................................................................................. 7

*Legacy Funeral Grp., LLC v. Damiano,*
  No. 4:19-CV-4686,
  2020 WL 6731472 (S.D. Tex. July 20, 2020) ........................................................... 12

*MacFarlane v. McKean,*
  4 F.3d 982, 1993 WL 349674 (1st Cir. 1993) ........................................................... 11

*Magluta v. Samples,*
  256 F.3d 1282 (11th Cir. 2001) ................................................................................. 15

*Michaels v. Micamp Merch. Servs.,*
  No. CIV.A. 13-191E,
  2013 WL 5970340 (W.D. Pa. Nov. 8, 2013) ............................................................... 9

*Montgomery v. Cap. One Bank (USA), N.A.,*
  No. 22-347-SDD-SDJ,
  2023 WL 2705860 (M.D. La. Mar. 14, 2023) ........................................................... 21

*NBA Properties, Inc. v. HANWJH,*
  46 F.4th 614 (7th Cir. 2022)................................................................................10, 14

*Nnodim v. U.S. Bank Tr. Ass'n as Tr. for LB-Igloo Series IV Tr.,*
  No. 22-cv-11125-DLC,
  2023 WL 8114342 (D. Mass. Nov. 22, 2023) ........................................................... 14

*O'Brien & Gere Eng'rs, Inc. v. City of Salisbury,*
  113 A.3d 1129 (Md. App. 2015) ............................................................................... 14

*Rambo v. Am. S. Ins. Co.,*
  839 F.2d 1415 (10th Cir. 1988) .................................................................................. 7

*Rickenbach v. Wells Fargo Bank, N.A.,*
  635 F. Supp. 2d 389 (D.N.J. 2009).......................................................................... 14

*Robbins v. Oklahoma,*
  519 F.3d 1242 (10th Cir. 2008) ............................................................................... 15

*Salmon v. CRST Expedited, Inc.*,
  No. 14-CV-0265-CVE-TLW,
  2016 WL 47876 (N.D. Okla. Jan. 4, 2016) ................................................................. 23

*Samson Inv. Co. v. Chevaillier*,
  988 P.2d 327 (Okla. 1999) ....................................................................................... 13

*Segal v. Forastero, Inc.*,
  322 So. 3d 159 (Fla. Dist. Ct. App. 2021) ............................................................... 17

*Slocum v. City of Claremore*,
  No. 08–CV–756–GKF–PJC,
  2009 WL 2835399 (N.D. Okla. Aug. 28, 2009) ....................................................... 22

*Southwell v. Allstate Prop. & Cas. Co.*,
  No. 20–cv–01272–PAB–KMT,
  2020 WL 4287194 (D. Colo. July 27, 2020) ............................................................ 15

*Stricklen v. O.I.P.M., L.L.C.*,
  394 P.3d 290 (Okla. App. 2016) ..........................................................................13, 14

*Trumper v. GE Capital Retail Bank*,
  No. 2:14–cv–01211 (WJM),
  2014 WL 7652994 (D.N.J. July 7, 2014) ................................................................. 21

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) .................................................................................................. 10

*Wyles v. Brady*,
  822 F. App'x 690 (10th Cir. 2020) ........................................................................... 10

*XMission, L.C. v. Fluent LLC*,
  955 F.3d 833 (10th Cir. 2020) ...................................................................6, 8, 11, 17

## Rules

Rule 12 of the Federal Rules of Civil Procedure ....................................................... 1, 6

**Statutes**                                                          **Page(s)**

15 U.S.C. § 1602 .................................................................................... 18

47 U.S.C. § 227 ............................................................................20, 21, 22

Okla. Stat. § 21-1172 ............................................................................ 22

**Regulations**

16 C.F.R. § 310.3 .................................................................................. 18

16 C.F.R. § 310.4 ..............................................................................18, 19

16 C.F.R. § 310.7 .................................................................................. 18

47 C.F.R. § 64.1200 ..........................................................................20, 22

47 C.F.R. § 64.1604 ............................................................................. 22

**DEFENDANTS HERITAGE HARD ASSETS LLC, KYLE PATTON, ZEBERSKY PAYNE SHAW LEWENZ, LLP, AND ZACHARY D. LUDENS, ESQ.'S <u>MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT</u>**

Defendants Heritage Hard Assets LLC ("Heritage"), Kyle Patton, individually and as Manager/Officer of Heritage ("Patton"), Zebersky Payne Shaw Lewenz, LLP ("ZPSL"), and Zachary D. Ludens, Esq. ("Ludens"), by and through undersigned counsel of record, and pursuant to Rule 12(b)(2) and (b)(6) of the Federal Rules of Civil Procedure ("Rules"), respectfully request that this Court dismiss the claims asserted against them in the Complaint, ECF No. 1-1,[1] with prejudice for the reasons stated herein.

## <u>PRELIMINARY STATEMENT</u>

### I.       The Parties

Plaintiff Anthony Trupia ("Plaintiff") is a self-described "professional" plaintiff who files complaints against dozens of defendants in courts throughout the country, with all fifty states' attorneys general, and state bar grievance committees.  These complaints are based on conspiracies of fraud, *see* Compl. ¶ 53 ("Plaintiff is admittedly very litigious[.]"), and Plaintiff holds out on his Twitter account (@short_straw), "I sue big unethical corporations for a living.  Follow me if you want to see how it's done!"  *See* Compl. ¶ 54; *see also, e.g.*, *Trupia v. Altman*, No. CGC-23-606176 (Cal. Sup. Ct. San Francisco Cnty.), Compl. ¶¶ 1, 11, 73 (filed Apr. 26, 2023) (suing approximately thirty-six defendants for a host of allegations).

---

[1] Plaintiff stylized the Complaint as a "Petition."  Compl. at 1.

Defendant Heritage is a small Florida limited liability company that sells precious metals and rare coins. Defendant Patton is one of Heritage's principals. Defendant ZPSL is outside litigation counsel for Heritage and Patton, and Defendant Ludens is their lead counsel in this lawsuit (and being sued for working in that capacity by calling a New York phone number, as discussed herein).

## II. The Complaint: Plaintiff Sued Heritage, Patton, and Their Counsel

True to form, Plaintiff filed the instant lawsuit, asserting thirteen claims pursuant to the Telephone Consumer Protection Act, Telemarketing and Consumer Fraud and Abuse Prevention Act, and regulations thereunder (collectively, the "TCPA") and related Oklahoma law against approximately twenty-four defendants scattered around the country, including: South Florida; Long Island, NY; Los Angeles, CA; Columbus, OH; and Chicago, IL. Plaintiff also filed complaints with attorneys general and others. Most Defendants are businesses and those businesses' principals—like Heritage and Patton, respectively—which Plaintiff alleges engaged in an illegal telemarketing conspiracy (collectively, "TCPA Defendants"). The remaining two defendants, ZPSL and Ludens (collectively, "Lawyer Defendants"), are the law firm and lawyer representing Heritage and Patton. Importantly, while often lumped together, the Complaint fails to allege any connection between the TCPA Defendants.[2] Additionally, other than alleging that Lawyer

---

[2] The TCPA Defendants consist of entities, collectively alleged as "SPAM-CALLERS" and their principals, who appear to collectively be alleged as "PARTNERS." *E.g.*, Compl. ¶ 224.

Defendants represent Heritage and Patton, there is also no alleged relationship between Lawyer Defendants and any of the remaining Defendants.

In brief, Plaintiff alleges that, as part of a conspiracy to harass him, Heritage placed a single call to Plaintiff on February 7, 2024 (the "February 7th Call"). *See* Compl. ¶ 109. The substance of the call is not alleged, but Plaintiff sent a demand letter to Heritage on the same day, which prompted a return call from Heritage's principal, Patton.[3] *See id.* ¶ 56. Plaintiff then demanded to speak with Heritage's counsel, which prompted a call from ZPSL's representative, Ludens.[4] *See id.* ¶ 57.

Plaintiff then filed suit, apparently alleging damages in Count XIII caused by the two calls on February 11th in response to his demands (collectively, the "February 11th Calls") and damages in all Counts caused by the one February 7th Call—against not only Heritage and Patton but, also, their counsel, Lawyer Defendants. Importantly, it is unclear from the Complaint which claims—if any—pertain to Lawyer Defendants (other than maybe Count XIII, at most).

---

[3] Plaintiff alleges that Patton made this call on February 11, 2024. Heritage and Patton, however, have reviewed their records and confirm that the call was made on February 8, 2024. *See* Decl. of Kyle Patton ¶ 8 (June 27, 2024) ("Patton Decl."). For purposes of ruling on the merits of this Motion (as opposed to personal jurisdiction), the Court must accept Plaintiff's allegations as true, so Heritage and Patton simply note the accurate date for the record. *See infra* Argument, Part I.

[4] Although Plaintiff alleges that this call was also made on February 11, 2024, Lawyer Defendants have a screenshot from their phone system showing the date of the call as February 8, 2024. *See* Decl. of Zachary D. Ludens, Esq. ¶ 10 & Ex. 2 (June 27, 2024) ("Ludens Decl."). Again, the accurate date is stated here only for the record.

**III.    The Claims Against Heritage, Patton, and Their Counsel Should Be Dismissed**

The claims against Heritage, Patton, and Lawyer Defendants should be dismissed with prejudice for the following reasons.

First, the Court lacks personal jurisdiction over them.  None of the Defendants making this Motion are domiciled in Oklahoma for general jurisdiction, and the two alleged calls by Heritage and Patton on February 7th and 11th, as well as the one alleged call by Lawyer Defendants on February 11th, are insufficient in number to support specific jurisdiction over each of those defendants as a matter of law.

Further to specific jurisdiction, the February 7th and 11th Calls were placed to Plaintiff's New York phone number, so no defendants in this case, particularly Heritage, Patton, and the Lawyer Defendants, could have anticipated being haled into court in Oklahoma by placing any calls to that number.

The February 11th Calls also cannot support personal jurisdiction because none of the claims arise from them.  The only arguably related claim is based on an Oklahoma criminal statute, which creates no private right of action.  Additionally, Plaintiff *elicited* those contacts with his demand letter and phone call with Patton, which also precludes jurisdiction based on those calls.

Second, the litigation privilege bars any claims for the February 11th Calls made by Heritage, Patton, and Lawyer Defendants in response to Plaintiff's demand letter because liability cannot arise from conduct by prospective parties and counsel in anticipated litigation—which Plaintiff expressly stated was coming in his February 7th demand letter.

Third, the Complaint fails to satisfy notice pleading standards because of contradictory allegations. Specifically, Plaintiff admits that Heritage's alleged February 7th Call displayed a Florida number while also alleging that the very same call displayed a fake Oklahoma phone number to induce Plaintiff to pick up.

Fourth, the Complaint is an impermissible "shotgun pleading" as the claims improperly reference all defendants collectively, making it nearly impossible for Heritage, Patton, and Lawyer Defendants to discern which claims and allegations apply to them. The Complaint is also worse than a shotgun pleading because it fails to incorporate *any* factual allegations into the specific causes of action and, even if incorporated, would still be insufficient because the Counts merely recite the elements of the claims (which are also incorrectly stated).

Fifth, the conclusory allegations regarding Patton fail to support personal liability based on personal involvement in the February 7th Call or through a veil-piercing theory.

Sixth, the elements of each cause of action are inadequately pled.

Seventh, and finally, the laws on which Plaintiff relies for certain claims do not create a private right of action.

For these and other reasons, Defendants and the claims against them should be dismissed with prejudice.

**ARGUMENT**

I.      **Legal Standards**

      A.      **Rule 12(b)(2) Motions to Dismiss for Lack of Personal Jurisdiction**

On Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to prove personal jurisdiction over *each* defendant.  *See Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022); *Gould v. Wyse*, No. 22-2075, 2023 WL 4994511, at *2 (10th Cir. Aug. 4, 2023).  If the Court rules on such a motion without an evidentiary hearing, the plaintiff must make a *prima facie* showing of jurisdiction based on "uncontested" factual allegations, and conclusory allegations are ignored.  *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020); *see also Jayson*, 32 F.4th at 964; *Gould*, 2023 WL 4994511, at *2.  Allegations in the Complaint are not accepted as true if controverted by defendant's affidavits, but factual disputes in conflicting affidavits are resolved in Plaintiff's favor.  *Guadnola v. Hawaii Dep't of Educ.*, No. CIV-19-1114-G, 2021 WL 1093099, at *1 (W.D. Okla. Mar. 22, 2021).

      B.      **Rule 12(b)(6) Motions to Dismiss for Failure to State a Claim**

Under Rule 12(b)(6), a Complaint must be dismissed unless it alleges sufficient facts to "state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts must accept all factual allegations as true, but legal "conclusions[] and a formulaic recitation of a cause of action's elements will not do," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007), nor will "allegations [that] are contradicted by [] other allegations," *Coleman v. Farnsworth*, 90 F. App'x 313, 316 (10th Cir. 2004).

Additional facts must be alleged under Rule 9(b) if "factual allegations underlying a particular theory of recovery 'sound in fraud,'" even without a fraud claim. *Integrated Bus. Techs., LLC v. Netlink Sols., LLC*, No. 16-CV-048-TCK-PJC, 2016 WL 4742306, at *4 (N.D. Okla. Sept. 12, 2016). In that event, the complaint must allege "the 'who, what, where, when, and how' of the alleged fraud," including "'the time, place and contents of the false representations, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000); *see George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016).

## II.     The Court Lacks Personal Jurisdiction over Defendants

The Court should dismiss Defendants and the claims against them with prejudice for lack of personal jurisdiction. The Complaint, ¶¶ 4, 6, 45–48, concedes that Defendants are domiciled only in Florida, so Oklahoma lacks general jurisdiction over them. *Guadnola*, 2021 WL 1093099, at *2. Thus, only specific jurisdiction could apply, but as shown below, it does not. *See id.* (noting that jurisdiction is "either general . . . or specific").

### A.     The Court Lacks Specific Jurisdiction over Defendants

The two-part legal analysis for specific jurisdiction "collapses into the single due process inquiry" because the jurisdictional reach of Oklahoma's long-arm statute and the U.S. Constitution is the same. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). For personal jurisdiction to satisfy due process: (1) the "defendant must have 'purposefully established minimum contacts within the forum state'"; and (2) "the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial

justice." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020). Plaintiff cannot prove either of these elements as to any of Heritage, Patton, *or* Lawyer Defendants.

## B. Defendants Lack Minimum, Purposeful Contacts with Oklahoma

The first element, minimum contacts, requires that (1) the defendant "purposefully directed its activities at residents of the forum state" and (2) "the plaintiff's injuries [arose] out of [those] forum-related activities." *Id.* For purposeful direction, the "contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'" *XMission*, 955 F.3d at 839–40. That requires a "'fair warning'—[that is,] knowledge that 'a particular activity may subject [it] to the [state's] jurisdiction.'" *Jayson*, 32 F.4th at 966 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Thus, "solely . . . random, fortuitous, or attenuated contacts" are insufficient, and "mere foreseeability of causing injury in another state is insufficient" as well. *Dental Dynamics*, 946 F.3d at 1229. Here, neither requirement for minimum contacts is satisfied.

### 1. The Alleged February 7th and 11th Calls to Plaintiff's New York Phone Number Fail to Constitute Minimum Contacts with Oklahoma

The February 7th and 11th Calls to Plaintiff fail to support personal jurisdiction over Heritage, Patton, ZPSL, and Ludens as a matter of law because they could not have purposefully directed their activity toward Oklahoma by calling Plaintiff's New York

phone number.[5] *See Guadnola*, 2021 WL 1093099, at *3 (citing TCPA cases) (finding no jurisdiction in TCPA case in Oklahoma over Hawaiian defendant that made unconsented, automated calls to Oklahoma resident who received the calls in Oklahoma because defendant called "a Hawaii-based cell phone number" and, therefore, could not "have been aware of [] Oklahoma residency"); *Chasse v. M.S. Invs. Mortg. Co.*, No. 23-CV-1192, 2023 WL 8259258, at *2 (M.D. Pa. Nov. 29, 2023) (collecting cases) ("As numerous other federal courts in this circuit and elsewhere have held, where a defendant's only relevant contact with the forum is placing a telemarking phone call to an individual within the forum state, but the call was placed to a number bearing an area code of a different state, there is no basis for finding that the defendant purposefully directed activities at the forum."); *Hastings v. Triumph Prop. Mgmt. Corp.*, No. 15-CV-312, 2015 WL 9008758, at *2 (S.D. Cal. Dec. 15, 2015) (same); *Michaels v. Micamp Merch. Servs.*, No. CIV.A. 13-191E, 2013 WL 5970340, at *4 (W.D. Pa. Nov. 8, 2013) (same); *supra* Argument, Part I(A) (citing cases allowing affidavits to dispute jurisdiction); Ludens Decl. ¶¶ 6–7, 10 & Exs. 1–2; Patton Decl. ¶¶ 7–8 & Ex. 1.

---

[5] Indeed, Plaintiff claims that Lawyer Defendants engaged in the unauthorized practice of law in Oklahoma, but Ludens is a duly licensed New York attorney who solely called a New York phone number.

### 2. The February 11th Calls Fail to Constitute Minimum Contacts with Oklahoma for Additional Reasons

#### a. The February 11th Calls Were Not Purposefully Directed at Oklahoma

The February 11th Calls to Plaintiff are exactly the kind of "contact" that *Dental Dynamics* describes as "insufficient" for purposeful direction. 946 F.3d at 1229. Plaintiff alleges that, in response to his demand letter to Heritage, Patton called to resolve the purported dispute. Compl. ¶¶ 56–57, 60. Plaintiff also concedes that he told Patton to have Heritage's attorneys call Plaintiff, which prompted the call from ZPSL through Ludens. *See id.* Such a random and fortuitous call by each Defendant cannot constitute purposeful direction, especially as to Ludens and ZPSL, whose client just happened to attract the ire of Plaintiff. *See Wyles v. Brady*, 822 F. App'x 690, 695–96 (10th Cir. 2020); *Dental Dynamics*, 946 F.3d at 1229 (holding that "random, fortuitous, or attenuated contacts" fail to constitute purposeful direction), 1231 (exchanging text messages "many times" insufficient to confer personal jurisdiction); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293, 295 (1980) (finding no jurisdiction in Oklahoma over East Coast automobile retailers, whose only contact there was the 'fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma").

Additionally, the single February 11th Call from each of Heritage, Patton, ZPSL, and Ludens cannot be a minimum contact because each call resulted from Plaintiff improperly "luring" them to Oklahoma with his demand letter and subsequent request to speak with Heritage's counsel. *See, e.g.*, *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614,

625 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577 (2023) ("[T]he plaintiff-initiated contact arose after the plaintiffs filed suit—solely to lure the defendants into Illinois to establish personal jurisdiction over them"); *MacFarlane v. McKean*, 4 F.3d 982, 1993 WL 349674, at *3 (1st Cir. 1993).  Therefore, the alleged phone call to Plaintiff to resolve his purported dispute was not purposefully directed at Oklahoma.

> **b.** **Plaintiff's Alleged Injuries Do Not Arise from the February 11th Calls**

The February 11th Calls are not sufficient minimum contacts because Plaintiff's alleged injuries do not arise from them.  *See Dental Dynamics*, 946 F.3d at 1229.  Plaintiff's purported injuries from the alleged telemarketing call had *already occurred* on February 7th, so his TCPA claims do not arise from the February 11th Calls.  *See id.*; Compl. ¶ 60. The only claim that could arguably arise from the February 11th Calls, Count XIII for telephonic harassment, fails as a matter of law because it is based on an Oklahoma criminal statute, which does not create a private right of action.  Therefore, none of the claims arise from the February 11th Calls, so those calls cannot support specific jurisdiction.

> **3.** **The Conclusory and False Allegations of Patton and Ludens Transacting Business in Oklahoma Are Insufficient**

The allegations that Patton and Ludens transacted business in Oklahoma also fail to support jurisdiction.  As to Patton, the sole allegation is that he "transact[s] business in Oklahoma City, OK . . . by telephone," Compl. ¶ 7, which must be ignored as conclusory, *see XMission*, 955 F.3d at 839, and is once again refuted by the fact that both the February 7th and 11th Calls were placed to a New York phone number.  To the extent that this allegation pertains to alleged actions by Heritage, not Patton personally, Patton's role as a

principal of a business is insufficient for personal jurisdiction over him.  *See Legacy Funeral Grp., LLC v. Damiano*, No. 4:19-CV-04686, 2020 WL 6731472, at *2 (S.D. Tex. July 20, 2020).

The allegation that Ludens "transacted business as a licensed attorney in Oklahoma City, Oklahoma in an attempt to negotiate or litigate this action via telephone with plaintiff," Compl. ¶ 47, references the very same February 11th Call discussed earlier, which fails to support personal jurisdiction, *see supra* Argument, Part II(B)(1)–(2).  If a lawyer could be subject to jurisdiction—or worse, liability—for calling a party who demanded to speak with that lawyer after sending a demand to the lawyer's client, that would have catastrophic implications for the legal field.  Ludens was also not a member of the Oklahoma State Bar at that time, which is readily confirmable by the reliable state bar records.  *See Amaral v. Cnty. of Los Angeles*, No. 2:16-CV-4767-VBF(E), 2016 WL 4056299, at *2 n.5 (C.D. Cal. July 5, 2016) (collecting cases) (taking judicial notice of state bar's website); *OBA Member Verification Search*, Okla. Bar Ass'n, https://ams.okbar.org/eweb/startpage.aspx.  Further, as noted above in note 4, Ludens was a New York lawyer calling a New York phone number.

Finally, Plaintiff's claims do not arise from the alleged "business transactions" of Patton and Ludens, so the transactions cannot support personal jurisdiction.  *See Dental Dynamics*, 946 F.3d at 1229 (requiring that injury arise from forum-related activity).

Plaintiff does not allege any other contacts between those defendants and the state of Oklahoma (there are none) and even admits that Heritage "has no internet presence or discernable public business activities."  Compl. ¶ 6.  For the foregoing reasons, with each

defendant's jurisdiction evaluated separately, the *single* phone call from Lawyer Defendants and *two* phone calls from Heritage and Patton are insufficient to create minimum contacts with Oklahoma for personal jurisdiction, so the claims against those defendants should be dismissed with prejudice. *See Dental Dynamics*, 946 F.3d at 1229 (requiring further analysis only "[i]f the minimum contacts test is met); *Guadnola*, 2021 WL 1093099, at *3 (dismissing FCPA defendant based solely on minimum contacts test).

## III.    Plaintiff Fails to State a Claim Against Defendants

### A.    The Litigation Privilege Bars Claims Relating to Prelitigation Efforts to Resolve the Dispute

Plaintiff cannot state a claim against Heritage, Patton, ZPSL, and Ludens because of the litigation privilege in Florida, where they are based, and/or Oklahoma, where the harm allegedly occurred.  This absolute privilege "accords attorneys, parties, jurors and witnesses immunity" for "all statements or communications in connection with the judicial proceeding," even outside the courtroom, "regardless of whether [they] are true," *Stricklen v. O.I.P.M., L.L.C.*, 394 P.3d 290, 292 ¶ 6 (Okla. App. 2016); *Samson Inv. Co. v. Chevaillier*, 988 P.2d 327, 331 (Okla. 1999); *see Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 380–81 (Fla. 2007); *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So. 3d 920, 925 (Fla. Dist. Ct. App. 2017) (immunizing tortious conduct "preliminary to future litigation . . . actually contemplated in good faith and under serious consideration"); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) (protecting "all acts related to and occurring within judicial proceedings").  "The litigation privilege applies in

all causes of action, statutory as well as common law." *Cole*, 950 So. 2d at 380–81.[6]

Relatedly, Oklahoma offers no civil remedy for litigation-related misconduct. *Stricklen*,

394 P.3d at 292 ¶ 6. Accordingly, Lawyer Defendants, Heritage, and Patton are immune

from any claims based on their alleged February 11th Calls and any other calls to Plaintiff

in response to Plaintiff's demand, which unequivocally contemplated litigation. *See*

Ludens Decl., Ex. 1. Thus, such claims against those defendants must be dismissed with

prejudice.

### B. The Claims Fail to Satisfy Ordinary Notice Pleading Standards

Plaintiff's claims against Heritage and Patton fail because they are based on

contradictory allegations. *See Coleman*, 90 F. App'x at 316, 318 (dismissing complaint as

"insufficient to state a cause of action" because key allegation "is directly contradicted by

. . . other allegations"). For example, Plaintiff alleges that Heritage called using a fake

Oklahoma area code, Compl. ¶ 245, which contradicts the allegation that Heritage called

from a 561-area code, *id.* ¶ 109. Calls from fake numbers form the crux of Plaintiff's

TCPA violations, so the contradiction causes the claims against Heritage and Patton to fail.

Accordingly, the TCPA claims against them should be dismissed.

---

[6] *See also O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 113 A.3d 1129, 1147 (Md. App. 2015) (noting "strong trend favoring . . . absolute litigation privilege to immunize litigation participants from liability for any tort claim"), *aff'd*, 135 A.3d 473 (Md. 2016); *Nnodim v. U.S. Bank Tr. Ass'n as Tr. for LB-Igloo Series IV Tr.*, No. 22-CV-11125-DLC, 2023 WL 8114342, at *5 (D. Mass. Nov. 22, 2023); *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 402 (D.N.J. 2009); *In re Cedar Funding, Inc.*, 419 B.R. 807, 824 (B.A.P. 9th Cir. 2009).

Further, the Complaint fails to give defendants "fair notice" of the claims because it is a shotgun pleading with vague and confusing allegations that address defendants collectively. *Twombly*, 550 U.S. at 545; *see Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (dismissing claim because "the collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom" make it "impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."). Compounding the confusion, the various causes of action listed in the Complaint do not specify any of the many defendants to which each Count is directed. Plaintiff admits that not every call to him was automated, so Heritage's alleged call might not even be alleged as unlawful. *See, e.g.*, Compl. ¶ 229 (emphasis added) ("*Many* of the alleged calls and texts were . . . automated[.]").

A complaint can also be a "shotgun pleading" by "recit[ing] an extended narrative at the beginning of the pleading, and proceed[ing] to state numerous claims by simply reciting the formulaic elements of the claim and referring holistically to the preceding narrative as support," for which "courts in this District have admonished litigants." *Southwell v. Allstate Prop. & Cas. Co.*, No. 20-CV-01272-PAB-KMT, 2020 WL 4287194, at *2 (D. Colo. July 27, 2020) (citing cases). Here, the Complaint is far worse because it recites an extended narrative at the beginning but does not incorporate *any of those facts at*

*all* in *any* of the Counts and does not even recite all of the elements of each claim. *See id.*; *In re White*, No. 20-12251-SAH, 2021 WL 450992, at *5 (Bankr. W.D. Okla. Feb. 8, 2021) (dismissing complaint involving only one defendant because "Plaintiff makes no effort to connect the Amended Complaint's multiple collective fact allegations to the elements of each of her **separate** claims for relief . . . , unnecessarily leaving Defendant and the Court to decipher Plaintiff's jumble of facts, law, and claims. This type of shotgun pleading contravenes Rule 8's notice pleading standard.") (citing *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015)); Compl. at 30–35. Further, and as a result, the claims are also conclusory. *See Twombly*, 550 U.S. at 545 (holding that legal "conclusions[] and a formulaic recitation of a cause of action's elements will not do").

For any of these reasons, the claims must be dismissed.

### C. The Complaint Fails to Allege That Patton Is Liable for Heritage's Alleged Misconduct

The Complaint fails to state a claim against Patton for Heritage's alleged misconduct. Plaintiff mistakenly believes that Patton can be liable for his company's alleged misconduct simply because he is a manager of a limited liability company. *See* Compl. ¶ 44 (seeking to hold "PARTNERS" "individually liable for the many illegal actions described in this complaint and to pierce the corporate veil"). For "[i]ndividual officers of an entity violating the TCPA [to] be personally liable," they must have "direct, personal participation in or personally authorized the conduct" that violated the statute. *Braver v. Clear Sky Fin., LLC*, No. CIV-22-710-R, 2023 WL 5439224, at *2 (W.D. Okla. Aug. 23, 2023) (quoting *Doyle v. JTT Funding, Inc.*, 2019 WL 13037025, at *9 (C.D. Cal.

Dec. 2, 2019)).  To pierce the corporate veil of a Florida company, the Complaint must allege that Patton: (i) so "dominated and controlled the LLC" that it had "no existence independent of [him]" and was a "mere instrumentality or alter-ego" of him; (ii) "used the LLC's corporate form fraudulently or for an improper purpose"; and (iii) "fraudulent or improper use of the LLC's corporate form caused injury to [Plaintiff]." *Segal v. Forastero, Inc.*, 322 So. 3d 159, 162–63 (Fla. Dist. Ct. App. 2021); *see Canal Ins. Co. v. Montello, Inc.*, 822 F. Supp. 2d 1177, 1184 (N.D. Okla. 2011) ("[W]hen a conflict of laws arises with regard to piercing the corporate veil, the law of the state of incorporation will be applied to determine whether piercing the corporate veil is appropriate.").

The allegations in the Complaint complaining of a single marketing call on February 7th do not support personal liability here.  The Complaint improperly lumps Patton with all other "PARTNERS" and makes conclusory allegations about their knowledge of illegality, personal participation, and general control over their companies. *See* Compl. ¶¶ 116, 278–86.  Those allegations not only fail to support personal liability but, also, must be ignored as conclusory.  *See XMission*, 955 F.3d at 839.  The only other allegations about Patton—that "LEVEL3 is [his] VoIP provider," Compl. ¶ 217, and that he called Plaintiff twice to attempt to resolve the dispute and then to scream at Plaintiff (i.e., the February 11th Calls), *see* Compl. ¶¶ 56, 61—do not show personal participation in or authorization of Heritage's alleged TCPA call.  Thus, Plaintiff fails to state any claims against Patton.

**D.** **The Complaint Fails to State a Claim Against Heritage**

**1.** **Count I: Abusive Telemarketing**

Count I purports to be a claim under 15 U.S.C. § 1602(c), but that statute does not create a private cause of action because it merely defines the term "Board" for consumer credit protection statutes, which is also entirely unrelated to the allegations here.

Count I also fails to state a claim under 16 C.F.R. § 310.3(b), which prohibits any person from "provid[ing] substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this part." Paragraph (a) prohibits a laundry list of deceptive statements, and Paragraph (c) concerns credit card laundering, none of which are alleged. Paragraph (d) prohibits deception in solicitation charitable donations, which is irrelevant to and contradicted by the Complaint because Plaintiff alleges that Heritage is a for-profit business.

Section 310.4 prohibits various instances of "abusive" telemarketing, many of which concern transactions that have nothing to do with Heritage's alleged business of selling coins, silver, and gold. While Section 310.4(a)(1) prohibits "[t]hreats, intimidation, or use of profane or obscene language," Plaintiff alleges that such statements were made in response to his demand letter to "harass" him, *not* as part of telemarketing calls.

Count I also fails because Plaintiff did not satisfy a condition precedent for bringing this claim: serving written notice on the Federal Trade Commission "prior to [] initiating an action under this part" or "immediately upon instituting [the] action." 16 C.F.R. § 310.7; *see Humana Pharmacy Sols., Inc. v. Michelin*, No. 20-81361, 2021 WL 3403950, at *10

(S.D. Fla. June 15, 2021) (dismissing claim because "[t]hese requirements are mandatory, yet there is no indication that Plaintiffs provided the requisite notice to the FTC prior to or shortly after initiating this action on August 20, 2020").

Therefore, Count I fails to state a claim.

### 2. Counts II to IV: Abusive Telemarketing

Counts II to IV are duplicative of each other and Count I and, therefore, are subject to the same deficiencies discussed above. *See supra* Argument, Part III(D)(1). Counts II to IV also fail to state a claim for additional reasons.

Counts II to IV do not pertain to any defendants at all. They allege "sellers or telemarketers" generally and not "SPAM-CALLERS," the term that Plaintiff uses to refer to TCPA Defendants. Because the claims do not concern any defendants, they necessarily fail.

Count II alleges a violation of 16 C.F.R. § 310.4(b)(1)(ii)(B), which does not exist. The only somewhat factual allegation in Count II, Compl. ¶ 295, is incomprehensible and fails to identify any defendants. Thus, Count II fails to state a claim against Defendants.

Count III uniquely cites 16 C.F.R. § 310.4(b)(1)(iii)(B), which concerns the "do-not-call" registry, but the only facts alleged in Count III concern Plaintiff's disinterest in receiving calls from sellers offering goods or services on behalf of charitable organizations. Thus, no factual allegations in Count III support the claim, so no claim is stated.

Count IV uniquely cites 16 C.F.R. § 310.4(b)(1)(v)(A)(i), but that subparagraph is an *exception* to a type of "abusive" telemarketing call, so no claim is stated.

### 3.      Count V: Do-Not-Call Registry Violation

Count V fails to state a claim under 47 U.S.C. § 227(c)(5) because Plaintiff fails to allege that he (1) "received more than one telephone call within any 12-month period" (2) by Heritage (3) in violation of the do-no-call list regulations.  At best, Plaintiff received a total of two calls from Heritage—the second one being in response to his demand letter and, therefore, not a call that is prohibited by the TCPA.

Plaintiff also fails to state a claim under 47 C.F.R. § 64.1200(c)(2), which prohibits calling any "residential telephone subscriber" who registered their phone number with the do-not-call registry.  Plaintiff fails to allege that he is a "residential telephone subscriber" because he admits that he uses his phone for "businesses he actually transacts with," Compl. ¶ 55, so it is not used "primarily for residential purposes," *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *3 (D. Colo. Nov. 14, 2023); *see Gillam v. Reliance First Cap., LLC*, No. 21CV4774JMAJMW, 2023 WL 2163775, at *4 (E.D.N.Y. Feb. 22, 2023) (dismissing complaint for failure to allege residential use despite allegations that phone was not "associated with a business" and "primarily for personal use"); *Hicks v. Alarm.com Inc.*, No. 1:20-CV-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (dismissing complaint for failure to alleged "residential telephone subscriber" despite allegations that phone "is not associated with a business and is for personal use").  Therefore, Count V fails to state a claim.

### 4.      Counts VI, VII, VIII, and X: Automated and Artificial Voice Calls

Counts VI, VII, VIII, and X fail because they do not allege that the purported call from Heritage used an artificial or prerecorded voice or an "automatic telephone dialing

system or an artificial or prerecorded voice" (an "ATDS").  Such an ATDS "must have the capacity to either store or call a telephone number using a random or sequential number generator."  *Facebook, Inc. v. Duguid*, 592 U.S. 395, 398 (2021); *see Montgomery v. Cap. One Bank (USA), N.A.*, No. CV 22-347-SDD-SDJ, 2023 WL 2705860, at *6 (M.D. La. Mar. 14, 2023), *report and recommendation adopted*, No. CV 22-347-SDD-SDJ, 2023 WL 2700707 (M.D. La. Mar. 29, 2023) (dismissing TCPA claim for unalleged ATDS); *Trumper v. GE Capital Retail Bank*, Civ. No. 2:14–cv–01211 (WJM), 2014 WL 7652994, at *2 (D.N.J. July 7, 2014) (dismissing claim for insufficiently alleging prerecorded voice); *Curry v. Synchrony Bank, N.A.*, 2015 WL 7015311, at *2-3 (S.D. Miss. Nov. 12, 2015) (same, noting lack of "'sufficient contextual details to determine whether [plaintiff] spoke to a human or merely heard a recording'") (quoting *Aikens v. Synchrony Fin.*, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015)).  Plaintiff even fails to allege personal knowledge of any calls in these counts and, instead, group pleads "[u]pon information and belief" that all defendants generally violate these regulations.  Compl. ¶ 308.

Count VI also fails to state a claim for not satisfying the "residential" telephone subscriber requirement.  *See supra* Argument, Part III(D)(3).

Count VII also fails to state a claim under 47 U.S.C. § 227(b)(1)(A)(iii) because there is no allegation that Heritage charged Plaintiff for the call.

Count VIII also fails to state a claim under 47 C.F.R. § 64.1200(b)(1)[7] because there is no allegation that Heritage's call failed to identify Heritage or how Plaintiff knew that Heritage called without Heritage identifying itself.

### 5.     Counts IX and XIII: No Private Right of Action

Counts IX and XIII fail to state a claim under 47 C.F.R. § 64.1604(a), 47 U.S.C. § 227(e)(1), and Section 21-1172 of the Oklahoma Statutes because those laws do not create a private right of action.  *Doane v. Syed*, No. 1:19-CV-00111-JPB, 2020 WL 11191696, at *2 (N.D. Ga. Jan. 13, 2020) (discussing 47 U.S.C. § 227(e)(1)), *vacated and remanded on other grounds sub nom. Doane v. Tele Cir. Net. Corp.*, 852 F. App'x 404 (11th Cir. 2021) (dismissing claims) (citing *Clark v. Avatar Techs. PHL, Inc.*, No. H-13-2777, 2014 WL 1342033, at *4 (S.D. Tex. Apr. 3, 2014)); *Free Conferencing Corp. v. Comcast Corp.*, No. CV154076FMOPJWX, 2016 WL 7637664, at *7 (C.D. Cal. May 31, 2016) (citing cases) ("There is no private right of action for violations of 47 U.S.C. § 227(e)."); *Dobronski v. Selectquote Ins. Servs.*, 462 F. Supp. 3d 784, 789 (E.D. Mich. 2020) (citing cases) (dismissing claim under 47 C.F.R. § 64.1604(a) because it does not create a private right of action and because plaintiff's two cases to the contrary did not address whether a private right of action existed); *Slocum v. City of Claremore*, No. 08CV756GKFPJC, 2009 WL 2835399, at *6 n.3 (N.D. Okla. Aug. 28, 2009) ("Under 21 O.S. § 1172, . . . the statute creates no private cause of action.").

---

[7] Plaintiff claims to state a claim under 47 U.S.C. § 227(d)(3)(A), but that statute merely authorizes a government agency to promulgate the regulation cited in the count.

### 6.    Count XI: Failing to Transmit Caller's Telephone Number

Count XI fails to state a claim under Section 15-775C.3(B) of the Oklahoma Statutes because it requires a "fail[ure] to transmit . . . the originating telephone number," but Plaintiff alleges the phone number from which Plaintiff called.  *See* Compl. ¶ 109.  Even if Heritage's call displayed "misleading or inaccurate caller identification information," *id.* ¶ 319, that allegation is conclusory, and Count XI fails to allege: "how" Plaintiff could know that; "when" the call was made; the number that displayed; and all other information to satisfy heightened pleading.  *See Integrated Bus. Techs.*, 2016 WL 4742306, at *4.  The claim also fails to allege that (1) Plaintiff attempted to call Heritage at the phone number that displayed and (2) that either (a) the number is not "capable of receiving telephone calls" or (b) his call did not connect him "to the telephone solicitor or to the seller." *Grajales v. Genesco, Inc.*, No. 8:23-CV-420-SCB-TGW, 2023 WL 5522698, at *3 (M.D. Fla. Aug. 28, 2023) (discussing identical statute under Florida law).

### 7.    Count XII: Invasion of Privacy by Intrusion upon Seclusion

Count XII fails to state a claim for invasion of privacy by intrusion upon a person's seclusion, which requires: "(a) a nonconsensual intrusion (b) which was highly offensive to a reasonable person."  *Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVE-TLW, 2016 WL 47876, at *5 (N.D. Okla. Jan. 4, 2016).  To be highly offensive, "the telephone calls [must be] repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded."  *Id.*  While Plaintiff alleges this degree of telephone calls, he admits that they are from many businesses, not just Plaintiff.  Plaintiff fails to allege that Heritage

specifically has called so many times as to be highly offensive and a substantial burden to his existence. On the contrary, there were, at best, two calls from Defendant Heritage—the February 7th Call and the February 11th Call—and one call from each of Patton, ZPSL, and Ludens. Thus, the claims against all of those defendants should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion, dismiss all claims against Defendants with prejudice, and grant such other and further relief as the court deems just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that, on June 28, 2024, I filed the foregoing document with the Court's CM/ECF system and served it by First Class U.S. Mail and e-mail on the following person, who is not a registered participant of the Electronic Filing System:

Anthony Trupia
605 SE 21st Street
Oklahoma City, OK 73129
E-mail: trupiaar@gmail.com

**ZEBERSKY PAYNE SHAW LEWENZ, LLP**

By:  */s/ Zachary D. Ludens*
Zachary Dean Ludens, Esq.
W.D. Okla. Bar No. 24-78
110 Southeast 6th Street, Suite 2900
Fort Lauderdale, FL 33301
Tel.: (954) 595-6075
E-mail: ZLudens@zpllp.com